UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GLORIA FERGUSON and CASSANDRA McCLINTON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BBVA COMPASS BANCSHARES, INC., et al.,<br><br>Defendants. | Case No.:  2:19-cv-01135-MHH |

# MEMORANDUM OPINION

In this ERISA action, plaintiffs Gloria Ferguson and Cassandra McClinton, individually and on behalf of others similarly situated, allege that defendants BBVA Bancshares, Inc., Compass Bancshares, Inc., and BBVA USA Bancshares, Inc. breached their duties of loyalty and prudence as administrators and fiduciaries of an employee pension plan.  (Doc. 1, pp. 77–79, ¶¶ 140–45).  BBVA moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Doc. 14, p. 1). BBVA argues that the Court lacks subject matter jurisdiction because the plaintiffs failed to exhaust their administrative remedies before filing suit.  (Doc. 15, p. 6). For the reasons discussed below, the Court denies BBVA's motion to dismiss.

## I. STANDARD OF REVIEW

Under Rule 12(b)(1), a defendant may move to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Courts lacking subject matter jurisdiction lack "the power . . . to hear a case." *Scarfo v. Ginsberg*, 175 F.3d 957, 961 (11th Cir. 1999). Accordingly, "[w]hen a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir.1977) (per curiam)).

Attacks on subject-matter jurisdiction under 12(b)(1) may be either facial or factual. *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). "Facial attacks to subject matter jurisdiction require the court merely to look and see if the plaintiff's complaint has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335–36 (11th Cir. 2013) (citing *Carmichael,* 572 F.3d at 1279)); *see also*, *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). "Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact." *McElmurray*, 501 F.3d at 1251 (internal quotations and citations omitted). "[W]here a defendant raises a factual attack on subject matter

2

jurisdiction, the district court may consider extrinsic evidence such as deposition testimony and affidavits." *Carmichael*, 572 F.3d at 1279.  "In so doing, a district court is "free to weigh the facts" and is "not constrained to view them in the light most favorable" to the plaintiff." *Houston*, 733 F.3d at 1336 (quoting *Carmichael*, 572 F.3d at 1279)).  The defendants have asserted a factual challenge to subject matter jurisdiction in this case.

Rule 12(b)(6) enables a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint against the "liberal pleading standards set forth by Rule 8(a)(2)." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Pursuant to Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "Generally, to survive a [Rule 12(b)(6)] motion to dismiss and meet the requirement of Fed. R. Civ. P. 8(a)(2), a complaint need not contain 'detailed factual allegations,' but rather 'only enough facts to state a claim to relief that is plausible on its face.'" *Maledy v. City of Enterprise*, 2012 WL 1028176, *1 (M.D. Ala. March 2012) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007)).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Twombly*, 550 U.S. at 555).

"Thus, the pleading standard set forth in Federal Rule of Civil Procedure 8 evaluates the plausibility of the facts alleged, and the notice stemming from a complaint's allegations." *Keene v. Prine*, 477 Fed. Appx. 575, 583 (11th Cir. 2012). "Where those two requirements are met . . . the form of the complaint is not significant if it alleges facts upon which relief can be granted, even if it fails to categorize correctly the legal theory giving rise to the claim." *Id.*

When evaluating a Rule 12(b)(6) motion to dismiss, a district court accepts as true the factual allegations in the complaint and construes them in the light most favorable to the plaintiff. *McCullough v. Finley*, 907 F.3d 1324, 1330 (11th Cir. 2018). However, "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010).

## II. FACTUAL AND PROCEDURAL BACKGROUND

The plaintiffs in this case are participants in a defined contribution, individual account, employee pension plan administered by BBVA. (Doc. 1, pp. 6–7, ¶¶ 3–4).[1] BBVA administers and acts as fiduciary of the plan. "In this capacity, BBVA is responsible . . . for selecting, monitoring, evaluating, and replacing the Plan's investment options." (Doc. 1, p. 7, ¶ 4). To meet these obligations, the plan allows BBVA to appoint a three-person "Retirement Committee" vested with the power to

---

[1] Each plaintiff is an "eligible employee" of BBVA Compass Bancshares. (Doc. 15-1, p. 11).

"[c]onstrue and interpret the Plan"; "decide all questions of eligibility"; "[e]stablish a funding policy for the Plan"; and manage, administer, and operate the plan. (Doc. 15-2, p. 7).

Section 8.7(a) of the retirement plan provides that a participant or beneficiary may bring before the Retirement Committee a claim for benefits under the plan. (Doc. 15-1, p. 71). If the Retirement Committee denies a claim, it must include in writing, among other things, "[t]he specific reason(s) for the denial" and "[r]eference to the specific Plan provision(s) on which the denial is based . . . ." (Doc. 15-1, p. 72).

A claimant may appeal the initial denial of a claim. On appeal, the Committee must consider relevant information submitted by the claimant and must decide the appeal "within a reasonable period of time." (Doc. 15-1, p. 72). The Committee must issue a written decision containing "[t]he specific reason(s) for the decision on appeal"; "[r]eference to the specific Plan provision(s) on which the decision on appeal is based"; [sup-¶ (c)]; and "[a] statement of the claimant's right to bring a civil action under ERISA Section 502(a)." (Doc. 15-1, pp. 72–73). Section 8.7(c) provides that "[a]fter exhaustion of the claims and review procedure as provided herein, nothing shall prevent the claimant from . . . bring[ing] a civil action under Section 502(a) of ERISA." (Doc. 15-1, p. 75, § 8.7(c)).

Consistent with ERISA's requirements, BBVA provided to plan participants a "Summary Plan Description." (Doc. 15-3). The SPD outlines the plan's general claim procedures, using language that resembles the plan's language, but the SPD does not mention "exhaustion." The SPD includes a summary of participants' ERISA rights. The SPD provides that "[i]f plan fiduciaries misuse the plan's assets, . . . suit may be filed in federal court." (Doc. 15-3, p. 20).

On May 16, 2019, Ms. Ferguson's attorney sent a letter to BBVA's Director of Benefits, informing BBVA that Ms. Ferguson "ha[d] observed . . . that the costs and expenses of administering the Plan[] are outside a normal range" and requesting that BBVA provide to Ms. Ferguson a list of documents for review. (Doc. 18-1, pp. 7–8). The May 16, 2019 letter also asked BBVA to identify any administrative process "for grievances regarding the Plan." (Doc. 18-1, p. 8). In response, BBVA provided to Ms. Ferguson six documents, including the "[c]urrent plan with amendments" and the "[c]urrent SPD." (Doc. 18-1, p. 10).

On July 18, 2019, Ms. Ferguson and Ms. McClinton sued BBVA, alleging "that the Plan participants[] lost approximately $47,000,000 of their retirement money as a result of BBVA's mismanagement . . . ." (Doc. 1, p. 69, ¶ 124). Before filing suit, Ms. Ferguson and Ms. McClinton did not avail themselves of the claim procedures outlined in § 8.7 of the Plan. (*See* Doc. 1, p. 2, n. 2). BBVA argues that

this is a failure to exhaust administrative remedies that warrants dismissal. (Doc. 14).

### III. ANALYSIS

"It is well-established law in [the Eleventh] Circuit that plaintiffs in ERISA cases must normally exhaust available administrative remedies under their ERISA-governed plans before they may bring suit in federal court." *Springer v. Wal-Mart Assocsiates' Group Health Plan*, 908 F.2d 897, 899 (11th Cir. 1990). "The exhaustion requirement applies to complaints for breach of fiduciary duty under ERISA . . . ." *Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1224 (11th Cir. 2008).

The plaintiffs argue that they did not fail to exhaust because the BBVA plan does not provide administrative remedies. (Doc. 18, p. 4). The plaintiffs base this argument on the assertion that their attorneys "requested access to any [required] administrative procedures and none were provided." (Doc. 18, p. 4 (quoting Doc. 1, pp. 5–6, ¶ 2, n. 2)). They also argue that even if they failed to exhaust available administrative remedies, that failure is excused. The Court concludes that to the extent the plaintiffs were required to exhaust available administrative remedies, the failure is excused.

In most cases, "if a plan participant failed to take advantage of an available administrative appeal by pursuing it in compliance with a reasonable filing deadline, she has failed to exhaust her administrative remedies and that bars federal court

7

review of her claim." *Watts v. Bell Telecomms., Inc.*, 316 F.3d 1203, 1207 (11th Cir. 2003) (citations omitted). But most cases is not all cases, and a claimant's failure to exhaust an administrative remedy provided for in a plan is excused if she "reasonably believed, based upon what the summary plan description said, that she was not required to exhaust her administrative remedies before filing a lawsuit." *Watts*, 316 F.3d at 1207. "The reasonableness of [a plaintiff's interpretation of plan documents] must be judged from the perspective of the average plan participant." *Watts*, 316 F.3d at 1207 (citing 29 U.S.C. § 1022(a)).

Under the heading "Applying for Benefits" and the sub-heading "General Claim Procedure," the SPD provides that after a claim is wholly or partially denied, plan participants or their authorized representative "may appeal the Retirement Committee's decision denying the claim within 60 days" of receiving notice of the denial. (Doc. 15-3, p. 15). Five pages later, under the heading "ERISA rights," the SPD states that "[i]f a claim for a benefit is denied in whole or in part, an employee has the right to have the plan reviewed and the plan reconsidered"; that "[i]f a claim for benefits is denied or ignored, in whole or in part, suit may be filed . . . in federal court"; and that "[i]f plan fiduciaries misuse plan assets, . . . suit may be filed in federal court." (Doc. 15-3, pp. 19–20).

These provisions of the SPD provide to plan participants alternative avenues of recourse, none of which is mandatory. In each instance, the SPD tells plan

8

participants that they "may," or that they "have the right" to, pursue a particular option. The SPD does not describe the claims procedures or ERISA rights as mandatory prerequisites to filing suit in federal court. The word "exhaustion" does not appear in the SPD. Consequently, a reasonable person reading the SPD likely would conclude that the "General Claim Procedure" provisions and the provision providing for filing suit in federal court offer an either-or proposition.

BBVA argues that the "SPD language regarding 'misuse [of] the plan's assets' does not cover Plaintiffs' claims here." (Doc. 20, p. 8 (alteration in original)). BBVA argues that "[m]isuse of plan assets is a distinct breed of claim under ERISA, which equates to self-dealing, fraud, theft, or the like." (Doc. 20, p. 8 (citing *LaScala v. Scrufari*, 479 F.3d 213, 222 (2d Cir. 2007)). BBVA contrasts that with ERISA "claims based on a fiduciary's procedural imprudence in choosing a plan's investment options[,]" which, BBVA argues, "ha[s] nothing to do with 'misuse' of the plan's assets, in the normal sense of the word." (Doc. 20, p. 9). According to BBVA, the phrase "misuse of the plan's assets" covers the former and not the latter." (Doc. 20, p. 9). The Court disagrees.

In ERISA cases, courts should "first look to the plain and ordinary meaning of the policy terms to interpret the contract." *Alexandra H. v. Oxford Health Ins. Inc. Freedom Access Plan*, 833 F.3d 1299, 1307 (11th Cir. 2016) (citations omitted). On its face, the word "misuse" indicates only incorrect use, failing to distinguish

9

between intentional fraud and inadvertent squandering. *See Misuse*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/misuse (last visited May 6, 2020). Context normally would indicate whether "misuse" referred to the former or the latter. But the provision "[i]f plan fiduciaries misuse the plan's assets, . . . suit may be filed in federal court" provides no such context here. (Doc. 15-3, p. 20). As a result, interpreting "misuse the plan's assets" as "the costs and expenses of administering the Plan [being] outside a normal range," (Doc. 18-1, p. 7), is reasonable, and the plaintiffs' failure to avail themselves of the administrative remedies provided for in § 8.7 of the BBVA plan is excused. Besides, as noted, under the language of the SPD, "misuse" is not the only key that opens the door to a lawsuit in federal court.

## IV. CONCLUSION

For the reasons above, the Court denies BBVA's motion to dismiss, (Doc. 14). BBVA also has moved to strike Ms. Ferguson's and Ms. McClinton's jury demand, (Doc. 16). The Court sets the motion for oral argument at 3:00 p.m. on May 28, 2020.

**DONE** and **ORDERED** this May 12, 2020.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE