FILED
2021 Feb-19  PM 04:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **GLORIA FERGUSON and CASSANDRA McCLINTON, individually and on behalf of all others similarly situated,**<br><br>　　　　**Plaintiffs,**<br><br>**v.**<br><br>**BBVA COMPASS BANCSHARES, INC, et al.,**<br><br>　　　　**Defendants.** | }<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}　　**Case No.:  2:19-cv-01135-MHH** |

## MEMORANDUM OPINION

Defendants BBVA Compass Bancshares, Inc., Compass Bancshares, Inc., and BBVA USA Bancshares, Inc. have asked the Court to reconsider its opinion and order denying their motion to dismiss the plaintiffs' ERISA claims for failure to exhaust administrative remedies.  (Docs. 23, 26, 29, 30, 40).  The defendants argue that the Court clearly erred in its opinion and violated the rule that the United States Supreme Court set forth in *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), barring district court reformation of plan documents.  If the defendants are correct, then the

Court must reconsider its opinion and revise its decision.[1]  The defendants also point out that the procedural posture of the case has changed since the Court issued its opinion, and the defendants ask the Court to take that change into account.  (Doc. 26, p. 2).  The Court accepts the invitation and takes a deeper dive into the record and the case law to examine the defendants' arguments.

As a refresher, plaintiffs Gloria Ferguson and Cassandra McClinton are participants in the Compass SmartInvestor 401(k) Plan.  The Plan is a defined contribution, individual account employee pension plan.  (Doc. 1, p. 6, ¶ 3).  Under the terms of the Plan, BBVA is the Plan Administrator and a named fiduciary for the Plan.  (Doc. 1, p. 7, ¶ 4).[2]  BBVA "is responsible . . . for selecting, monitoring, evaluating, and replacing the Plan's investment options."  (Doc. 1, p. 7, ¶ 4).  Ms. Ferguson and Ms. McClinton contend that "that the Plan participants[] lost approximately $47,000,000 of their retirement money as a result of BBVA's mismanagement of [] money market and mutual funds."  (Doc. 1, p. 69, ¶ 124).  The

---

[1] *See Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) ("'The only grounds for granting' a motion to reconsider 'are newly-discovered evidence or manifest errors of law or fact.'") (quoting *In re Kellogg*, 197 F.3d 1116, 1119 (11th Cir. 1999)); *see also Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1344 (11th Cir. 2010) ("Reconsidering the merits of a judgment, absent a manifest error of law or fact, is not the purpose of Rule 59.").

[2] *See also* Plan, Sections 2.14 and 2.53 (Doc. 15-1, pp. 13, 21) (naming BBVA Compass Bancshares, Inc. as the Plan Administrator); Section 10.4 (Doc. 15-2, p. 7) (stating that the Plan Administrator is a "Named Fiduciary of the Plan").  The Plan Administrator is one of several Named Fiduciaries under the Plan.  (Doc. 15-2, p. 7, Section 10.4).  BBVA is also the Plan sponsor. (Doc. 20, p. 5, n. 1).

plaintiffs allege that BBVA breached its fiduciary duties of prudence and loyalty to them and to the other participants in the Plan, and the plaintiffs seek to have restored to the Plan fund "any losses to the Plan resulting from the breaches of fiduciary duties" and "other equitable or remedial relief as appropriate." (Doc. 1, pp. 77–79, ¶¶ 141, 143).

To evaluate BBVA's argument that this Court must dismiss the plaintiffs' claims for failure to exhaust administrative remedies, we will begin with the relevant provisions of the Plan and the Summary Plan Description. We then will explain how we arrived at BBVA's motion to reconsider, beginning with the plaintiffs' initial suspicions and ending with BBVA's motion to reconsider, which BBVA has supplemented several times. Then, we will turn to the law concerning administrative exhaustion of ERISA claims and the Supreme Court's decision in *CIGNA* and consider whether the Court must reverse course and dismiss this action.

## I.

Under the Compass SmartInvestor 401(k) Plan document, a Retirement Committee appointed by BBVA is charged with various tasks, including administering the Plan and determining benefit payments under the Plan. (Doc. 15-2, pp. 6, 8).[3] Article VIII of the Plan document concerns "DISTRIBUTION OF

---

[3] An ERISA plan is a plan, fund, or program which an employer establishes or maintains to provide welfare or pension benefits to participants in and beneficiaries of the plan. 29 U.S.C. §1002. An ERISA plan must be "established and maintained pursuant to a written instrument." 29 U.S.C.

BENEFITS." (Doc. 15-1, p. 62). Article VIII begins with Section 8.1, "Time of Payment of Benefits," continues with Section 8.2, "Method of Payment," and concludes with Section 8.17, "Disclosure to Participants." (Doc. 15-1, pp. 62–77; Doc. 15-2, pp. 1–4). Section 8.7 of the "DISTRIBUTION OF BENEFITS" provision is titled "Claim and Review Procedure." (Doc. 15-1, p. 71).

Under Section 8.7, Plan Participants or beneficiaries may submit claims for benefits to the Retirement Committee and appeal decisions of the Retirement Committee. Parts (a)(1) and (a)(2) of Section 8.7 state:

---

§1102(a)(1). A plan document is the written instrument that sets forth in detail the terms for the operation and administration of the plan. *See* Doc. 15-1, p. 11, Section 1.2. The BBVA Plan document appears at Docs. 15-1 and 15-2. A summary plan description or SPD is "the statutorily mandated means of informing participants of the terms of the plan and its benefits." *Alday v. Container Corp. of Am.*, 906 F.2d 660, 665 (11th Cir. 1990); *see* 29 U.S.C. §1022. The BBVA SPD appears at Doc. 15-3.

Section 8.7  Claim and Review Procedure.  In the following claims procedures, the person making the claim (either the Participant or his beneficiary) is called the "claimant." The claimant is entitled to have a representative (such as an attorney) assist him or handle his claim and any appeal, and such a representative is called an "authorized representative."

(a)  General Claim Procedure.

(1)  Claim Denial.  If a claim for benefits under the Plan is wholly or partially denied, the Retirement Committee shall furnish the claimant or authorized representative with a written or electronic notice of the denial within a reasonable period of time (generally 90 days after the Retirement Committee receives the claim, or 180 days if the Retirement Committee determines that special circumstances require an extension of time for processing the claim and furnishes written notice of the extension to the claimant or authorized representative before the initial 90-day period ends).  The Retirement Committee's written extension notice must indicate the special circumstances requiring an extension of time for processing the claim and the date by which the Retirement Committee expects to render its decision on the claim.

Any written or electronic notice of denial of benefits shall set forth, in an understandable manner, the following information:

(a)  The specific reason(s) for the denial of the claim;

(b)  Reference to the specific Plan provision(s) on which the denial is based;

(c)  A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why that material or information is necessary; and

(d)  A description of the Plan's review procedures and the time limits applicable to those procedures, including a statement of the claimant's right to bring a civil action under ERISA Section 502(a) following a denial on review.

(2)  Appeal of Denied Claim.  The claimant or authorized representative may appeal the Retirement Committee's decision denying the claim within 60 days after the claimant or authorized representative receives the Retirement Committee's notice denying the claim by submitting a written appeal to the Retirement Committee.  The claimant or authorized representative may submit to the Retirement Committee written comments, documents, records and other information relating to the claim.  The claimant or authorized representative shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to the claim.

The Retirement Committee will make the decision on the appeal of a denied claim.  The Retirement Committee's review of the denied claim shall take into account all comments, documents, records and other information submitted by the claimant or authorized representative relating to the claim, without regard to whether these materials were submitted or considered by the Retirement Committee in its initial decision on the claim.

The Retirement Committee's decision on the appeal of a denied claim shall be made within a reasonable period of time (generally 60 days after the receipt of the claim or 120 days if the Retirement Committee determines that special circumstances require an extension of time for processing the claim and furnishes written notice of the extension to the claimant or authorized representative before the initial 60-day period ends indicating the special circumstances requiring extension of time and the date by which the Retirement Committee expects to render a decision on the claim).   The Retirement Committee will furnish the claimant or authorized representative with written or electronic notice of the decision on appeal.  In the case of a decision on appeal upholding the Retirement Committee's initial denial of the claim, the Retirement Committee's notice of its decision on appeal shall set forth, in an understandable manner, the following information:

(a)     The specific reason(s) for the decision on appeal;

(b)     Reference to the specific Plan provision(s) on which the decision on appeal is based;

(c)     A statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all

documents, records and other information relevant to the claim for benefits; and

(d)     A statement of the claimant's right to bring a civil action under ERISA Section 502(a).

(Doc. 15-1, pp. 71–73).[4]  Part (c) of Section 8.7, labeled "<u>Exhaustion of Claims</u>,"

states:

> After exhaustion of the claims and review procedure as provided herein, nothing shall prevent the claimant from pursuing any other legal or equitable remedy otherwise available, including the right to bring a civil action under Section 502(a) of ERISA, if applicable.  Notwithstanding the foregoing, no legal action may be commenced or maintained against the Company, Adopting Company or the Retirement Committee more than ninety (90) days after the claimant has exhausted the administrative remedies set forth in this Section 8.7.

---

[4] Part (b) of Section 8.7 governs claims for disability benefits.  (Doc. 15-1, pp. 73–75).

(Doc. 15-1, p. 75).

The Plan document does not define the term "claim" or "claim for benefits." *Compare*, *e.g.*, *Bickley v. Caremark RX, Inc*., 461 F.3d 1325, 1329 n.8 (11th Cir. 2006) ("Under the Plan, 'claims' are defined as '[a] demand to the Benefits Claim Processor for the payment of benefits for reimbursable expenses under a medical, dental, disability, or other insurance plan'"); *Fleming v. Rollins, Inc.*, 2020 WL 7683147, at *4 (N.D. Ga. Nov. 23, 2020) ("The Plans define a claim as 'any grievance, complaint or claim concerning any aspect of the operation or administration of the Plan or Trust, including but not limited to claims for benefits and complaints concerning the investments of Plan assets[.]'").

In a section of the BBVA SPD titled "**Applying for Benefits**," the SPD sets forth the claim and appeal procedure that appears in parts (a)(1) and (a)(2) of Section 8.7 of the Plan document.  The SPD states:

**Applying for Benefits**

A participant or beneficiary must apply in writing to the Plan Administrator, c/o 401(k) Plan Administrator, 15 South 20th Street, Birmingham, AL 35233 to request payment of his or her vested benefit under the plan. Such written application must also set forth the preferred method of payment.

General Claim Procedure

In the following claims procedures, the person making the claim (either the Participant or his beneficiary) is called the "claimant." The claimant is entitled to have a representative (such as an attorney) assist him or handle his claim and any appeal, and such a representative is called an "authorized representative."

If a claim for benefits under the plan is wholly or partially denied, the Retirement Committee shall furnish the claimant or authorized representative with a written or electronic notice of the denial within a reasonable period of time (generally 90 days after the Retirement Committee receives the claim, or 180 days if the Retirement Committee determines that special circumstances require an extension of time for processing the claim and furnishes written notice of the extension to the claimant or authorized representative before the initial 90-day period ends). The Retirement Committee's written extension notice must indicate the special circumstances requiring an extension of time for processing the claim and the date by which the Retirement Committee expects to render its decision on the claim.

Any written or electronic notice of denial of benefits shall set forth, in an understandable manner, the following information:

- The specific reason(s) for the denial of the claim;
- Reference to the specific plan provision(s) on which the denial is based;
- A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why that material or information is necessary; and
- A description of the plan's review procedures and the time limits applicable to those procedures, including a statement of the claimant's right to bring a civil action following a denial on review.

The claimant or authorized representative may appeal the Retirement Committee's decision denying the claim within 60 days after the claimant or authorized representative receives the Retirement

8

Committee's notice denying the claim by submitting a written appeal to the Retirement Committee. The claimant or authorized representative may submit to the Retirement Committee written comments, documents, records and other information relating to the claim. The claimant or authorized representative shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to the claim.

The Retirement Committee will make the decision on the appeal of a denied claim. The Retirement Committee's review of the denied claim shall take into account all comments, documents, records and other information submitted by the claimant or authorized representative relating to the claim, without regard to whether these materials were submitted or considered by the Retirement Committee in its initial decision on the claim.

The Retirement Committee's decision on the appeal of a denied claim shall be made within a reasonable period of time (generally 60 days after the receipt of the claim or 120 days if the Retirement Committee determines that special circumstances require an extension of time for processing the claim and furnishes written notice of the extension to the claimant or authorized representative before the initial 60-day period ends indicating the special circumstances requiring extension of time and the date by which the Retirement Committee expects to render a decision on the claim). The Retirement Committee will furnish the claimant or authorized representative with written or electronic notice of the decision on appeal. In the case of a decision on appeal upholding the Retirement Committee's initial denial of the claim, the Retirement Committee's notice of its decision on appeal shall set forth, in an understandable manner, the following information:

- The specific reason(s) for the decision on appeal;
- Reference to the specific plan provision(s) on which the decision on appeal is based;
- A statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to the claim for benefits; and
- A description of the plan's review procedures and the time limits applicable to those procedures, including a statement of the claimant's right to bring a civil action following a denial on review.

(Doc. 15-3, pp. 15–16).  The SPD does not include the exhaustion provision in Section 8.7(c) of the Plan document.

## II.

The seeds for this action were planted when, on May 16, 2019, Ms. Ferguson's attorney sent a letter to Troy Farnlacher, BBVA's Plan Administrator, informing BBVA that Ms. Ferguson "ha[d] observed . . . that the costs and expenses of administering the Plan[] are outside a normal range" and indicating that Ms.

Ferguson wanted to investigate whether the Plan "had a prudent methodology for the selection of the investment options for the Plan menu . . . ."  (Doc. 18-1, p. 7). In the letter, Ms. Ferguson requested information about the BBVA Plan.  In addition to requesting several specific documents including the SPD and the Plan document, Ms. Ferguson's attorney stated:  "we are not aware of any provision in the plan documents that provides for grievances regarding the Plan.  If there is such a process, please identify it with specificity in your response to this letter, and produce all documents related to the administrative process."  (Doc. 18-1, pp. 7–8).

Mr. Farnlacher responded by letter dated May 24, 2019.  (Doc. 18-1, p. 10). Mr. Farnlacher enclosed with his letter several documents including the Plan document and the "Current SPD."   He stated that Ms. Ferguson's "remaining information requests" were "unclear, overly broad, and do not appear to be within the scope of Section 1024(b)(4)."  (Doc. 18-1, p. 10).  He asked Ms. Ferguson's attorney to "refine" subsequent requests for information.  (Doc. 18-1, p. 10).  Mr. Farnlacher did not answer Ms. Ferguson's request that he identify, with specificity, the Plan's administrative process for grievances regarding the Plan.[5]

_____

[5] The Plan document and the SPD are incorporated by reference into the plaintiffs' complaint in this action.  In its memorandum opinion denying BBVA's motion to dismiss, the Court cited and discussed the May 16 and May 24 letters.  (Doc. 23, p. 6).  The fact that the letters were exchanged is undisputed, and BBVA has not asked the Court to convert its motion to dismiss into a motion for summary judgment because of the materials outside of the complaint that both parties have introduced in support of their positions regarding BBVA's motion to dismiss.  BBVA has filed additional materials in support of its motion for reconsideration.  (Doc. 26-1; Doc. 30-1; Doc. 30-

On June 18, 2019, Ms. Ferguson's attorney replied.  He stated that, "[i]n an effort to refine our requests" in his original letter, he was requesting additional documents.  (Doc. 18-1, p. 12).  Ms. Ferguson indicated that Fidelity might have several of the documents.  (Doc. 18-1, p. 13).  By letter dated July 19, 2019, Mr. Farnlacher refused to produce most of the documents that Ms. Ferguson's attorney requested, stating that "the items you have attempted to identify" and "the categories of information are beyond those available under 29 U.S.C. §1024(b)(4)."  (Doc. 18-1, p. 15).  Mr. Farnlacher suggested that counsel for Ms. Ferguson "contact Fidelity directly" if he wanted to pursue "additional account level materials."  (Doc. 18-1, p. 15).[6]

On July 18, 2019, Ms. Ferguson and Ms. McClinton sued BBVA, alleging "that the Plan participants[] lost approximately $47,000,000 of their retirement money as a result of BBVA's mismanagement . . . ."  (Doc. 1, p. 69, ¶ 124).  In their complaint, the plaintiffs state that they had:

> exhausted all available administrative remedies pursuant to 29 U.S.C. §1133, prior to the filing of the Complaint (there are none).  There are no provisions or procedures in the plan documents to make or appeal the decisions of the Defendant in regard to breach of fiduciary duty claims.  The designated remedy for a breach of fiduciary duty claim is a suit filed in federal court. [Summary Plan Description (current)] at 19.

2, Doc. 30-3, Doc. 30-4).  The Court does not believe that there is disputed evidence before it that would require the Court to convert the motion to dismiss into a motion for summary judgment.

[6] The SPD states:  "The Fidelity Management Trust Company is the trustee for the plan.  Its responsibility is to administer plan assets for the exclusive benefit of participants and beneficiaries."  (Doc. 15-3, p. 13).

Counsel for the named Plaintiffs requested access to any administrative procedures and none were provided. Thus, Named Plaintiffs exhausted all administrative remedies prior to filing, having confirmed there are none; to the extent Defendant alleges that some other procedure exists, based upon the information available to the Named Plaintiffs, it is clear such procedures and process are futile.

(Doc. 1, pp. 5–6, n.2).[7]

On September 19, 2019, BBVA moved to dismiss the plaintiffs' complaint for failure to exhaust administrative remedies.  (Doc. 14).  In its brief in support of its motion to dismiss, BBVA stated that § 8.7 of the Plan "establishes a claim and review procedure for aggrieved participants and beneficiaries" and that the Plan responded to Ms. Ferguson's pre-suit complaint for documents.  (Doc. 15, pp. 2–3). BBVA did not mention the fact that Ms. Ferguson had expressly asked BBVA to identify with specificity the grievance procedure that she should use, and BBVA had not answered her question.  Instead, BBVA noted that the plaintiffs admitted in their complaint that they had not pursued administrative remedies before filing suit.  (Doc. 15, p. 3).  BBVA argued at length that the plaintiffs must exhaust their breach of fiduciary duty claim against BBVA pursuant to § 8.7 of the Plan.  (Doc. 15, pp. 5– 11).  BBVA also noted that the Plan document gave the Retirement Committee "absolute discretion" to "make final, binding claims decisions" and argued that

---

[7] In an affidavit in opposition to BBVA's motion to dismiss, counsel for Ms. Ferguson stated that he filed Ms. Ferguson's complaint on July 18, 2019 because BBVA had not responded to his request for identification of a grieving process, and he recognized "the statute of limitations was eliminating potential claims by the day . . ."  (Doc. 18-1, p. 4, ¶ 14); *see also* (Doc. 18, p. 3).

authority "creates an administrative remedy that must be exhausted." (Doc. 15, pp. 8–9).

A few weeks after BBVA filed its motion to dismiss, on October 2, 2019, counsel for the plaintiffs submitted to BBVA a letter in which the plaintiffs requested access to the Plan's administrative remedies. Counsel wrote:

> BBVA has taken the position that the Plan provides for an administrative remedy for the claims made in the civil action. In our opinion, BBVA's representation to the District Court that there is an administrative remedy for such claims is incorrect. Nonetheless, BBVA has taken the position that there are administrative remedies and to the extent that there are appropriate remedies[,] the claimants submit this claim in an effort to take advantage of them.
>
> Accordingly, a claim is hereby made by the claimants for the relief requested in the Civil Action - namely that BBVA shall refund to the Plan the sum of $47 million (plus interest, attorney's fees, and additional lost investment opportunity costs) together with the other relief requested in the civil action. Section 503 of ERISA, 29 U.S.C. § 1133, and 29 C.F.R. § 2560.503-1. Specifically, the claimants hereby make a claim on the Plan in that BBVA has misused the Plan funds and their individual funds, and invested the Plan funds and their individual funds in an imprudent manner as further outlined in the civil action referenced above.

(Doc. 20-1, pp. 2–3). The plaintiffs asked BBVA to "please advise of the availability of a qualified, impartial decisionmaker with the power to afford the relief requested by ERISA § 409." (Doc. 20-1, p. 3). On the same date, counsel for the plaintiffs submitted an identical request for administrative review from another plan participant, Christine D. Drake. (Doc. 20-1, pp. 5–7). BBVA attached these

administrative claim letters to its reply brief in support of its motion to dismiss and cited the plaintiffs' letter in support of the motion.  (Doc. 20, p. 10; Doc. 20-1).

The Court denied BBVA's motion to dismiss.  (Doc. 23).  The Court noted the permissive language in the Summary Plan Description concerning administrative appeals following claim denials and the permissive language concerning a claimant's ability to file suit in federal court and stated that these provisions of the SPD offered plan participants "alternative avenues of recourse, none of which is mandatory."  (Doc. 23, p. 7).  The Court also noted the SPD language concerning misuse of plan assets and BBVA's argument that the misuse language opened the door to federal court only for claims of fraud or self-dealing and rejected the argument.  (Doc. 23, pp. 8–9).  The Court explained that the plaintiffs argued that they were excused from exhausting their administrative remedies because they had "requested access to any [required] administrative procedures and none were provided" and held that "to the extent the plaintiffs were required to exhaust available administrative remedies, the failure is excused."  (Doc. 23, p. 7) (quoting Doc. 18, p. 4).

In its initial motion to reconsider, BBVA argued that the Court "us[ed] the SPD to circumvent the Plan's plain terms" which require exhaustion.  (Doc. 26, p. 2).  BBVA added:  "because Plaintiffs have already invoked the Plan's administrative claims process and have been pursuing it since October 2, 2019, they

should be required to complete it. The Retirement Committee issued its decision on April 1, 2020. The Retirement Committee's decision letter is attached as Exhibit A. Plaintiffs' 60-day period to administratively appeal the decision expires on June 1, 2020." (Doc. 26, p. 2; *see also* Doc. 26-1 (April 1, 2020 decision letter)). BBVA also argued that the Court erred in following the analysis in the Eleventh Circuit Court of Appeals' decision in *Watts v. BellSouth Telecomms., Inc.*, 316 F.3d 1203 (11th Cir. 2003), because, according to BBVA's attorneys, the rationale of *Watts* does not apply when an attorney misinterprets the law. BBVA asserted that excusing plaintiffs' counsel's error "creates perverse incentives and allows participants to easily circumvent the exhaustion requirement established by controlling Eleventh Circuit precedent." (Doc. 26, p. 2).

In its first supplement in support of its motion to reconsider, BBVA pointed out that its Retirement Committee issued a decision on the administrative claims of Ms. Ferguson, Ms. McClinton, and Ms. Drake on April 1, 2020. BBVA explained that Ms. Ferguson and Ms. McClinton had opted not to file an administrative appeal, but Ms. Drake had filed an administrative appeal. (Doc. 29, pp. 1–2). BBVA argued that the plaintiffs must amend their complaint to reflect the administrative developments and to add Ms. Drake as a plaintiff so the "most efficient path forward is for the Court to reconsider its denial of BBVA's motion to dismiss or to certify the exhaustion issue for immediate appeal." (Doc. 29, p. 2).

BBVA filed another brief in support of its motion to reconsider in which it repeated many of its arguments and asserted that "[t]he Plan unambiguously required Plaintiffs to exhaust their administrative remedies before filing suit."  (Doc. 34, p. 3).   BBVA submitted that failure to dismiss the plaintiffs' complaint would "[w]ast[e] the resources the parties have already spent on the administrative process" and reiterated that "Plaintiffs have no valid excuse for filing this suit before exhausting the Plan's administrative remedies" and that the Court "clearly erred by applying *Watts* when the Plan unambiguously requires exhaustion."  (Doc. 34, p. 4). In support of its request for interlocutory certification for appeal of the order denying its motion to dismiss, BBVA argued that if it succeeded on appeal, "this case will be over, and any further proceedings in this Court before the appeal will then be a waste."  (Doc. 34, p. 5).  Implicit in BBVA's argument is the notion that dismissal for failure to exhaust should be dismissal with prejudice.

Recently, the plaintiffs filed a motion to consolidate their lawsuit with Ms. Drake's separate action.  (Doc. 35).  The Court set the motion to consolidate for a hearing.  During the hearing, the Court gave BBVA an opportunity to address its motion to reconsider.  BBVA argued that the motion to reconsider would be moot if the Court consolidated the *Ferguson* action into *Drake* but not if the Court consolidated *Drake* into *Ferguson* and asserted that it was the Court's fault that Ms. Ferguson and Ms. McClinton did not fully exhaust their administrative remedies

because the Court's memorandum opinion denying BBVA's motion to dismiss lulled Ms. Ferguson and Ms. McClinton into a sense of complacency. (February 10, 2021 minute entry).[8] After the hearing, to respond to a question that the Court posed during the hearing concerning the BBVA SPD, BBVA filed another supplement to its motion to reconsider. (Doc. 40).

## III.

### Motion to Reconsider

We begin our analysis of BBVA's arguments for dismissal for failure to exhaust administrative remedies with some fundamentals.

First, although the ERISA statute does not require administrative exhaustion of ERISA claims, in the Eleventh Circuit Court of Appeals, "plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court." *Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1223 (11th Cir. 2008) (citations omitted). "This exhaustion requirement applies equally to claims for benefits and claims for violation of ERISA itself." *Bickley*, 461 F.3d at 1328. Exhaustion, a "policy-based requirement," *Watts*, 316 F.3d at 1207, "'reduce[s] the number of frivolous lawsuits under ERISA, minimize[s] the cost of dispute resolution, enhance[s] the plan's trustees' ability to carry out their fiduciary duties expertly and efficiently by preventing premature judicial intervention in the decisionmaking

---

[8] A court reporter was present for the hearing.

process, and allow[s] prior fully considered actions by pension plan trustees to assist courts if the dispute is eventually litigated,'" *Bickley*, 461 F.3d at 1330 (quoting *Mason v. Cont'l Group, Inc.*, 763 F.2d 1219, 1227 (11th Cir. 1985)).

The Eleventh Circuit Court of Appeals has stated that it "created the administrative requirement," and it is "still in the process of shaping it insofar as new factual scenarios are concerned." *Watts*, 316 F.3d at 1207. The Eleventh Circuit Court of Appeals has refused to apply the exhaustion doctrine when doing so "help[s] promote the important purposes served by the doctrine." *Watts*, 316 F.3d at 1209. In *Watts*, the Eleventh Circuit considered whether it should enforce the Circuit's exhaustion requirement "when the claimant's failure to exhaust her administrative remedies is the result of language in the summary plan description that she reasonably interpreted as meaning that she could go straight to court with her claims." 316 F.3d at 1204. The Court of Appeals refused to apply the exhaustion doctrine to "help ensure that employers and plan administrators take steps to clarify language that may cause claimants not to exhaust their administrative remedies." *Watts*, 316 F.3d at 1209.

Second, "[t]he decision of a district court to apply or not apply the exhaustion of administrative remedies requirement for ERISA claims is a highly discretionary decision." *Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1315 (11th Cir. 2000). The Eleventh Circuit will review a district court's decision "to apply or not apply

the exhaustion of administrative remedies requirement for ERISA claims . . . only

for a *clear* abuse of discretion." *Bickley*, 461 F.3d at 1328 (emphasis in *Bickley*).

Third, when the language of the plan document is ambiguous, the general rule

in ERISA cases is that "[a]mbiguities in ERISA plans are construed against the

drafter of the document, and a claimant's reasonable interpretation is viewed as

correct." *White v. Coca-Cola Co*., 542 F.3d 848, 855 (11th Cir. 2008) (citing *Lee v.

Blue Cross/Blue Shield of Ala*., 10 F.3d 1547, 1551 (11th Cir. 1994)).  In *Crowder*

*v. Delta Air Lines, Inc.*, the Eleventh Circuit explained:

> "Borrowing from state contracts law," federal courts have "further
> developed rules of contract interpretation in construing ERISA plans,"
> including that "[w]e first look to the plain and ordinary meaning of the
> policy terms to interpret the contract." *Alexandra H. v. Oxford Health
> Ins. Inc. Freedom Access Plan*, 833 F.3d 1299, 1307 (11th Cir. 2016).
> If we "conclude a term is ambiguous," meaning it is "susceptible to two
> or more reasonable interpretations that can be fairly made," then we
> apply "the rule of contra proferentem," which requires us
> to construe the ambiguity against the plan drafter. *Id.*

963 F.3d 1197, 1203 (11th Cir. 2020); *Tippett v. Reliance Standard Life Ins. Co*.,

457 F.3d 1227, 1235 (11th Cir. 2006) ("If the plan is ambiguous, under Georgia

decisions and our own we must construe the ambiguities against the drafter, and the

claimant's interpretation is considered correct.").

Fourth, when a district court determines that a plan participant failed to

exhaust his claim for benefits administratively before filing a federal lawsuit, and

the district court does not excuse the failure to exhaust, the district court commits

reversible error if the court dismisses the participant's federal action with prejudice. *Lanfear*, 536 F.3d at 1220.  In those circumstances, a district court may either dismiss an ERISA lawsuit without prejudice or stay the litigation to allow the plaintiff to exhaust her administrative remedies.  *Lanfear*, 536 F.3d at 1220, 1225. A district court would run afoul of binding precedent if it were to eliminate an ERISA plaintiff's claim entirely for failure to exhaust by dismissing a plaintiff's claim with prejudice.

With those ground rules in mind, we turn to BBVA's motion to dismiss for failure to exhaust.  The Court begins, as it did in its initial opinion, with Ms. Ferguson's direct, specific, unambiguous request to the Plan Fiduciary for information concerning exhaustion.  In his May 2019 letter to the Plan Administrator (by definition, a plan fiduciary, *see* footnote 2), counsel for Ms. Ferguson explained that Ms. Ferguson believed, essentially, that the numbers in the Plan's Form 5500s did not add up, stated that Ms. Ferguson wanted to investigate whether the Plan "had a prudent methodology for the selection of the investment options for the Plan menu" by examining the documents that she was requesting, and asked:

> [W]e are not aware of any provision in the plan documents that provides for grievances regarding the Plan.  If there is such a process, please identify it with specificity in your response to this letter, and produce all documents related to the administrative process.

(Doc. 18-1, pp. 7–8).  The question not only was direct, specific, and unambiguous; it also was important because an ERISA participant who wishes to assert an ERISA

claim has an obligation to "exhaust available administrative remedies." *Lanfear*, 536 F.3d at 1223.  Through her attorney, Ms. Ferguson asked the Plan Administrator to tell her plainly what administrative procedure was available to her to pursue her concerns about the management of the Plan and Plan investments.[9]  The Plan Administrator replied that Ms. Ferguson's request for information was "unclear" and "overly broad" and did not appear to be within the scope of the information to which Ms. Ferguson was statutorily entitled.  (Doc. 18-1, p. 10).  So, the Plan Administrator did not answer Ms. Ferguson's question and did not identify "with specificity" (or at all) a "provision in the plan documents that provides for grievances regarding the Plan."

The documents that the Plan Administrator mailed to Ms. Ferguson's attorney, at best, were ambiguous with respect to administrative remedies for mismanagement of the Plan's investments.  Neither the SPD nor the Plan document contains an express provision concerning administrative procedures for claims for breach of fiduciary duty.

---

[9] In *Watts*, the Eleventh Circuit remarked that "[t]o attorneys and judges familiar with the law in general and with ERISA law in particular, it may seem obvious that administrative remedies must come before a lawsuit . . . ."  *Watts*, 316 F.3d at 1208.  Ms. Ferguson's attorney's question demonstrates his awareness of the general exhaustion requirement and his understanding that his client must exhaust the administrative remedies provided in the BBVA Plan.  In the absence of an express provision concerning administrative procedures for breach of fiduciary duty claims, counsel for Ms. Ferguson reasonably requested guidance from the Plan Administrator.  In fact, as discussed below, the SPD directs plan participants to do just that.

BBVA's summary plan description, "the statutorily mandated means of informing participants of the terms of the plan and its benefits," contains a section captioned: "**Applying for Benefits**." (Doc. 15-3, p. 15) (emphasis in SPD); *Alday*, 906 F.2d at 665. The language of the introduction to the section indicates that the section applies to requests for payment of vested benefits under the plan. The SPD states that a participant or beneficiary who wishes "to request payment of his or her vested benefit under the plan" must "apply in writing to the Plan Administrator" and "must [] set forth the preferred method of payment." (Doc. 15-3, p, 15). The introduction to the "**Applying for Benefits**" does not mention other varieties of claims. On its face, the "**Applying for Benefits**" section of the SPD does not appear to apply to Ms. Ferguson's claim regarding the mismanagement of plan investments because Ms. Ferguson was not and is not seeking payment of plan benefits. Ms. Ferguson and Ms. McClinton contend that BBVA's conduct caused the plan fund to lose millions of dollars of value, and they ask BBVA to restore that value for them and for all members of the plan.[10]

After the introductory paragraph, the "**Applying for Benefits**" section of the SPD sets forth almost verbatim parts (a)(1) and (a)(2) of the "General Claim Procedure" that appears in Section 8.7 of the Plan document and informs a claimant

_____

[10] In *Watts*, the Eleventh Circuit began its analysis with the introductory paragraph to the "Benefit Claim and Appeal Procedures" section of the SPD at issue in that case. *Watts*, 316 F.3d at 1205.

that if the Retirement Committee denies her claim for benefits, she "may appeal." (Doc. 15-3, p. 15).  The SPD omits from the "General Claim Procedure" discussion part (c) of Section 8.7, the language in the Plan document that, according to BBVA, obligates Ms. Ferguson and other participants to exhaust their claims for breach of fiduciary duty for mismanagement of the plan investments before filing a claim in court.

Because the SPD makes the language regarding "General Claim Procedure" in the "**Applying for Benefits**" section subordinate to an initial request for payment of benefits, a reasonable plan participant would not understand from the SPD that the claim procedure applies to a claim for breach of fiduciary duty in which no payment is sought.[11]  The SPD contains another section titled "**Plan Administration**."  (Doc. 15-3, pp. 14–15).  In that section, the SPD explains that BBVA is the Plan Administrator and that BBVA has delegated to the BBVA Retirement Committee various "duties, powers or responsibilities," including "Interpreting the plan" and "Establishing the funding policy for the plan and trust

---

[11] The language of an SPD is evaluated under a reasonable plan participant standard, even when a plan participant like Ms. Ferguson is represented by counsel.  As noted, the SPD, by statutory mandate, must inform plan participants of their rights and obligations under their ERISA plan and under the ERISA statute.  A plan participant should not have to hire a lawyer every time she wishes to make a claim for benefits or to ask questions about the management of her plan.  A plan fiduciary is statutorily obligated to provide an SPD that a reasonable participant can understand and follow. *See* 29 C.F.R. § 2520.102–2(a) ("The summary plan description shall be written in a manner calculated to be understood by the average plan participant.").

and selecting the investment funds available for investing your salary reduction contributions."  (Doc. 15-3, p. 15).  The "**Plan Administration**" section of the SPD does not mention an administrative process for claims for breach of fiduciary duty.  The "**Plan Administration**" section of the SPD does state:  "Employees with questions regarding the plan should address them in writing to the Retirement Plan Administrator."  (Doc. 15-3, p. 15) (street address omitted).  At the risk of being overly repetitive, that is precisely what Ms. Ferguson did; she asked the Plan Administrator to tell her plainly and precisely whether the Plan contained a process for addressing grievances concerning Plan management and Plan investments.  The Plan Administrator did not answer Ms. Ferguson's question.[12]

The Plan document is much like the SPD.  Section 8.7, the section of the Plan document that contains the "Exhaustion of Claims" provision on which BBVA relies in its motion to dismiss, is a subpart of Article VIII of the Plan document, titled "DISTRIBUTION OF BENEFITS."  (Doc. 15-1, p. 62).  Article VIII addresses, among other things, the time of benefit payments and the method of payments.  The "General Claim Procedure" in Section 8.7(a) concerns "a claim for benefits under the Plan."  The Plan document does define the term "claim for benefits."  Like the

---

[12] In the final section of the SPD, the "**ERISA Rights**" section, the SPD states:  "ERISA provides that all plan participants are entitled to:  . . . Obtain copies of all plan documents and other plan information upon written request to the plan administrator."  (Doc. 15-3, p. 19).  Later in the "**ERISA Rights**" section, the SPD states:  "If there is any question about the plan, employees should contact the plan administrator."  (Doc. 15-3, p. 20).

SPD, the Plan document states that if the Retirement Committee denies a claim for benefits, a claimant "may appeal" the Retirement Committee's decision.  (Doc. 15-1, p. 72; Doc. 15-3, p. 14).  Neither the SPD nor the Plan indicates to a claimant that the claimant must appeal to preserve her right to file a lawsuit concerning a claim for benefits.  In fact, the "**ERISA Rights**" section of the SPD states:  "If a claim for benefits is denied or ignored, in whole or in part, suit may be filed in a state or federal court."  (Doc. 15-3, p. 20).

BBVA argues that Section 8.7(c) of the Plan document makes an appeal a prerequisite to a lawsuit, but that is not what Section 8.7(c) says.  The opening phrase of Section 8.7(c) states:  "After exhaustion of the claims and review procedure as provided herein . . . ."  The "review procedure [] provided" in Section 8.7(a)(2) is not mandatory; the language of part (a)(2) is permissive.  The balance of the "After exhaustion" sentence in Section 8.7(c) provides:  "nothing shall prevent the claimant from pursuing any other legal or equitable remedy otherwise available, including the right to bring a civil action under Section 502(a) of ERISA, if applicable."  (Doc. 15-1, p. 75).  Whatever that convoluted sentence means, it does not indicate that a claimant who files a claim for benefits must appeal an adverse benefits decision before she files a lawsuit.[13]

---

[13] In *Watts*, the Eleventh Circuit cited favorably the following exhaustion provision in a plan document:

Section 8.7 does not mention claims for breach of fiduciary duty.  Section 8.7 does not address fiduciary obligations at all.  Article X, devoted to "<u>ADMINISTRATION OF THE PLAN</u>," identifies as "Named Fiduciar[ies] of the Plan the Retirement Committee, BBVA, and the Plan Fiduciary, among others. (Doc. 15-2, p. 7).  Article X allocates responsibilities for management of the Plan among the Named Fiduciaries and enumerates responsibilities assigned to the Retirement Committee.  (Doc. 15-2, pp. 7–10).  The Court has not located a provision in Article X concerning administrative procedures for claims for breach of fiduciary duty.

In sum, neither the Plan document nor the SPD suggests that BBVA's General Claims Procedure pertains to anything other than a claim for payment of vested benefits, and there is no language in the SPD or the Plan document that indicates that a claimant must file an administrative appeal before filing a lawsuit concerning a claim for payment of benefits.  Were the Court to make an administrative appeal under Section 8.7 a mandatory prerequisite to an ERISA lawsuit, the Court would rewrite the language of the BBVA Plan document in violation of the Supreme

---

No action at Law or in Equity shall be brought to recover under this PLAN document until the appeal rights herein provided have been exercised and the PLAN benefits requested in such appeal have been denied in whole or in part.

*Watts,* 316 F.3d at 1208 n.2 (quoting *Springer v. Wal-Mart Assocs. Group Health Plan*, 908 F.2d 897, 900 (11th Cir. 1990)).

Court's holding in *CIGNA*. Moreover, neither the Plan document nor the SPD contains an express provision describing a procedure for pursuing or exhausting a breach of fiduciary duty claim administratively.[14]

BBVA argues that under the Eleventh Circuit's decision in *Lanfear*, a claim for breach of fiduciary duty is, by definition, a claim for benefits so that the plaintiffs' breach of fiduciary claims are claims for benefits within the meaning of Section 8.7 of the Plan document. (Doc. 15, pp. 7–8). The argument conflates the issues in the *Lanfear* case. In *Lanfear*, the Eleventh Circuit first had to decide whether former employees of Home Depot who already had "received their benefit payments," but complained "that the payments were less than they should have been" were plan participants with standing under ERISA to sue for breach of fiduciary duty. *Lanfear*, 536 F.3d at 1219, 1221–23. The Court of Appeals held that

---

[14] Citing the Supreme Court's decision in *CIGNA*, BBVA argues that the Court "use[d] an excerpt from the SPD to alter the Plan's clear unqualified direction that a participant must exhaust the Plan's claims procedures before filing suit." (Doc. 26, p. 4) (citing *CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011)). In *CIGNA*, the district court eliminated and rewrote terms of the plan document at issue to conform the plan to communications from the plan administrator and then ordered the employer to pay benefits according to the reformed plan. *CIGNA*, 563 U.S. at 431. The Supreme Court held that § 502(a)(1)(B) of ERISA, codified at 29 U.S.C. § 1132(a)(1)(B), does not authorize a district court to reform the terms of a retirement plan. 563 U.S. at 436.

Here, the Court has not reformed the Plan document. The Court has observed that the Plan document does not explain, either in the definitions section or in § 8.7, what constitutes a "claim for benefits" for purposes of § 8.7's "Claim and Review Procedure," and the related section of the SPD seems to limit those claims to claims for payment of vested benefits. In doing so, the introductory language in the "Applying for Benefits" section of the SPD is consistent with Article VIII of the Plan document. A reasonable participant, trying to understand the claim procedure language in the Plan document and the SPD, would not understand that the claim procedure provisions pertain to claims for breach of fiduciary duty.

the former employees were seeking plan benefits, not damages, so the former employees had standing as plan participants to assert a claim under ERISA for breach of fiduciary duty. *Lanfear*, 536 F.3d at 1221–23.[15]

Then, the Eleventh Circuit had to decide whether the former employees had to exhaust their breach of fiduciary claims administratively before they could pursue their claims in federal court. On the exhaustion issue, the former employees argued that they were seeking damages, not benefits. *Lanfear*, 536 F.3d at 1224. Not surprisingly, the Eleventh Circuit did not allow the former employees to have their cake and eat it too. The Eleventh Circuit reiterated that the employees were seeking benefits, not damages. *Lanfear*, 536 F.3 at 1224. Then, with respect to the plan language concerning exhaustion, the Eleventh Circuit explained that "the plan provide[d] an administrative remedy for participants to challenge a wide range of claims, including breach of fiduciary duty" because the plan document required participants to submit a claim to the Plan administrators for "'any grievance, complaint or claim concerning any aspect of the operation or administration of the Plan or Trust, including but not limited to claims for benefits and complaints

---

[15] There is a clear factual distinction between *Lanfear* and this case. In *Lanfear*, the plaintiffs had received benefit payments and were seeking additional benefit payments. As noted, neither Ms. Ferguson nor Ms. McClinton has filed a claim for benefits under the Plan. The plaintiffs ask the Court to restore the value allegedly depleted from the Plan fund because of BBVA's purported breach of fiduciary duty. No doubt the plaintiffs want the value of the fund to increase so that when the time comes to request benefits, there will be a more robust fund. But to date, neither plaintiff has requested a distribution of plan benefits.

concerning the investments of Plan assets . . . .'"  *Lanfear*, 536 F.3d at 1224.  This broad language in the Home Depot plan document created an administrative remedy for breach of fiduciary claims.  There is no such language in the BBVA Plan document or in the BBVA SPD.

In *Lanfear*, the Eleventh Circuit Court of Appeals also noted its reliance in *Bickley* on the broad discretionary powers conferred on the *Bickley* plan administrator "to establish the availability of an administrative remedy."  *Lanfear*, 536 F.3d at 1224.  In *Bickley*, "the Plan's administrative scheme related to 'claims,'" a term defined in the plan as "[a] demand to the Benefits Claim Processor for the payment of benefits for reimbursable expenses under a medical, dental, disability, or other insurance plan."  *Bickley*, 461 F.3d at 1329 & n.8.  That sounds a lot like BBVA's SPD language concerning the payment of vested benefits.  Though there was no specific provision in the *Bickley* plan document describing administrative procedures for breach of fiduciary duty claims, and there was no provision in the plan document calling for administrative exhaustion of "any grievance, claim, or complaint" as in *Lanfear*, the plan in *Bickley* stated, "[i]f you have questions about your plan, you should contact the Plan Administrator," and the plan conferred upon the Plan Administrator "the exclusive responsibility and complete discretionary authority to control the operation and administration of the Plan, with all power necessary to ... resolve all interpretive, equitable and other questions that shall arise

29

in the operation and administration of this Plan." *Bickley*, 461 F.3d at 1329.  The Eleventh Circuit held that on the record in that case, the district court did not abuse its discretion in requiring the plaintiff to exhaust administrative remedies before filing a lawsuit because the provisions of the plan at issue, read together and in light of ERISA's statutory scheme, provided the plaintiff and other plan participants an administrative remedy.  *Bickley*, 461 F.3d at 1329.  The Court of Appeals stated that the Plan Administrator not only could review such claims, but the Plan Administrator had "the duty to consider the pursuit of breach of fiduciary claims on behalf of the Plan" under ERISA § 409.  *Bickley*, 461 F.3d at 1330.

BBVA points out that under § 10.5 of its plan document, the BBVA Retirement Committee has "the discretion to construe and interpret the Plan, decide all questions of eligibility, determine the manner and timing of distributions under the Plan, set a funding policy, and select the Plan's investment options. Tab 1 Ex. A, Plan, §§ 5.1, 10.5(a), (g), (h). The Retirement Committee's decisions are 'final, binding and conclusive on all parties having or claiming a benefit under [the] Plan.' *Id.* § 10.5."  (Doc. 15, p. 2).  BBVA reasons that "[t]he Retirement Committee therefore has the absolute discretion to make the initial decisions relevant to Plaintiffs' breach of fiduciary duty claims."  (Doc. 15, p. 2).  Under *Bickley*, these powers alone may require administrative exhaustion of a breach of fiduciary duty

claim, despite the more limiting administrative exhaustion language elsewhere in Plan document and SPD.[16]

So, the Court restates its initial holding: "to the extent the plaintiffs were required to exhaust available administrative remedies, the failure is excused." (Doc. 23, p. 7). Why? Because Ms. Ferguson's attorney sent the plan administrator a letter asking that the administrator explain in writing with specificity whether there was a grievance policy that Ms. Ferguson must follow, the BBVA Plan Administrator responded that Ms. Ferguson's request was overly broad and unclear and was not information to which Ms. Ferguson was statutorily entitled, and the Plan Administrator did not explain to Ms. Ferguson in writing that § 8.7 or § 10.5—take your pick—required administrative exhaustion of all claims concerning the BBVA Plan, whether they be claims for benefits or claims concerning the administration of the Plan. Then, when Ms. Ferguson sued BBVA, BBVA asked the Court to dismiss her action because she did not exhaust her breach of fiduciary duty claim as required

---

[16] Given the Supreme Court's instruction that a court must enforce a plan as written and may not alter the terms of a plan document, *CIGNA*, 563 U.S. at 463, the Court wonders whether broad language concerning discretionary powers, which all plan administrators typically have under plan instruments, suffices to give rise to an administrative remedy for claims for breach of fiduciary duty when, as in this case, the only express provision in plan documents concerning administrative procedures concerns claims for payments of benefits, and the plaintiffs do not seek payment of benefits. To resolve BBVA's motion to reconsider, the Court does not have to anticipate whether the Supreme Court's decision in *CIGNA* may cause the Eleventh Circuit to revisit its holding in *Bickley* because the Court's holding excuses the plaintiffs' failure to exhaust administrative remedies before filing this action, if an administrative remedy for breach of fiduciary claims is available under BBVA's Plan document.

by § 8.7 of the plan, argued that Ms. Ferguson had "no valid excuse for filing this suit before exhausting the Plan's administrative remedies," and requested a dismissal that would bring Ms. Ferguson's and Ms. McClinton's claims to an end. Colloquially, that's a "gotcha."  In the language of *Bickley*, that's breach of duty. When Ms. Ferguson's attorney asked the Plan Administrator to state in writing whether the plan document contained provisions setting forth procedures for grievances concerning the Plan, the Plan Administrator was obligated to respond. The Plan Administrator could not hold his cards to his vest and then play them after Ms. Ferguson and Ms. McClinton filed suit.  A direct question requires a direct answer from a fiduciary.

Excusing administrative exhaustion in the face of the Plan Administrator's conduct comports with the policies underlying the exhaustion requirement.  If a plan administrator wishes to have an opportunity to review and attempt to resolve disputes with plan participants before participants file lawsuits, then plan administrators should respond when a plan participant asks for direction concerning exhaustion of administrative remedies.  If the participant asks the plan administrator to identify the plan provision that provides procedures for grievances, the plan administrator should not hide the ball.  As this case illustrates, dodging questions from plan participants increases the cost of dispute resolution.  The parties have filed a total of eight briefs and several motions concerning exhaustion in this case.  As in

*Watts*, this Court's decision "will help ensure that employers and plan administrators take steps to clarify language that may cause claimants not to exhaust their administrative remedies." *Watts*, 316 F.3d at 1209. BBVA has not suggested that the plaintiffs' claims are frivolous, and if the plaintiffs' allegations prove true, then every participant who has an interest in the SmartInvestor 401(k) Plan at issue will benefit from having whatever value may have been lost restored to the fund.

With respect to efficient dispute resolution, the Court notes that during a recent hearing in this case, the Court suggested that the parties undertake an early mediation to try to curb the expense of litigation. (Feb. 10, 2021 docket entry). BBVA responded that it would not consider mediation until the plaintiffs fully exhausted their claims. As the Court will discuss next, the plaintiffs already have completed the first stage of the § 8.7 administrative process, the second stage is optional under the language of the plan document, and further efforts to exhaust the plaintiffs' breach of fiduciary duty claim would be futile. Moreover, BBVA wants to take the expensive and time-consuming step of pursuing an interlocutory appeal. BBVA's conduct belies any interest on the Plan's part in the efficient resolution of the plaintiffs' breach of fiduciary duty claims. BBVA seems to be using exhaustion as a sword rather than a shield.

For these reasons, the Court maintains its ruling that if there is an exhaustion requirement in BBVA's plan document for claims for breach of fiduciary duty, the plaintiffs are excused from exhausting their claim before filing this action.[17]

BBVA argues, alternatively, that the plaintiffs' voluntary use of the Plan's claims procedures precludes the plaintiffs from continuing this action until they appeal administratively the denial of their breach of fiduciary duty claim. (Doc. 26, pp. 6–7). As noted, on October 2, 2019, several months after filing this lawsuit, Ms. Ferguson and Ms. McClinton submitted a breach of fiduciary duty claim to the Retirement Committee. (Doc. 20-1). Ms. Ferguson and Ms. McClinton filed their claim under protest. (Doc. 20-1, p. 2). The Retirement Committee completed its administrative review of the claim on April 1, 2020. (Doc. 26-1). Ms. Ferguson and Ms. McClinton did not exercise their right to appeal this denial under the administrative appeals process and instead continued this lawsuit. (Doc. 30, pp. 1–

_____

[17] The Court's order denying BBVA's motion to dismiss is mistaken in one respect. The SPD states that "[i]f plan fiduciaries misuse the Plan's assets, . . . suit may be filed in federal court." (Doc. 15-3, p. 20). The Court found that this provision in the SPD might open the door to a lawsuit without exhaustion of administrative remedies. (Doc. 23, pp. 9–10). The Eleventh Circuit has cautioned against construing language in an SPD or plan that states "[i]f plan fiduciaries misuse the Plan's assets, . . . suit may be filed in federal court" to provide an immediate right to sue in federal court. *Bickley*, 461 F.3d at 1329. In *Bickley*, plan participants could not rely on this statement in the SPD because the plan expressly reserved all rights to "resolve all interpretive, equitable and other questions that" arose under the plan exclusively to the plan administrator. 461 F.3d at 1329. Therefore, the Court vacates the analysis of the misuse provision in its order denying BBVA's motion to dismiss.

2).  BBVA argues that the Court's order denying the Plan's motion to dismiss caused Ms. Ferguson and Ms. McClinton not to appeal.  (Feb. 10, 2021 docket entry).

Ms. Ferguson and Ms. McClinton did not have to appeal the denial of their administrative breach of fiduciary claim for two reasons.  First, as mentioned several times, § 8.7 of BBVA's plan document states that "claimants" like Ms. Ferguson and Ms. McClinton "may appeal" a decision from the Retirement Committee denying an administrative claim.  (Doc. 15-1, p. 72).  The plain language of the appeal provision in the Plan document and in the SPD is permissive, not mandatory. Again, if the Court were to revise the Plan document in favor of BBVA to make an appeal mandatory, the Court would violate the Supreme Court's holding in *CIGNA* because the Court would be impermissibly rewriting the terms of the plan document. Second, requiring Ms. Ferguson and Ms. McClinton to appeal would be a futile exercise because we already have the Retirement Committee's decision on administrative appeal, thanks to Ms. Drake.  As BBVA has indicated, Ms. Drake exhausted her administrative appeal, and the Retirement Committee denied her claim.  (Doc. 30, pp. 1-2; *see also* Doc. 37, p. 3).  Ms. Ferguson, Ms. McClinton, and Ms. Drake assert the same breach of fiduciary duty claims against BBVA, and they all seek the same remedy — restoration of the value of the plan fund.  Even if the Court were to grant BBVA's wish and reform the language of § 8.7 to make an administrative appeal a mandatory prerequisite to a lawsuit, the result of the appeal

would be a foregone conclusion.  The Eleventh Circuit does not require an appeal

under these circumstances.  *Bickley*, 461 F.3d at 1328 (explaining that "'a district

court has the sound discretion to excuse the exhaustion requirement when resort to

administrative remedies would be futile . . .'") (quoting *Perrino v. S. Bell Tel. & Tel.

Co*., 209 F.3d 1309, 1315 (11th Cir. 2000)); *Lanfear*, 536 F.3d at 1224 (same).

Therefore, the Court denies BBVA's motion for the Court to alter its order

denying BBVA's motion to dismiss for failure to exhaust administrative remedies.

### Motion for Certification of Immediate Appeal

Alternatively, BBVA asks this Court to certify this matter for appeal.

Specifically, BBVA asks the Court to certify two questions:

> (1) Under *CIGNA*, can *Watts* excuse an ERISA retirement plan
> participant's failure to exhaust available administrative remedies
> based on a provision within the summary plan document? (2) Is
> an ERISA retirement plan participant excused from exhausting
> available administrative remedies based on her attorney's
> reliance on the summary plan document, when the Plan
> unambiguously requires exhaustion?

(Doc. 26, pp. 9–10).

Under 28  U.S.C. § 1292(b), a district court may, in its discretion, certify for

immediate appeal an order in a civil case where the case "involves a controlling

question of law as to which there is substantial ground for difference of opinion and

[] an immediate appeal from the order may materially advance the ultimate

termination of the litigation."  Because the Eleventh Circuit strongly discourages

interlocutory appeals, movants must make a strong showing for certification.  *See McFarlin v. Conseco Svs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004) ("Because permitting piecemeal appeals is bad policy, permitting liberal use of [section] 1292(b) interlocutory appeals is bad policy.") (alteration added).

BBVA fails to meet this high burden.  As to the first question, the Eleventh Circuit has concluded that its holding in *Watts* is consistent with *CIGNA*.  *See Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan v. Montanile,* 593 Fed. Appx. 903, 909 (11th Cir. 2014) ("[CIGNA] only precludes courts from enforcing summary plan descriptions, pursuant to § 1132(a)(1), where the terms of that summary *conflict* with the terms specified in other, governing plan documents."), *rev'd  on  other  grounds sub nom.*, *Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, 36 S. Ct. 651 (2016) (emphasis in *Montanile*).  The Court's analysis of BBVA's motion to reconsider indicates why the premise of BBVA's second question is wrong on several levels.  The "clear abuse of discretion" standard for reversal of a district court's decision to excuse administrative exhaustion for an ERISA claim also cuts against a request for interlocutory appeal.  And if BBVA had been sincerely interested in materially advancing the resolution of the plaintiffs' claims for breach of fiduciary duty, BBVA would have answered Ms. Ferguson's attorney's question regarding the administrative process for grievances concerning the Plan.  An appeal will not materially advance the resolution of this litigation because an appeal, at

most, would produce a stay of the litigation for Ms. Ferguson and Ms. McClinton to complete the administrative appeals process.  Therefore, the Court denies BBVA's motion for certification for interlocutory appeal.

## CONCLUSION

For the reasons states above, the Court denies BBVA's motion to reconsider and motion for certification for appeal.  (Docs. 26, 29, 30, and 40).  Because BBVA answered the complaint on May 26, 2020, (Doc. 28), BBVA's motion to stay the answer deadline is denied as moot, (Doc. 27).  Additionally, the Court denies as moot BBVA's motion to stay Rule 26 obligations.  (Doc. 32).

**DONE** and **ORDERED** this 19th day of February, 2021.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE