

FILED
2023 Sep-19  AM 10:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| GLORIA FERGUSON and CASSANDRA McCLINTON, individually and on behalf of others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | CLASS ACTION |
| v. | ) ) | Case No.: 2:19-cv-01135-MHH |
| PNC FINANCIAL SERVICES GROUP, INC., *as successor in interest to BBVA Compass Bancshares, Inc.*, | ) ) ) ) ) | |
| Defendant. | ) | |

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

**COME NOW**, the Named Plaintiffs, Gloria Ferguson and Cassandra McClinton, who hereby submit this Memorandum in Support of their Motion for Preliminary Approval of Class Settlement.

## INTRODUCTION

On August 17, 2023, the Named Plaintiffs and Defendant PNC Financial Services Group, Inc.[1], agreed to a Settlement[2] that provides $6.1 million dollars in monetary relief to the proposed Class.

The Named Plaintiffs submit that this settlement is consistent with Fed. R. Civ. P. 23(e)(2), fair, reasonable, adequate, likely to warrant final approval, and consistent with settlements previously approved by this Court.  *See McWhorter v. Ocwen Loan Servicing, LLC, 2019 U.S. Dist. LEXIS 244093, \*12* ("The Court finds preliminarily that the settlement agreement is sufficiently fair, reasonable, and adequate").   In addition, the proposed Settlement Class is certifiable under Rule 23.

The resolution was reached after five (5) years of litigation and numerous arms-length, intensely fought negotiation sessions and mediation sessions.  During the course of the litigation and settlement negotiations, hundreds of thousands of pages of documents involving financial data were reviewed by the parties and their experts, deposition work was conducted, and multiple motions were filed. Ultimately with the assistance of an experienced mediator, the parties were able to reach an arms-length agreement to resolve the litigation after years of protracted negotiations.

---

[1] As successor in interest to BBVA Compass Bancshares, Inc. ("BBVA").

[2] The fully executed settlement agreement ("Settlement") is attached as Exhibit A.

In light of the litigation risks further prosecution of this action would inevitably entail, the Named Plaintiffs respectfully request this Court 1) preliminarily approve the settlement for the entire proposed class, 2) find that the Settlement Class is likely to be certified at final approval, 3) appoint Class Counsel and Class Representatives, 4) preliminarily approve the Plan of Allocation and Notice, and 5) set a Final Approval Hearing.

Plaintiffs submit the following Exhibits to assist the Court's review:

- **Exhibit A**:  Settlement Agreement
  - o **Exhibit 1**: Proposed Preliminary Approval Order
  - o **Exhibit 2**: Class Notice
  - o **Exhibit 3**: Proposed Final Approval Order
- **Exhibit B**: Proposed Plan of Allocation
- **Exhibit C**: Declaration of Plaintiffs' Counsel D.G. Pantazis, Jr.
- **Exhibit D**: Declaration of JAMS Mediator Robert E. Meyer
- **Exhibit E**: Proposed Schedule of Events

## BACKGROUND

## I.   Plaintiffs' Claims and Litigation History

The Named Plaintiffs first filed their Complaint on July 18, 2019 (Doc. 1) but the litigation began with their participation in the Administrative Process outlined in the Plan documents.  On May 16, 2019, Ms. Ferguson's attorney sent a letter to

BBVA's Director of Benefits, informing BBVA that Ms. Ferguson had observed …

that the costs and expenses of administering the Plan are outside a normal range and

requesting that BBVA provide to Ms. Ferguson a list of documents for review.  The

May 16, 2019 letter also asked BBVA to identify any administrative process for

grievances regarding the Plan.  In response, BBVA provided to Ms. Ferguson with

documents, including the current plan with amendments and the current SPD.  On

July 18, 2019, Ms. Ferguson and Ms. McClinton sued BBVA, alleging that the Plan

participants lost approximately $47,000,000 of their retirement money as a result of

BBVA's mismanagement.  Doc. 41, at 9-11.

The Named Plaintiffs filed this lawsuit, individually, on behalf of a class they

seek to represent, and on behalf of the Plan itself.  Ms. Ferguson and Ms. McClinton

are participants in the Compass SmartInvestor 401(k) Plan (the "Plan").   Under the

terms of the Plan, BBVA administered and acted as fiduciary of the Plan.  In this

capacity, BBVA was responsible for selecting, monitoring, evaluating, and replacing

the Plan's investment options.  Doc. 1.

The Named Plaintiffs alleged that BBVA breached its fiduciary duties of

prudence and loyalty to them and to the other participants in the Plan, and sought to

have restored to the Plan fund any losses to the Plan resulting from the breaches of

fiduciary duties and other equitable or remedial relief as appropriate.  Doc. 1.

On September 14, 2019, BBVA filed a Motion to Dismiss the Complaint. Doc. 14.  On May 12, 2020, the Court denied BBVA's Motion to Dismiss.  Doc. 23. On May 22, 2020, BBVA filed a Motion to Alter or Amend, Motion for Certification of Immediate Appeal, Motion to Stay Pending Resolution of § 1292(B) Proceedings and Memorandum in Support.  Doc. 26.  On May 26, 2020, BBVA filed its Answer. On June 4, 2020, BBVA filed a Supplemental Motion to Alter Judgement.  Doc. 29. On February 29, 2021, the Court denied BBVA's Motion to Reconsider and Motion for Certification of Immediate Appeal.  Doc. 41.  On March 15, 2021, Plaintiffs filed an Amended Complaint.  Doc. 49.  On October 29, 2021, BBVA filed its Answer and Affirmative Defenses to the Amended Complaint.  Doc. 69.

On June 10, 2022, the Parties informed the Court that PNC completed its acquisition of BBVA as of June 1, 2021, thereby becoming the successor in interest to BBVA and the sole remaining Defendant in this Action.  Doc. 96.  In conjunction with the acquisition of BBVA by PNC, the Plan was terminated on October 9, 2021. Certain participants in the Plan became participants in the PNC Financial Services, Group, Inc. Incentive Savings Plan (the "PNC Plan").

On September 19, 2022, PNC filed an Amended Answer.  Doc. 101.  On September 21, 2022, PNC filed a Motion for Judgment on the Pleadings.  Doc. 102. On September 21, 2022, PNC filed a Motion to Dismiss for Lack of Jurisdiction Pursuant to Rules 12(b)(1) and 12(h)(3).  Doc. 104.

Plaintiffs, through their counsel, responded to all motions filed on the docket, participated in multiple hearings with the Court, and engaged in voluminous discovery throughout, dating back to the original Administrative process.  In doing so, Plaintiffs' counsel engaged qualified experts to prepare their case, reviewed tens of thousands of documents including extensive financial data and spreadsheets, issued subpoenas to multiple third-parties to connect the evidence, deposed PNC's corporate representative, and prepared to complete discovery in time to disclose their experts in accordance with the Federal Rules and the Court's operative scheduling Order.

## II.    Mediation and Settlement Negotiations

Throughout the intense litigation process outlined above, the parties engaged in consistent settlement negotiations.  On April 21, 2022, the parties conducted an in-person mediation with Robert Meyer of JAMS Mediation Group in Los Angeles, California.  On June 13, 2022, the parties participated in an information sharing meeting.  On July 14, 2022, the parties virtually participated in a Second Mediation with Mr. Meyer.  While these original sessions were unsuccessful, they did lay the groundwork for future discussions.

On July 13, 2023, negotiations between the parties recommenced in coordination with Mr. Meyer.  Over the next month, the parties held multiple calls, with each other and the mediator, and exchanged many emails.  Eventually, with the

help of Mr. Meyer, the parties reached an agreement in principle to resolve the case on August 17, 2023, and subsequently notified the Court of same.

## III.   The Terms of the Proposed Settlement

### A.   Monetary Relief and Release

In exchange for releases and for the dismissal of the action, PNC will make a substantial monetary payment of $6,100,000.00 to pay recoveries to Class members (the "Settlement Fund").    The Settlement Fund will be used to compensate Class members for their alleged losses, as well as to pay Class Counsel's attorneys' fees and expenses, Administrative Expenses of the Settlement, and the Class Representatives' incentive awards if ordered by the Court.  All amounts deposited in the Settlement Fund will be distributed in accordance with the terms of the proposed Settlement.  No residual monies will revert back to PNC.

Class members still in the PNC Plan will automatically receive distributions directly into their tax-deferred retirement accounts.  Class Members who left either the BBVA or PNC plans, and no longer have an active account in the PNC Plan, will be provided their distributions in the form of a check made out to them individually.

As described more fully in the Settlement Agreement, all Class Members are releasing PNC, their employees, agents, and related companies from all claims asserted in this litigation related to the Plan.  **Exhibit A, pp. 13-17**.  A complete copy

of the Release will be disseminated to the Class Members and available on the settlement website.  *See* **Exhibit 2** to the Settlement Agreement.

## B.    Non-Monetary Relief

Plaintiffs originally requested non-monetary relief from the Court.  Doc. 1 and Doc. 49.  However, the non-monetary relief has been satisfied by both changes to the Plan prior to its termination, as well as the termination of the Plan itself in 2021.  These voluntary changes provided substantial to the Class members.  Because the non-monetary relief advocated by Plaintiffs has been effectively satisfied, it was not necessary (or possible due to the termination) for Plaintiffs to demand additional non-monetary terms as part of the settlement with PNC.

## C.    Notice and Class Representatives Compensation

The Notice and Plan of Allocation meet the requirements of Rule 23.  The standard for the adequacy of a settlement notice in a class action is measured by reasonableness. *See* Fed. R. Civ. P. 23(e).  "In reviewing the class notice to determine whether it satisfies the [] requirements [of due process], 'we look solely to the language of the notices and the manner of their distribution.'" *Adams v. S. Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1286 (11th Cir. 2007)(quoting *Twigg v. Sears & Roebuck & Co.*, 153 F.3d 1222, 1226 (11th Cir. 1998)).

To satisfy due process requirements under Rule 23(b)(3) of the Federal Rules of Civil Produce, notice must be the "best practicable, 'reasonably calculated, under

all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1261 (S.D. Fla. 2016)(quoting P*hillips Petroleum Co. v. Shutts*, 472 U.S.797, 811-12 (1985)). Additionally, the *Morgan* court confirmed that in the Eleventh Circuit, "best practicable" notice did not require that every class member actually receive notice. *Id.* (citing *Juris v. Inamed Corp.*, 685 F.3d 1294, 1317 (11tth Cir. 2012)); *see also DANIEL R. COQUILLETTE et al., MOORE'S FEDERAL PRACTICE: CIVIL* ¶ 23.102. Rather, the relevant question is "whether the notice [] is reasonably calculated to reach the absent members. The fact that some class members may not actually receive timely notice does not render the notice inadequate as long as the class as a whole had adequate notice." *Morgan*, 301 F. Supp. 3d at 1261 (citing *MOORE'S FEDERAL PRACTICE: CIVIL* ¶ 23.102.

The proposed Notice attached hereto as **Exhibit 2** to the Settlement Agreement, meets the requirements of Rule 23 and of constitutional due process. The proposed Notice provides for direct notice to all Class Members (via postcard) which will include: the nature of the action; the composition of the Class; the claims, issues, and defenses applicable to Class Members; the right of a Class Member to to object to the Settlement; and the binding effect of the Settlement on Class Members. *See*, Fed. R. Civ. P. 23(c)(2)(B). The Notice also provides for the establishment of a

website dedicated to providing the information to anyone interested in learning about the settlement. *See*, Fed. R. Civ. P. 23(c)(2)(A).

PNC will provide all Notice required by CAFA.  Plaintiffs' counsel will select a Settlement Administrator who will maintain a database with all relevant settlement participant information, create and maintain a website with all necessary case and settlement information, disseminate Notice via mail, and maintain a hotline to field calls and inquiries.  *See* **Exhibit 2**.  The parties expect the Notice to be widely viewed as PNC, through its recordkeepers, maintained mailing address information for all members of the Class.  The Settlement Administrator will perform skip-tracing functions, if necessary, should any contact information prove outdated and will also cross check any change of address information prior to mailing the Notice.  *Id*.

A postcard Notice will be sent to each member of the putative Class via mail and the long-form Notice will also be maintained on the Settlement website.  *See* **Exhibit 2**.  Thus, the Notice more than adequately meets the terms of Rule 23.

All the Administrative Expenses to administer the proposed Settlement will be paid from the Settlement Fund except for the fees necessary to ensure the recordkeeper provides the data necessary to effectuate the settlement.  PNC has agreed to pay the recordkeeper fees in addition to the Settlement Fund.

For expenses associated with the Settlement Administrator who will send notice to Class members and provide other services to facilitate the Settlement, Plaintiffs received proposals from multiple candidates to provide these services. Plaintiffs' counsel is reviewing the proposals and will select a Settlement Administrator shortly. Additionally, PNC has received multiple proposals for Independent Fiduciary to review the terms of the Settlement. PNC will select the Independent Fiduciary shortly. These expenses will be deducted from the Settlement Fund.

Plaintiffs intend to seek incentive awards for the Named Plaintiffs in an amount approved by the Court. These awards will be paid from the Settlement Fund. Plaintiffs' counsel requests $10,000 each to be paid to Gloria Ferguson and Cassandra McClinton. This amount is consistent with prior precedent[3] recognizing the value of individuals stepping forward to represent a class, particularly in contested litigation like this where the potential benefit to any individual does not outweigh the cost of prosecuting class-wide claims and there are significant risks of no recovery and the risk of alienation from the employers and peers. *E.g., Champs Sports Bar & Grill Co. v. Mercury Payment Sys., LLC*, 275 F. Supp. 3d 1350, 1356

---

[3]*See Pledger v. Reliance Trust Co*., 2021 U.S. Dist. LEXIS 105868, *27 ("the Class Representatives in this case were not promised a 'bonus' or 'salary,' but undertook a considerable risk of alienation and harm to their reputations for seeking to enforce their rights under ERISA. But for their service and willingness to accept this risk, the Class would have received nothing."); *see also McWhorter v. Ocwen Loan Servicing*, 2019 U.S. Dist. LEXIS 232149, *37. "The Eleventh Circuit permits incentive awards."

(N.D. Ga. 2017) (Cohen, J.); *Ingram v. The Coca-Cola Co*., 200 F.R.D. 685, 694

(N.D. Ga. 2001) (Story, J.); *In re Dun & Bradstreet Credit Servs. Customer Litig*.,

130 F.R.D. 366, 374 (S.D. Ohio 1990); *see also Troudt v. Oracle Corp*., No. 16-175,

Doc. 236 at 9 (D. Colo. July 10, 2020); *Kelly v. Johns Hopkins Univ*., No. 16-2835,

2020 WL 434473, at *8 (D. Md. Jan. 20, 2020); *Cassell v. Vanderbilt Univ*., No. 16-

2086, Doc. 174 at 5 (M.D. Tenn. Oct. 22, 2019); *Tussey v. ABB, Inc*., No. 06-4305,

2019 WL 3859763, at *6 (W.D. Mo. Aug. 16, 2019); *Clark v. Duke Univ*., No. 16-

1044, 2019 WL 2579201, at *5 (M.D. N.C. June 24, 2019); *Kruger v. Novant Health,

Inc.*, No. 14-208, 2016 WL 6769066, at *6 (M.D. N.C. Sept. 29, 2016); *Spano v.

Boeing Co*., No. 06-743, 2016 WL 3791123, at *4 (S.D. Ill. Mar. 31, 2016).  Plaintiffs

recognize the Eleventh Circuit in *Johnson v. NPAS Sols*., 975 F.3d 1244 (11th Cir.

2020) recently reversed the grant of an incentive award to a class representative and

held that "[a] plaintiff suing on behalf of a class ... cannot be paid a salary or be

reimbursed for his personal expenses." *Id*. at 1257.  However, as the Court in *Pledger

v. Reliance Trust Co*., 2021 U.S. Dist. LEXIS 105868 found, the "factual settings are

distinguishable from this case".  *Id*. at *26.  Namely, Plaintiffs were not promised a

bonus or salary, and took on considerable risk to file these claims while still under

the employ of the Defendant.  Moreover, without their work, the Class would have

received nothing, and the Settlement Agreement is in no way contingent upon the

receipt of an incentive award.  *Pledger v. Reliance Trust Co*., 2021 U.S. Dist. LEXIS

105868, *27("Without them, the class members would receive nothing and their retirement plans would not have been adjusted")(quoting *Henderson v. Emory Univ.*, No. 16-cv-2920-CAP (N.D. Ga. Nov. 4, 2020) (memorandum and order) [ECF 236] at 12 wherein another Federal Court awarded Named Plaintiffs in an ERISA breach of fiduciary duty case incentive awards and distinguished the analysis made in *Johnson v. NPAS Sols*)[4]; *see also Dean, et al. v. Cumulus Media, Inc., et al.*, No. 1:20-cv-00847-TWT (N.D. Ga. July 10, 2023 (approving ERISA breach of fiduciary class action settlement and awarding case contribution awards to the named plaintiffs).

**D.     Attorneys' Fees and Costs**

In the Eleventh Circuit, "attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F. 2d 768, 774 (11th Cir. 1991); *Boeing v. VanGemert*, 444 U.S. 472, 478 (1980).  In this case, Plaintiffs' counsel will request attorneys' fees to be paid out of the Settlement Fund in an amount not more than one-third of the Settlement Fund, or $2,013,000.00, as well as reimbursement for costs incurred to prosecute this lawsuit.  *McWhorter v. Ocwen Loan Servicing*, 2019 U.S. Dist. LEXIS 232149, *38 ("The Court of Appeals and numerous district

---

[4] In Plaintiffs' motion for attorneys' fees, reimbursement of expenses, and case contribution awards, they will address this request in further detail.  At the preliminary approval stage, the Court need not address the merit of this request though.

courts in this circuit have held that one-third of the fund represents a reasonable attorneys' fee, especially in contingency fee cases, such as this one.").

Although Plaintiffs' counsel will not request a fee greater than one-third of the monetary recovery, counsel will not seek compensation for time associated with communicating with Class members or Defendants during the Settlement Period, or work required to enforce the proposed settlement.

## IV.   Settlement Approval Process

While the Court is undoubtedly aware of the process for settlement approval in cases such as this, for the sake of clarity, Plaintiffs highlight the following steps necessary to reach final approval.

First, the Court must determine whether to certify the class for settlement purposes. *McWhorter v. Ocwen Loan Servicing, LLC*, 2019 U.S. Dist. LEXIS 244093, *3("Because the parties presented a proposed settlement agreement before a decision on class certification, the Court must determine whether the proposed settlement class satisfies the requirements for class certification under Federal Rule of Civil Procedure 23").  The Court must also preliminarily approve the settlement, approving the notice proposed to the Class, and set a time for a hearing on final approval of the settlement.  Then, during the notice time period, notice will issue to the Class.  Afterwards, during the period between preliminary approval and the final approval hearing, the proposed settlement may be reviewed by Class Members who

can offer comment and objections.  Eventually, a final approval hearing must be conducted, and if the court is so inclined, an Order for Judgment will be entered. Once the Final Judgment Order is entered, the obligations of the Defendant under the Settlement Agreement are triggered.  Plaintiffs have provided a "Proposed Schedule of Events" to assist the Court in this analysis and process.  *See* **Exhibit E**.

## V.     The Court Should Certify the Class for Settlement Purposes

Under Rule 23(e)(1), at the preliminary approval stage, this Court must determine whether it is likely to be able to certify the class for settlement purposes at final approval.  In ERISA actions such as this, the criteria under Rule 23 are generally satisfied. *See Pizarro*, 2020 WL 6939810, at \*4 ("An ERISA action is generally the type of action that satisfies those criteria."). This case is no exception.

The parties have agreed to define the Class as established in § O of the Settlement Agreement (**Exhibit A, p. 5**).  This definition is consistent with that proposed in Plaintiffs' operative Complaint.  Doc. 49.  The parties have also agreed to stipulate to certification of a non-opt-out class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(1).  **Exhibit A, pp. 8-9**.

Courts may ultimately certify a class "solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *Borcea v. Carnival Corp*., 238 F.R.D. 664, 671 (S.D. Fla. 2006). As the Supreme Court has made clear, while a settlement class should satisfy the requirements of

Rule 23(a) and the relevant provision(s) of Rule 23(b), the Court "need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *see also Schorr v. Countrywide Home Loans, Inc*., 2015 WL 13402606, at *3 (M.D. Ga. Apr. 1, 2015)(quoting *Amchem*). Applying this standard, courts in this Circuit have certified classes for settlement purposes only. *See Bennett v. Boyd Biloxi, LLC*, No. CV 14-00330-WS-M, 2016 WL 6668926, at *2 (S.D. Ala. Nov. 8, 2016)("[F]or purposes of approving and effectuating the Settlement embodied in the Amended Settlement Agreement, and only for such purposes, the prerequisites for certifying this Action as a class action... have been met."); *O'Toole v. Pitney Bowes, Inc*., No. 1:08-CV-01645-RLV, 2009 WL 10672311, at *2 (N.D. Ga. Aug. 3, 2009)(noting that, "[f]or settlement purposes only," Rule 23 elements had been met).

Here, the Named Plaintiffs seek certification, for settlement purposes only, of the Class, which means that the Class should meet the tests established under Both Rule 23(a) and Rule 23(b)(1). The Settlement Class is likely to be certified at final approval for the reasons outlined below.

### A.   The Proposed Settlement Class Will Satisfy Rule 23(a)

Under Rule 23(a), certification is appropriate if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact

common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class: and (4) the representative parties will fairly and adequately protect the interests of the class." As demonstrated below, the Class satisfies each of the Rule 23(a) requirements.

### 1.    Numerosity – Rule 23(a)(1)

The numerosity requirement is satisfied when the class is "so numerous that joinder of all class members would be impracticable." Fed. R. Civ. P. 23(a)(1). Here, the Class consists of over twenty-seven thousand members, a number that easily meets this standard.  Thus, this element is likely to be satisfied at final approval.

### 2.    Commonality – Rule 23(a)(2)

To demonstrate commonality under Rule 23(a)(2), a putative class must prove that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). It is "well established" that the commonality threshold "is not high." *Dujanovic v. Mortgage America, Inc*., 185 F.R.D. 660, 667 (N.D. Ala. 1999); *see also Georgine v. Amchem Products, Inc*., 83 F.3d 610, 627 (3rd Cir. 1996)(recognizing "very low threshold for commonality"). The legal claims among the class members do not need to be exactly the same, *Kreuzfeld A.G.v. Carnehammar*, 138 F.R.D. 594, 599 (S.D. Fla. 1991), and not all questions of law or fact must be common, *Singer v. AT&T Corp*., 185 F.R.D. 681, 687 (S.D. Fla. 1998). Indeed, "'even a single common

question' will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011); *Carriuolo v. Gen. Motors Co*., 823 F.3d 977, 984 (11th Cir. 2016).

Importantly, Courts have regularly found commonality and certified classes where the defendant's records can be mined to identify class members, like here. *See, Roper v. Consurve, Inc*., 578 F.2d 1106, at 1109-10 (5th Cir. 1978); *see also, Smilow v. Sw. Bell Mobile Sys*., 323 F.3d 32, 40 (1st Cir. 2003) (common issues predominate "where individual factual determinations can be accomplished using computer records, clerical assistance, and objective criteria – thus rendering unnecessary an evidentiary hearing on each claim"); *Sadler v. Midland Credit Mgmt*., 2009 U.S. Dist. LEXIS 26771, at *4-5 (N.D. Ill. Mar. 31, 2009) (automated query of defendants' database would yield "objective criteria" necessary to ascertain the class); *Stern v. AT&T Mobility Corp*., 2008 U.S. Dist. LEXIS 110305, at *12-13 (C.D. Cal. Aug. 22, 2008) (defendants' business records provided sufficient information to identify individuals who purchased cellular telephone service and were enrolled in either one of the challenged services without ever having requested the service); *In re Diet Drugs Prods. Liab. Litig*., 1999 U.S. Dist. LEXIS 13228, at *34-35 (E.D. Pa. Aug. 26, 1999) (finding class definition was adequate because there were reliable means to determine who had actually taken the drug where fact sheets, prescription records, and records of medical treatment were available to verify consumption).

Here, the Named Plaintiffs allege that PNC mismanaged the 401(k) Plan as a whole. Named Plaintiffs allege this mismanagement was done uniformly throughout the entire country. PNC's own records provide the necessary information to evaluate the issues common and germane to all Class Members' claims. And there are several common questions of law or fact, including, most significantly: 1) whether PNC made the correct investments on behalf of the Plan as a whole, and 2) whether the Plan was too expensive for all participants. Accordingly, the Class will readily be shown to satisfy Rule 23(a)(2).

### 3. Typicality – Rule 23(a)(3)

Rule 23(a)(3) provides that the "claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." With respect to this requirement, the Eleventh Circuit has explained:

> The claim of a class representative is typical if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory. A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3).

*Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1357 (11th Cir. 2009)(internal quotations and citations omitted). This burden "is fairly easily met so long as other [C]lass [M]embers have claims similar to the named plaintiff." *McAnaney v. Astoria Fin. Corp.*, No. 04-CV-1101, 2006 WL 2689621, at *4 (E.D.N.Y. Sept. 19, 2006)(quoting *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)).

And typicality will not be destroyed by factual variations between the class representatives and the unnamed class members. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1357 (11th Cir. 1984); *see also Williams*, 568 F.3d at1357 ("The typicality requirement may be satisfied despite substantial factual differences when there is a strong similarity of legal theories."). The class representatives simply must, "in pursuing and defending [their] own self[-]interest in the litigation, be concomitantly advancing or defending the interest of the class." *Dubin v. Miller*, 132 F.R.D. 269, 274 (D. Colo. 1990).

The Named Plaintiffs are plan participants as are all members of the putative class. Their claims are typical of the class because they all arise from the same conduct (mismanagement of their retirement funds) in regard to the same exact 401(k) Plan. Therefore, the Named Plaintiffs together seek the same relief sought by absent Class Members, and the proof that the Named Plaintiffs would present to support their claims directly supports the claims of the Class. Because Named Plaintiffs seek to prove the Defendants "committed the same unlawful acts in the same method against an entire class[,]. . . all members of this class have identical claims," and the typicality requirement will be satisfied at final approval. *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

### 4. Adequacy – Rule 23(a)(4)

The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S at 594.  To determine whether the Named Plaintiffs seeking to become Class Representatives can adequately represent the interests of the Class, the Court must determine: "(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Busby v. JRHBW Realty, Inc*., 513 F.3d 1314, 1323 (11th Cir. 2008). Both inquiries are satisfied here.  As set forth above, the Named Plaintiffs are fully aligned with the rest of the Class because they allege the same harms and seek the same relief as the Class.

Furthermore, as demonstrated in the declaration of D.G. Pantazis, Jr., Plaintiffs' Counsel has adequately represented the Class given their qualifications and experience in this field of litigation, as well as the efforts expended on this case. *See* **Exhibit C**, Declaration of D.G. Pantazis, Jr.  Accordingly, class certification will be shown to be appropriate under Rule 23(a)(4).

### B. The Proposed Class will Also Satisfy Rule 23(b)(1)

#### 1. Certification of the Settlement Class is Likely Appropriate Under Rule 23(b)(1)

Certification of the Settlement Class is likely to be found appropriate under Rule 23(b)(1).  Under Rule 23(b)(1), a class may be certified if prosecution of separate actions by individual class members would create a risk of:

> (A)    inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B)    adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Fed. R. Civ. P. 23(b)(1).  The claims here plainly satisfy this test because they are brought derivatively on behalf of the Plans under ERISA, see 29 U.S.C. §§ 1109 and 1132(a)(2), and the outcome will necessarily affect the participants in the Plans and the Plans' fiduciaries. For this reason, "[c]ourts in the Eleventh Circuit… have found certification under Rule 23(b)(1) particularly appropriate in an ERISA fiduciary breach case, like the case here." *Pizarro*, 2020 WL 6939810, at *11 (collecting cases). Indeed, "ERISA litigation of this nature presents a paradigmatic example of a (b)(1) class." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 453; *See also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999) (noting that a breach of trust action is a "classic example" of a Rule 23(b)(1) class).

In sum, the Settlement Class will satisfy the relevant requirements of Rule 23(b)(1).

**V.    The Court Should Grant Preliminary Approval to the Settlement Agreement and Release**

**A.    Legal Standard**

"[S]ettlements are 'highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits.'" *McWhorter v. Ocwen Loan Servicing, LLC*, No. 2:15-CV-01831-MHH, 2019 WL 9171207, at *8 (N.D. Ala. Aug. 1, 2019)(quoting *Miller v. Republic Nat'l Life Ins. Co*., 559 F.2d 426, 428 (5th Cir. 1977)). This is especially true for class actions. *See In re U.S. Oil & Gas Litig*., 967 F.2d 489, 493 (11th Cir. 1992)(citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)) ("Public policy strongly favors the pretrial settlement of class action lawsuits."); *In re Liberty Nat'l Ins. Cases*, No. 1:02-CV-2741-UWC, 2006 WL 8436814, at *9 (N.D. Ala. Mar. 31, 2006)("The policy of federal courts, favoring voluntary resolution of litigation through settlement, is particularly strong in the context of class actions."). "Settlements conserve judicial resources by avoiding the expense of a complicated and protracted litigation process...." *In re Motorsports Merch. Antitrust Litig*.,112 F. Supp. 2d 1329, 1333 (N.D. Ga.2000). The Court has broad discretion in approving a settlement. *In re Liberty Nat'l Ins. Cases*, 2006 WL 8436814, at *9.

Court approval is required for any class action settlement that releases the claims of absent class members. Fed. R. Civ. P. 23(e). Federal Rule of Civil Procedure 23(e)(2) requires the Court to determine whether the Settlement

Agreement is "fair, reasonable, and adequate." The recent Rule 23 amendments charge this Court to conduct an enhanced analysis at the preliminary approval stage to determine whether "giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(i)–(ii)(emphasis added). The comments to the 2018 amendment note that preliminary approval requires "a solid record supporting the conclusion that the proposed settlement will likely earn final approval after notice and an opportunity to object." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment. Courts have interpreted this to be a "more exacting standard" than the previous framework. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019). Per these amendments, Rule 23(e)(2) requires courts to consider whether:

> A.   the Class Representatives and Class counsel have adequately represented the Class;
>
> B.   the proposal was negotiated at arm's length;
>
> C.   the relief provided for the Class is adequate, taking into account:
>
>> i.   the costs, risks, and delay of trial and appeal;
>>
>> ii.   the effectiveness of any proposed method of distributing relief to the Class, including the method of processing Class Member claims;

     iii.     the terms of any proposed award of attorney's fees, including timing of payment;

     iv.     any agreement required to be identified under Rule 23(e)(3); and

     v.     the proposal treats Class Members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

These factors are not intended to "displace" any factor previously adopted by courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Rule 23(e)(2) advisory committee's note to 2018 amendment; *see also Swinton v. SquareTrade, Inc*., No. 4:18-CV-00144-SMR-SBJ, 2019 WL 617791, at *5 (S.D. Iowa, Feb. 14, 2019)(holding that the 2018 amendments to Rule 23 "were not intended to displace the various factors that courts have developed in assessing the fairness of a settlement"). Thus, these factors must be viewed in tandem with the Eleventh Circuit's guidelines for approval of a settlement. *See, e.g., Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*, 333 F.R.D. 314, 320 (S.D.N.Y. 2019)(holding that the Rule 23(e)(2) factors must be considered in conjunction with factors that courts used prior to the 2018 amendments). Courts in the Eleventh Circuit have long considered the following six factors when assessing the fairness of a settlement:

     1)     The likelihood of success at trial;

2) The range of possible recovery;

3) The point on or below the range of recovery at which a settlement is fair, adequate, and reasonable;

4) The complexity, expense, and duration of the litigation;

5) The substance and amount of opposition to the settlement; and,

6) The stage of proceedings at which settlement was achieved.

*Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *see also Carroll v. Macy's, Inc*., No. 2:18-CV-01060-RDP, 2020 WL 3037067, at *5 (N.D. Ala. June 5, 2020).   Evaluation of each of these factors here demonstrates that preliminary approval of the Settlement is warranted.

### B. Class Representatives and Lead Counsel Have More than Adequately Represented the Settlement Class

The Named Plaintiffs "share the same interests as absent class members, assert claims stemming from the same event that are the same or substantially similar to the rest of the class, and share the same types of alleged injuries as the rest of the class." *In re Equifax Inc. Customer Data Sec. Breach Litig*., No, 1:17-md-2800-TWT, 2020 WL 256132, at *5(N.D. Ga. Mar.  17, 2020).   In furtherance of those shared interests, Named Plaintiffs have demonstrated their adequacy by selecting well-qualified counsel, who are highly experienced and capable in the field of class-

action and ERISA litigation. *See* **Exhibit C**.   Plaintiffs' Counsel have litigated similar cases to resolution and are recognized as competent attorneys in their field. *Id*.

Plaintiffs' Counsel has invested significant time and resources to prosecute these claims against a well-funded Defendant for over five (5) years of litigation. With respect to discovery, Plaintiffs obtained hundreds of thousands of pages of documents comprised of meticulous financial data, contracts, and correspondence. The parties conducted deposition discovery.   Through those efforts, the Plaintiffs and their counsel were able to gain a thorough understanding of the facts and legal theories applicable to their claims, along with the relevant risks, before agreeing to the Settlement.   Named Plaintiffs and their counsel have more than adequately represented the interest of the Class throughout the extended duration of this case.

### C.   The Proposed Settlement Is the Result of Arm's-Length Negotiations

Rule 23(e)(2)(B) requires the court to determine whether a proposed settlement "was negotiated at arm's length." "Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness."   *In re Checking Account Overdraft Litig*., 275 F.R.D. 654, 661-62 (S.D. Fla. 2011). Courts often view class settlements that have been reached as the result of extensive mediation favorably in this regard. *See, e.g., Id*. (approving settlement that was "the product of informed, good faith, arm's-length

negotiations between the parties and their capable and experienced counsel, and [which] was reached with the assistance of a well-qualified and experienced mediator"). The 2018 amendments to Rule 23 also make clear that use of a neutral mediator should be considered in determining "whether [negotiations] were conducted in a manner that would protect and further the class interest." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment.

The proposed Settlement was reached after five years of negotiations with the assistance of an experienced and well-respected mediator. Robert Meyer has provided a Declaration, stating specifically that the "mediations were intensely contested, and the parties vigorously argued and defended their positions both in person and via supporting documentation… [T]he agreement was negotiated at arms-length with no signs of collusion whatsoever". **Exhibit D**, Declaration of Robert Meyer, ¶ 13. As part of the mediation process, the parties produced significant financial data to account for the relative strengths and weaknesses of the parties' claims, and aggressively advocated for the interests of their clients.

There can be no doubt that Settlement was reached as the result of arm's-length negotiations by experienced counsel who were acutely aware of the strengths and weaknesses of their case. *See, e.g., Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014)(holding that "[i]t is clear that the negotiations between the parties proceeded at arms' length" after the parties "worked extensively

with a mediator" and after the defendants "filed numerous dispositive motions that could have completely absolved themselves of liability").

### D. The Relief Provided to the Settlement Class is Far More than Adequate, Taking into Account the Considerations Set Forth in Rule 23(e)(2)(C)

Rule 23(e)(2)(C) asks courts to consider whether the "relief provided for the class is adequate, taking into account:(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."A review of those factors at this stage shows that the Settlement warrants preliminary approval.

#### 1. The Costs, Risks, and Delay of Trial and Appeal

In evaluating the fairness, reasonableness, and adequacy of a proposed settlement, a court "can limit its inquiry to determining whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of settlement." *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697-98 (M.D. Fla. 2005); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014). This factor weighs in favor of approval where "success at trial is not certain for Plaintiff[s]." *Burrows v. Purchasing Power, LLC*, No. 1:12-CV-22800, 2013 WL 10167232, at *6 (S.D. Fla. Oct. 7, 2013). Here, the "costs, risks, and delay

of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), strongly support preliminary approval.  The basic history of this litigation reflected on the docket demonstrates that continued litigation of this would be costly, risky, and protracted.

Plaintiffs' obtained significant financial data related to the Plan and created a damage model to facilitate settlement negotiations, in addition to preparing for trial. Plaintiffs worked with the assistance of their experts to refine these calculations. Defendants aggressively challenged these models, and vigorously attacked the Named Plaintiffs findings and calculations.  Named Plaintiffs faced a risk that a class for purposes of litigation would not be certified, and that their damage models would be refuted.  *Swaney v. Regions Bank*, No. 2:13-CV-00544-RDP, 2020 WL 3064945, at *4 (N.D.  Ala. June 9, 2020)(Proctor, J.)("Because 'the outcome on class certification and the ultimate outcome on the merits was uncertain for both parties,' a settlement was reached and here that is appropriate.")(quoting *Parsons v. Brighthouse Networks, LLC*, No. 2:09-cv-267-AKK,2015 WL 13629647, *2 (N.D. Ala. Feb. 5, 2015)).

Even if Named Plaintiffs succeeded in certifying a class, they must still prove their claims at trial.  This would involve yet more contested issues, including but not limited to: 1) whether PNC properly managed the Plan, 2) whether the fees to manage the Plan were proper, 3) whether a prudent fiduciary would have acted as PNC did, and 4) whether Plan and its participants lost money as a result of the Plan

30

management.  Not only would the Named Plaintiffs need to prevail on these issues (and others) at trial, they would need to successfully defend these rulings – as well as the Court's prior rulings – in any appeals that would undoubtedly follow a judgment in their favor.  The subsequent appeals would further prolong the case for years and underscore the ultimate outcome's uncertainty. *See Parsons*, 2015 WL 13629647, at *4 ("[C]ontinued litigation would have risked delaying the class's potential recovery for years, further reducing the value of any such recovery.  The Settlement resolves the case without any further delay and will, if finally approved, offer the Settlement Class an immediate and certain recovery.  Thus, this factor also speaks strongly in favor of final approval of the proposed Settlement.").

The Named Plaintiffs had an additional and significant risk in the prosecution of these cases in that ERISA contains a fee-shifting provision.  *Peer v. Liberty Life Assur. Co*., 992 F.3d 1258, 1262 ("ERISA's fee-shifting statute provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1).").  Due to the level of work required to prosecute and defend these actions, the risk each of the Plaintiffs faced should they have lost at trial (or any point before) is a risk that each Named Plaintiff was willing to bear, but had to accommodate for, in evaluating a Settlement.  By risking personal financial loss in prosecuting these cases, Named Plaintiffs had a lot to lose.

Under no circumstances is there a guarantee that Named Plaintiffs would recover a final judgment greater than the considerable $6.1 million dollars in monetary relief secured by the Named Plaintiffs in the Settlement.  In contrast, the Settlement provides immediate tangible benefits to the Class and eliminates the risk, delay, and expense associated with continued litigation. Rule 23(e)(2)(B) therefore weighs heavily in favor of preliminary approval.

> ### 2.     The Effectiveness of Any Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class Member Claims

The proposed method of processing the Settlement Class Members' claims and distributing relief to eligible claims is efficient and effective.  The Plan of Allocation will efficiently calculate the value of thousands of Class Members based on data available from the PNC and its recordkeeper rather than requiring every Class Member to provide years of information about their 401(k) Plan.

Plaintiffs will select a qualified Settlement Administrator to process the distributions.  Plaintiffs will select a Settlement Administrator with a proven track record that has been chosen as the administrator in a number of large, complex, and high-profile class action settlements.

"The goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." *Fitzgerald v. P.L. Mktg., Inc.*, No. 2:17-cv-02251-SHM-cgc,

2020 WL 3621250, at *9 (W.D. Tenn. July 2, 2020)). The Plan of Allocation will use the available data to calculate each Class Members' damages and distribute the Settlement Fund accordingly.

The Plan of Allocation does not require Class Members to provide years of data which may be virtually impossible to track down but instead the devised plan allows for an automated process to expediently provide payment in a quick and efficient manner.

### E.   The Terms of Any Proposed Award of Attorneys' Fees and Expenses, Including Timing of Payment

Class Counsel will be applying for a Fee award of one-third of the $6.1 million common fund, in addition to recovering their expenses.   This is in line with benchmarks set by District Courts in the Eleventh Circuit, including this Court, for fees. *McWhorter v. Ocwen Loan Servicing*, 2019 U.S. Dist. LEXIS 232149, *38(approving attorneys' fee of one-third of the common fund); *McGee v. Triad of Ala., LLC*, No. 1:14-CV-324-WKW, 2019 U.S. Dist. LEXIS 8848, at *12 (M.D. Ala. Jan. 18, 2019)(approving attorneys' fee award of "approximately 37.7% of the total recovery available to the class").   The fees requested would not be due and payable until after the Final Order Approving the Settlement.   As to Rules 23(e)(2)(C)(iv) and (e)(2)(D), requiring that "any agreement made in connection with the [settlement] proposal" be identified, the attached Class Counsel Declaration makes clear that all such agreements are set forth in the Settlement itself.   **Exhibit C**, ¶ 5.

Class Members will receive notice of the proposed fee and expense request and will have an opportunity to object to any such award prior to Final Approval. Accordingly, Rule 23(e)(2)(C) is satisfied.[5]

### F. The Proposed Settlement Treats Class Members Equitably Relative to One Another

The Court's analysis under this Rule 23(e)(2) factor includes "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment; *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05MD1720MKBJO, 2019 WL 6875472, at *27 (E.D.N.Y.  Dec.  16, 2019).

Here, the claims of each Class Member are relatively straightforward, and require little differentiation, thus all Class Members are treated equitably under the Plan of Allocation.  Each Class Member that participated in the Plan during the statute of limitations has a claim.  The Plan of Allocation explains how each Class Members payment will be distributed, and every Class Member will be treated the same in that regard from a process perspective.  *See* **Exhibit B, ¶ ¶ C and D**.

---

[5] Class Counsel will address the basis for a fee and expense award at greater length in a separate brief before final approval.  For now, it should be sufficient to show that an award of one-third of the common fund is comfortably within the range permitting preliminary approval.

Further, the scope of the release does not affect apportionment of the Settlement Fund to Class Members. Every Class Member is subject to the same release, and the release does not affect the apportionment of relief to other class members. *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 699 (S.D.N.Y. 2019)(finding this element satisfied when all settlement class members sign the same release and where the release "does not appear to affect the apportionment of relief to other class members"); *In re Payment Card Litig.*, 330 F.R.D. at 47 ("Further, the scope of the release applies uniformly to putative class members, and does not appear to affect the apportionment of the relief to class members, apart from securing the opportunity to participate in the (b)(2) action. Accordingly, the Court finds that this factor will likely weigh in favor of granting final approval."). As such, this factor also supports approval of the Settlement.

### G.   The Remaining Non-Duplicative Bennett Factors Are Satisfied[6]

#### 1.   The Monetary Settlement Value is Well Above the Range of Reasonableness

The second and third factors in the Eleventh Circuit's *Bennett* analysis call for the Court to determine "the possible range of recovery" and then ascertain where within that range "fair, adequate, and reasonable settlements lie." *Deas v. Russell*

---

[6] The first and fourth *Bennett* factors – the likelihood of success at trial and the complexity, expense and duration of the litigation – are effectively addressed in Named Plaintiffs' analysis of Rule 23(e)(2) factors.

*Stover Candies, Inc*., No. CV-04-C-0491-S, 2005 WL 8158201, at *11 (N.D. Ala. Dec. 22, 2005)(internal quotations omitted). "These two range of recovery factors are 'easily combined and normally considered in concert.'" *Camp v. City of Pelham*, No. 2:10-cv-01270-MHH, 2014 WL 1764919, at *3 (N.D. Ala., May 1, 2014)(quoting *Cifuentes v. Regions Bank*, No. 11-cv-023455-FAM, 2014 WL 1153772, at *5 (S.D. Fla. Mar. 20, 2014)). The relief secured by the Named Plaintiffs with this Settlement reflects an excellent result for the Class and plainly falls within the range of reasonableness contemplated by these two factors.

At $6.1 million, the Settlement represents a significant achievement for the Settlement Class, particularly in light of the time and expense of continuing litigation and the risk of having to prove damages in dozens of separate trials throughout the nation.

Under Plaintiffs' damage model, the $6.1 million represents roughly 7.8% of the estimated maximum full recovery, which falls well above the range of reasonable recoveries. This compares favorably with recoveries in other ERISA class actions. *Johnson v. Fujitsu Tech. & Bus. of Am., Inc*., 2018 WL 2183253, at *6-7 (N.D. Cal. May 11, 2018) (approving $14 million settlement in ERISA case involving alleged excess fees, where that amount represented "just under 10% of the Plaintiffs' most aggressive 'all in' measure of damages"); *accord In re Rite Aid Corp. Sec. Litig*., 146 F.Supp.2d 706, 715 (E.D. Pa. 2001) (noting that class action settlements have

typically "recovered between 5.5% and 6.2% of the class members' estimated losses"). Court across the country have consistently held this range of recovery to be acceptable. *Bennett v. Behring Corp.*, 737 F.2d 982, 986-87 & n.9 (11th Cir. 1984) (approving $675,000 settlement representing 5.6% of claims with maximum potential recovery of $12,000,000); *Lazy Oil Co. v. Wotco Corp.*, 95 F. Supp. 2d 290, 318-19 (W.D. Pa. 1997)(approving settlement award representing 5.35% of expected recovery).

As discussed above, the likelihood of such a recovery through continued litigation is extremely risky, adding to the appropriateness of the results achieved. *In re Pool Prod. Distrib. Mkt. Antitrust Litig.*, No. MDL 2328, 2015 WL 4528880, at *14 (E.D. La. July 27, 2015)(finding recovery of 8.5% of best case damages scenario appropriate, especially as weighed against "substantial risks of nonrecovery").

### 2. The Stage of Proceedings at which Settlement Was Achieved Strongly Supports Preliminary Approval

In assessing the final *Bennett* factor, the Court should consider whether the "the case settled at a stage of the proceedings where class counsel had sufficient knowledge of the law and facts to fairly weigh the benefits of the settlement against the potential risk of continued litigation." *Equifax*, 2020 WL 256132, at *10. As explained above regarding Rule 23(e)(2)(A), Settlement Class Counsel have exhaustively researched and analyzed the applicable law and have engaged in substantial motion practice and discovery throughout more than five years of hard-

fought litigation. *See Swaney*, 2020 WL 3064945, at *5 (holding that settlement was appropriate where the parties "have litigated this case for over seven years, through dispositive motions," and "have had the opportunity to investigate the facts and law, review substantive evidence relating to the claims and defenses, and brief the relevant legal issues"). Additionally, as previously mentioned, this settlement was agreed to after multiple rounds of mediation wherein the parties exchanged additional data and analysis of the merits and risks of the claims. The parties were thus well familiar with the claims, the law, the damages, and the risks. Accordingly, this *Bennett* factor strongly supports preliminary approval of the Settlement.

## **CONCLUSION**

For all the foregoing reasons, Named Plaintiffs respectfully request that the Court,

    i)    grant Preliminary Approval of the Class Action settlement and Plan of Allocation;

    ii)    order that the Notice in the form contained in Exhibit 2 to the Settlement Agreement be disseminated;

    iii)    conditionally certify the putative nationwide Class under Rule 23 for the purposes of settlement;

    iv)    that the Court appoint the Named Plaintiffs as Class Representatives on behalf of the Class;

    v)    that the Court appoint D.G. Pantazis, Jr. of Wiggins Childs Pantazis Fisher Goldfarb LLC, Lange Clarke of Lange Clark, P.C., and James

White of James White Firm, LLC as Class Counsel; and

vi)   that the Court set the Fairness Hearing Date for determination of whether this Class Action Settlement should be finally approved.

RESPECTFULLY SUBMITTED,

*/s/ D G. Pantazis, Jr.*
D. G. Pantazis

*Counsel for Plaintiffs*

**OF COUNSEL:**
WIGGINS CHILDS PANTAZIS
FISHER GOLDFARB, LLC
The Kress Building
301 Nineteenth Street North
Birmingham, Alabama 35203
(205) 314-0557
dgpjr@wigginschilds.com

James H. White, IV
JAMES WHITE, LLC
2100 1st Ave North, Suite 600
Birmingham, Alabama 35203
(205) 383-1812
james@whitefirmllc.com

Lange Clark
LAW OFFICE OF LANGE CLARK, P.C.
301 19th Street North, Suite 550
Birmingham, Alabama 35203
(205) 939-3933
langeclark@langeclark.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 19, 2023, the above and foregoing document was filed and served via the Court's CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

Sharon D. Stuart, Esquire
CHRISTIAN &amp; SMALL LLP
505 North 20th Street
Suite 1800 Financial Center
Birmingham, Alabama 35203
sdstuart@csattorneys.com

Emily S. Costin, Esquire
ALSTON &amp; BIRD LLP
950 F Street NW
Washington, DC 20004
emily.costin@alston.com

Blake Crohan, Esquire
Ellie Studdard, Esquire
ALSTON & BIRD LLP
One Atlantic Center
1201 W. Peachtree Street, Suite 4900
Atlanta, Georgia 30309
blake.crohan@alston.com
ellie.studdard@alston.com

*Attorney for Defendants*
*PNC Financial Services Group, Inc.,*
*Successor in interest to BBVA USA Bancshares, Inc.*

*/s/ D.G. Pantazis*
Of Counsel