FILED

2024 Mar-21  AM 10:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| GLORIA FERGUSON and CASSANDRA McCLINTON, individually and on behalf of others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | CLASS ACTION |
| v. | ) ) | Case No.: 2:19-cv-01135-MHH |
| PNC FINANCIAL SERVICES GROUP, INC., *as successor in interest to BBVA Compass Bancshares, Inc.*, | ) ) ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS AND INCENTIVE AWARDS

**COME NOW**, Class Counsel, and submit this Memorandum in Support of their Unopposed Motion for an Award of Attorneys' Fees, Costs, and Incentive Awards.

## INTRODUCTION

Class Counsel has prosecuted this action for recovery of damages related to the mismanagement of the BBVA Compass SmartInvestor 401(k) Plan (the "Plan") since 2019. Class Counsel pursued this action on behalf of all plan participants, nationwide, who invested in the Plan.

Class Counsel investigated the claims and analyzed the performance of the Plan's investments; engaged in an extensive administrative process involving the submission of a claim, the production of documents, and expert reports; prepared the original and amended Complaints and the supporting materials; defended dispositive motions, including a motion to dismiss and separate motion for judgment on the pleadings; served and responded to written discovery; engaged in informal discovery related to plan data; stored, organized, labeled, reviewed and indexed tens of thousands of financial and plan documents; prepared for and deposed Defendant's corporate representative; engaged with experts and consultants to evaluate and refine their claims; and, prepared for class certification. The details regarding Class Counsel's work in this case are described in the declarations of Class Counsel. *See*, **Exhibit A** Declaration of D. G. Pantazis, Jr.; **Exhibit B** Declaration of James H. White; and **Exhibit C** Declaration of Lange Clark.

As set forth in the mediator's affidavit (Doc. 121-4), the parties conducted two formal mediations that did not result in a settlement, but arm's length discussions continued. Class Counsel ultimately reached a settlement with the Defendant providing the establishment of a qualified settlement fund ("QSF") of $6.1 million dollars. All Settlement Class members will receive compensation and no funds will revert to Defendant. Defendant also agreed to not oppose Class Counsel's request for attorneys' fees up to 33.3% of the total QSF, plus costs, nor to

oppose the Class Representatives' request for an incentive award no greater than $10,000.00.

"The Court of Appeals and numerous district courts in this circuit have held that one-third of the fund represents a reasonable attorneys' fee". *McWhorter v. Ocwen Loan Servicing*, 2019 U.S. Dist. LEXIS 232149, *38. *See also Pledger v. Reliance Trust Co.*, 2021 U.S. Dist. LEXIS 105868, *27 (approving incentive fee awards in an ERISA case because "[t]he Class Representatives were integral to achieving the settlement which in turn benefits the entire class. Without them, the class members would receive nothing").

## ARGUMENT

## I.    The "Common Fund" Method is Appropriate for Awarding Fees

Given the complexities inherent in class-action litigation, Courts are given "great latitude in formulating attorneys' fee awards subject only to the necessity of explaining its reasoning." *Waters v. International Precious Metals Corp.*, 190 F.3d 1291, 1293 (11th Cir. 1999) (internal quotation omitted).

As a general proposition, attorneys' fees are awarded to Class Counsel through the court's exercise of traditional equity powers, where the action has resulted in the creation of a common fund for the Class benefit. As the Supreme Court explained in *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970):

> While the general American rule is that attorneys' fees are not ordinarily recoverable as costs, both the courts and Congress have developed

exceptions to this rule for situations in which overriding considerations indicate the need for such a recovery. A primary judge-created exception has been to award expenses where a plaintiff has successfully maintained a suit, usually on behalf of a class, that benefits a group of others in the same manner as himself. *See Fleischmann Corp. v. Maier Brewing Co.*, 386 U.S., at 718-719, 87 S. Ct. at 1407. To allow the others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff's expense.

The Supreme Court has recognized that when attorneys create a common fund for the benefit of a class, "a reasonable fee is based on the percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n. 16 (1984); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (Since the 1880s, "this Court has recognized consistently that a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole").

Awards of attorneys' fees from a common fund, such as the fund created here, serve the dual purpose of encouraging redress of damages caused to an entire class, and discouraging future similar misconduct:

[C]ourts … have acknowledged the economic reality that in order to encourage 'private attorney general' class actions brought to enforce the securities laws on behalf of persons with small individual losses, a financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may never be paid.

*Mashburn v. Nat'l Healthcare, Inc.,* 684 F. Supp. 679, 687 (M.D. Ala. 1988); *see also Amorin v. Taishan Gypsum Co*., 861 F. App'x 730, 735 (11th Cir. 2021) ("preventing appointed counsel from recovering awards when their work leads to massive recoveries down the road would make it harder for courts to find capable and competent lawyers to take on that work in the future."); *Dogalt v. Anderson,* 43 F.R.D. 472, 494 (E.D.N.Y. 1968) ("In some areas of the law society is dependent upon the initiative of lawyers for the assertion of rights and the maintenance of desired standards of conduct.") (citations omitted).

Here, Class Counsel pursued this nationwide class action for the benefit of Defendant's 401(k) plan participants who rely upon the proper investment of their retirement savings to help ensure their ability to retire. Plaintiffs and Class Counsel have therefore furthered important public policy interests (as set forth by Congress in ERISA) through this class action litigation and settlement.

## II.     The Requested Fees are Consistent Within Eleventh Circuit Precedent.

Over 30 years ago, the Eleventh Circuit in *Camden I Condominium Ass'n v. Dunkle,* 946 F.2d 768, 974 (11th Cir. 1991), endorsed the percentage-of-fund method for determining reasonable attorneys' fees in common-fund class actions:

> After reviewing *Blum,* the [1985 Third Circuit] Task Force Report, and the foregoing cases from other circuits, we believe that the percentage of the fund approach is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class.

*Camden I,* 946 F.2d at 774-75 (emphasis added).[1] The *Camden I* court pointed out that "[t]he majority of common fund fee awards fall between 20% to 30% of the fund," while 25% of the fund is viewed as a "benchmark percentage fee award." *Id.* The Court noted that 50% of the fund generally represents an upper limit, "although even larger percentages have been awarded." In *Waters v. Int,'l Precious Metals Corp.,* 190 F.3d 1291 (11th Cir. 1999) the Court reiterated the baseline rule of *Camden I*, holding that 25% to 30% is the "benchmark range" for common fund fee awards in this Circuit. 190 F.3d at 1294-95 (affirming fee award of 33.33% of a $40 million settlement common fund).

The *Camden I* court also addressed the distinction between common fund cases and statutory fee cases, opining: "Unlike the calculation of attorney's fees under the 'common fund doctrine,' where a reasonable fee is based on a percentage of the fund bestowed on the class, a reasonable fee under § 1988 reflects the amount of attorney time reasonably expended on the litigation. 946 F.2d 768, 773 (11th Cir. 1991) *citing Blum v. Stenson,* 465 U.S. 886, 104 S. Ct. 1541, 79 L.Ed.2d 891 (1984).

The Camden I court concluded:

[] a key element of the common fund case is that fees are not assessed against the unsuccessful litigant (fee shifting), but rather, are taken from

---

[1] *See also Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) ("The District of Columbia and Eleventh Circuits mandate the exclusive use of the percentage approach in common fund cases, reasoning that it more closely aligns the interests of client and attorney, and more faithfully adheres to market practice.")

the fund or damage recovery (fee spreading). Furthermore, in contrast to the calculation of a statutory fee, 'payable by the defendant depending on the extent of success achieved, a common fund is itself the measure of success . . . [and] represents the benchmark on which a reasonable fee will be awarded.' Consequently, the analysis in a common fund case focuses not on the plaintiffs' position as 'prevailing parties,' but on a showing that the fund conferring a benefit on the class resulted from their efforts. In this context, monetary results achieved predominate over all other criteria.

*Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991).

In calculating the appropriate percentage to award, the *Camden I* court looked to the time required to reach the settlement; whether there are a substantial number of objections by class members to the settlement terms or the fees requested; the nature and extent of monetary and non-monetary benefits conferred on the class; and the economics involved in prosecuting the case. *Camden I,* 946 F.2d at 774-75. The *Camden I* court held that "there is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded a fee because the amount of any fee must be determined upon the facts of each case." *Camden I*, 946 F.2d at 774-75.

Here, Class Counsel's request for a fee award of one-third of the common fund is within the Eleventh Circuit's benchmark for attorneys' fees in cases such as this. *See McWhorter v. Ocwen Loan Servicing*, 2019 U.S. Dist. LEXIS 232149, *54 (approving attorneys' fee award of 33.33% total recovery available to the class, plus expenses); *Camp v. City of Pelham, 2015 U.S. Dist. LEXIS 182565, *9* (approving

attorneys' fee award of "just over 41% of the fund" plus expenses*)*; *Pledger v. Reliance Trust Co*., 2021 U.S. Dist. LEXIS 105868, *14 (approving attorneys' fee award of 33.33% in ERISA defined contribution plan settlement "under prevailing precedent and the circumstances of this case"); *In re Checking Account Overdraft Litig.,* 830 F. Supp. 2d 1330, 1367 (S.D. Fla. 2011) ("[C]ourts nationwide have repeatedly awarded fees of 30 percent or higher in so-called 'megafund' settlements."). *See also Wolff v. Cash 4 Titles*, 2012 U.S. Dist. LEXIS 153786, 2012 WL 5290155, at *5 (S.D. Fla. Sept. 26, 2012) (average percentage award in the Eleventh Circuit is "roughly one-third").

## III.  The Percentage-of-Fund Method is Calculated Based on The Total Available Benefits.

The common-fund method of awarding attorneys' fees is utilized to calculate fees based on a percentage of the pool of funds made available to Class Members. Whether a particular Class Member makes a claim to which he or she is entitled is that Class Member's choice, but that choice does not affect the benefit Class Counsel created for the Settlement Class or the proportionate share of the fees to which Class Counsel are entitled.  *See Boeing Co. v. Van Germert,* 444 U.S. 472 (1980) (holding that the attorney was entitled to a reasonable fee from the fund as a whole, regardless of claims rate"); *Waters v. Intern. Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (upholding an attorney fee award based on the entire settlement fund, even though a portion reverted to the defendant); *Masters v. Wilhelmina Model Agency,*

*Inc.,* 473 F.3d 423, 200 (2d Cir. 2007) (holding that in determining counsel fees, trial court erred in calculating percentage of the fund on the basis of claims made against the fund rather than on the entire fund created by efforts of counsel); *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026 (9th Cir. 1997) (holding that the district court abused its discretion by awarding only one-third of the $10,000 claimed against the common fund rather than one third of the entire $4.5 million settlement fund, in a case where unclaimed funds reverted to the defendant).

In this case there is little to no risk that the funds included in the QSF will not be claimed, as all Class Members will be issued a check or direct deposit into their current retirement account at PNC.[2] If there are uncashed checks, the parties will seek guidance from the Court on how to allocate such money. Therefore, the Court can be assured that the percentage of the monies awarded as attorneys' fees is consistent with Eleventh Circuit precedent.

## IV. The Requested Fee is Within Common-Fund Parameters and the "*Johnson* factors."

As noted above, while the *Camden I* court held that attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund

---

[2] It has been suggested by the Settlement Administrator that a subset of class members have the additional option to elect to roll over their funds into an account other than PNC, or receive a check, due to certain tax reporting requirements. If the Court agrees with this plan, then such election can be made by that subset via the method provided by the Settlement Administrator in Doc. 127-1, p. 4 at ¶ 10.

established for the benefit of the class. The *Camden I* court went on to opine that "[]
the *Johnson* factors continue to be appropriately used in evaluating, setting, and
reviewing percentage fee awards in common fund cases." *Id.*, 768. A review of the
most pertinent factors originally set forth in *Johnson v. Georgia Highway Express.
Inc.,* 488 F.2d 714 (5th Cir. 1974) – commonly called the *Johnson* factors - also
confirm that the requested fee is reasonable.[3]

### A.    **Time and Labor Required.**

### 1.    <u>**The Work Performed**</u>

The first *Johnson* factor is assessing the "time and labor required" to litigate
the case. *Camden I*, 946 F. 2d at 775, 772 n.3, *quoting Johnson v. Georgia Highway
Express. Inc.,* 488 F.2d 714, 718 (5th Cir. 1974). Class counsel began investigating
this claim in the spring of 2019 and filed their Complaint on July 18, 2019. Class
Counsel litigated the case vigorously in the face of highly skilled, aggressive, and
well-funded defense counsel with a long history of defending ERISA cases. Class
Counsel spent 5755.58 hours preparing and litigating these claims until the date of

---

[3] The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of
the questions involved; (3) the skill requisite to perform the legal service properly; (4) the
preclusion of other employment by the attorney due to acceptance of the case; (5) the customary
fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the
circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation,
and ability of the attorneys; (10) the "undesirability of the case"; (11) the nature and the length of
the professional relationship with the client, and (12) awards in similar cases. *Johnson*, 946 F.2d
at 772, n. 3.

settlement[4]. *See* **Exhibit A** Declaration of D.G. Pantazis, Jr.; **Exhibit B** Declaration of James H. White; and **Exhibit C** Declaration of Lange Clark.

The work in ERISA excessive fee class actions such as this is time-consuming and expensive. The cases are document intensive and involve financial concepts that require regular input from industry experts to interpret and evaluate. The cases are defended by capable and experienced defense counsel supported by expert witnesses and consultants. The legal framework for these types of claims is rapidly evolving in the U.S. Supreme Court, Circuit Courts, and District Courts, requiring periodic re-evaluation of these claims and the methodology for supporting them.

Class Counsel began their work in this case by evaluating the breach of fiduciary duty claims relating to the management of the plan and its investments. *See* **Exhibits A, B, and C**.  Class Counsel prepared a Claim for breach of fiduciary duty supported by an analysis of the plan and the performance of its investment options. The Class Representatives participated in this process by providing the information made available to them as plan participants. The case was delayed for a period of time while Class Counsel assisted Class Representatives in navigating the administrative process, during which a considerable volume of plan and financial documents were exchanged and claimants and respondents both submitted expert

---

[4] Class Counsel has spent an additional 176.1 hours assisting the settlement approval, notice, and settlement administration process which they have not included in their lodestar analysis. Class Counsel will continue to add more time to this case in order to properly administer the settlement.

reports. *Id*. Class Counsel was able to obtain information concerning the administration of the plan, which led to the filing of an amended complaint.

As part of the case in this Court, Class Counsel defended a motion to dismiss; served and responded to written discovery; reviewed tens of thousands of pages of plan and financial documents, often with the assistance of industry experts; defended a motion for judgment on the pleadings; analyzed the claims and prepared loss calculations; deposed a corporate representative; obtained data from third parties via subpoenas; and, prepared for class certification. *Id*. Class Counsel and the Class Representatives communicated regularly and collaborated in the investigation and prosecution of these claims. *Id*. Class Counsel engaged in numerous meet and confers regarding discovery disputes. *Id*. In connection with this process Class Counsel obtained additional information regarding the performance of the Plan's investment which enabled Class Counsel to update and refine the claims made in this case and the estimate of the losses suffered by the Plan. Class Counsel, with Defendant's cooperation, obtained financial data from the plan recordkeeper related to the substantive claims. The data, technical in nature, required a series of conference calls with the recordkeepers for the Plan to interpret, but ultimately proved to be an important factor in the evaluation and resolution of the case.

Class Counsel also engaged in settlement negotiations with Mr. Meyer and opposing counsel through two formal mediations. These negotiations continued

12

periodically over the course of a year (while prosecution of the case continued) until a settlement was reached on August 17, 2023. Class Counsel drafted and submitted paperwork to inform the Court and the putative class of the terms of the Settlement Agreement and has and will continue to do all that is necessary to effectuate the terms of the Settlement Agreement.  Class Counsel has helped to ensure the Notice is properly disseminated and the claims process is properly employed via the assistance of the Settlement Administrator, and that the Court is apprised of all activities related to the finalization of the class action settlement process.  In sum, Class Counsel's time and resources spent on this lawsuit are commiserate with the fee award requested.

## 2. <u>Lodestar Cross-Check</u>

Moreover, although the amount of time spent prosecuting this case supports Class Counsel's fee request, time spent is not a dispositive factor. In fact, the "[u]se of the lodestar cross-check is not required in this Circuit.  *In re Blue Cross Blue Shield Antitrust Litig.* (MDL No. : 2406), 2022 U.S. Dist. LEXIS 246155, *129-130. However, Courts sometimes refer to that figure for comparison. *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1298 (11th Cir. 1999) ("[W]hile we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we *may* refer to that figure for comparison."). *See also, In re Home Depot Inc.*, 931 F.3d 1065, 1091 n.25 (11th Cir. 2019) (holding that a "lodestar cross-check is a time-

consuming exercise" that is not "required"). Indeed, the lodestar approach (multiplying a reasonable number of attorney hours times a reasonable hourly rate) should not be imposed through the back door via a "cross-check." *In re Sunbeam Sec. Lit.*, 176 F. Supp. 2d 1323, 1336 (S.D. Fla. 2001) ("the cross-check is not to be used as a backdoor avenue of using the lodestar method instead of the percentage of the fund method"); accord *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1362 (S.D. Fla. 2011) ("[t]he lodestar approach should not be imposed through the back door via a "cross-check."). Lodestar "creates an incentive to keep litigation going in order to maximize the number of hours included in the court's lodestar calculation." *In re Quantum Health Resources, Inc.,* 962 F. Supp. 1254, 1256 (C.D. Cal. 1997). For this reason, in *Camden I* the Eleventh Circuit criticized lodestar and the inefficiencies that it creates on this very basis. *Camden I*, 946 F.2d at 773-75.

Under *Camden I* courts in this Circuit regularly award fees based on a percentage of the recovery without discussing lodestar at all. *See, e.g., David v. American Suzuki Motor Corp.,* 2010 WL 1628362 (S.D. Fla. Apr. 15, 2010). Indeed, "[A] common fund is itself the measure of success . . . and represents the benchmark on which a reasonable fee will be awarded." *Camden I,* 946 F.2d at 774 (citations and alterations omitted); *see also Shaw v. Toshiba American Information Systems, Inc.,* 91 F. Supp. 2d 942, 964 (E.D. Tex. 2000) ("Few among us would contend that an operation by a gifted surgeon who removes an appendix in fifteen minutes is

14

worth only one sixth of that performed by his marginal colleagues who require an hour and a half for the same operation.").

Here, either analysis will suffice, because both the time and labor involved (under *Johnson*), as well as the recovery obtained (under common-fund principles), independently justify the fee being requested. Specifically, Class Counsel spent 5755.58 hours litigating this case to reach the agreed upon Settlement. Using hourly rates awarded in similar ERISA class action settlements in the 11th Circuit and other similar sized district courts, Class Counsel's lodestar is best viewed as a range from $3,508,927.50 to $4,134,090.00 to $4,586,319.40. *See*, **Exhibit A**.

### 3.  The Market Rate

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation," *Hithon v. Tyson Foods, Inc.*, 151 F. Supp. 3d 1252, 1258 (N.D. Ala. 2015) (internal citations omitted). In the ordinary case, "The relevant legal community from which to extrapolate a reasonable hourly rate is presumed to be where the case was filed." *King Fred Prop. Mgmt. & Constr. v. The City of Birmingham, Ala.*, 2:20-cv-01270-MHH, at *6 (N.D. Ala. Feb. 9, 2023).

However, ERISA Class Action lawsuits are rare in this district and settlements are even rarer. This is so because there are few practitioners in the Northern District of Alabama that have filed such cases on a contingency basis.

Joe R. Whatley, Jr., a partner in the law firm of Whatley and Kallas, LLP, has provided a Declaration in support of Class Counsel's fee request. *See*, **Exhibit D**, Declaration of Joe R. Whatley, Jr.  Mr. Whatley has practiced law since 1978, maintains an office in Alabama (amongst a number of other states) and provides testimony to the Court as an expert on the question of attorneys' fees and hourly rates for long term, complex actions such as this case. *Id.*, at, ¶¶ 2, 9.  Based on his knowledge of prevailing market rates, percentages of common funds, and for services of lawyers similar to Class Counsel, Mr. Whatley is of the opinion that the attorneys' fee requested, the expenses requested, and the hourly rates requested, are reasonable and appropriate.  Id., ¶¶ 10-15.  In particular, Mr. Whatley is also of the opinion that there are few firms in the country that have the expertise, skill and financial strength to prosecute a class action lawsuit brought on behalf of a 401(k) plan under ERISA. *Id.*, ¶ 15(h).  Accordingly, lawyers who bring such claims should be awarded fees at national, hourly rates no different than the hourly rates paid by "fee paying clients on a non-contingent basis".  *Id.*, ¶ 15 (h-K).

Courts in other districts have acknowledged this fact in their own markets, and instead looked to national rates to compensate attorneys for work done on a national level against defense counsel from large national firms:

> Complex ERISA class action litigation, such as this, involves a national market. Defendants in this, and similar cases, retain large multi-national law firms and utilize attorneys from offices across the nation.  The Court therefore finds that the relevant market rate for cases

such as this is a nationwide market rate. This is consistent with the findings of numerous other district courts in similar excessive fee cases handled by Class Counsel.

*Henderson v. Emory Univ.*, 2020 U.S. Dist. LEXIS 218676, *5-6; *see also Kruger v. Novant Health, Inc.*, No. 14-208, 2016 U.S. Dist. LEXIS 193107, 2016 WL 6769066, at *4 (M.D.N.C. Sept. 29, 2016) (collecting cases). The following cases are illustrative of the national rates typically awarded for ERISA Class Action settlements:

- *Pledger v. Reliance Trust Co.*, 2021 U.S. Dist. LEXIS 105868, *22-23: "The approved hourly rates are as follows: for attorneys with at least 25 years of experience, $1,060 per hour; for attorneys with 15-24 years of experience, $900 per hour; for attorneys with 5-14 years of experience, $650 per hour; for attorneys with 2-4 years of experience, $490 per hour; and for Paralegals and Law Clerks, $330 per hour."

- *Henderson v. Emory Univ.*, 2020 U.S. Dist. LEXIS 218676, *6: "the Court approves the following hourly rates for Class Counsel: for attorneys with at least 25 years of experience, $1,060 per hour; for attorneys with 15-24 years of experience, $900 per hour; for attorneys with 5-14 years of experience, $650 per hour; for attorneys with 2-4 years of experience, $490 per hour; and for Paralegals and Law Clerks, $330 per hour. The Court finds that these rates are consistent with the rates charged by firms defending these types of complex class actions."

- *Blackmon v. Zachary Holdings, Inc.*, 2022 U.S. Dist. LEXIS 129336, *13: Approving rates ranging from $1100, to $885, to $850 an hour for partners, $250 for paralegals, and noting "the application of the lodestar method confirms the reasonableness of the percentage award."

17

- *Jones v. Coca-Cola Consol., Inc.*, 2022 U.S. Dist. LEXIS 141154, *10: Granting fee request and approving rates ranging from $1100, to $975, to $885, to $850 for partners, and $250 for paralegals.

- *Cassell v. Vanderbilt Univ.*, 2019 U.S. Dist. LEXIS 242062, *9-10: Approving rates for attorneys with at least 25 years of experience, $1,060 per hour; for attorneys with 15-24 years of experience, $900 per hour; for attorneys with 5-14 years of experience, $650 per hour; for attorneys with 2-4 years of experience, $490 per hour; and for Paralegals and Law Clerks, $330 per hour. "These reasonable hourly rates were independently verified by a recognized expert in attorney-fee litigation who opined that Class Counsel's requested rates were reasonable based on rates charged by national attorneys of equivalent experience, skill, and expertise in complex class action litigation.".

- *Karpik v. Huntington Bancshares Inc.*, 2021 U.S. Dist. LEXIS 38641, *27-28 ("The Court finds that Class Counsel's hourly rates are reasonable under the circumstances of this particular case." and approving rates as follows: 21 years of experience at $775, 13 years at $625, 6 years at $575, and paralegals at $250.)

- *Kruger v. Novant Health, Inc.*, 2016 U.S. Dist. LEXIS 193107, *13: Approving rates of $998/hour for attorneys with at least 25 years of experience; $850/hour for attorneys with 15-24 years of experience; $612/hour for attorneys with 5-14 years of experience; $460/hour for attorneys with 2-4 years of experience; $309/hour for Paralegals and Law Clerks; and, $190/hour for Legal Assistants.

These national rates are not much higher than that noted as a reasonable rate in the Northern District for local practitioners as in 2020, Judge Proctor held in approving a motion for attorneys' fees for a class settlement: "the realized hourly rate would

become $791 for Mr. Yanchunis and $548 for Mr. Barthle, which are more reasonable rates in this legal community". *Swaney v. Regions Bank*, 2020 U.S. Dist. LEXIS 101215, *19.

Mr. White previously submitted a fee application in an ERISA excessive fee class action of similar size and scope in which the loadstar was calculated and approved on the basis of a $650 fee for his work. *See Disselkamp v. Norton*, W.D. Ky., 3:18-cv-048 (Louisville, Kentucky) 3:18-cv-00048-GNS-CHL (lodestar cross-check for fee application in connection with approval of $5.75 million settlement involving $900 million plan with 20,000 participants).

Moreover, the experience of one of Class Counsel's other firm's, Wiggins Childs Pantazis Fisher Goldfarb, also supports the fees requested in this case. For example, in 2015, a partner and 25 year practitioner at Wiggins Childs, Brian Clark, had a class settlement approved in this district awarding him $600/hr.[5] *Parsons v. Brighthouse Networks, LLC*, 2015 U.S. Dist. LEXIS 197566; see also *Cedric Burroughs v. Honda Manufacturing of Alabama*, 3 F. Supp. 3d 1277 (N.D. Ala. 2014) (Judge Virginia Hopkins approved a rate of $625 per hour for Robert Wiggins, who had 38 years of experience; $525 per hour for Candis McGowan, who had 25 years of experience; and $525 per hour for Ann Wiggins, who had 25 years of

---

[5] According to the government inflation calculator, that amounts to $793.26 in today's dollars.  https://data.bls.gov/cgi-bin/cpicalc.pl

experience."); *Womack v. Dolgencorp, Inc*., 2012 U.S. Dist. LEXIS 202303, \*27 (Judge Hopkins finding that "there was evidence in the record"… "that even a $900 - $1,000 per hour rate would not be excessive" for attorneys at Wiggins Childs).

Even if the Court viewed lower hourly rates to be appropriate here, the use of a multiplier (if necessary) would also be consistent with Eleventh Circuit precedent and further suggests Class Counsel's fee request is reasonable. *Pledger v. Reliance Trust Co.*, 2021 U.S. Dist. LEXIS 105868, \*23-24 (approving fee with lodestar multiplier of 1.18); *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 04-CV-3066-JEC, 2008 U.S. Dist. LEXIS 130889, 2008 WL 11234103, at \*3 (N.D. Ga. Mar. 4, 2008) (approving fee with lodestar multiplier between 2 and 3); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 696 (N.D. Ga. 2001) (noting that courts have approved lodestar multipliers greater than five); *Cox v. Cmty. Loans of Am., Inc.*, No. 11-177-CDL, 2016 U.S. Dist. LEXIS 195533, 2016 WL 9130979, at \*3 (M.D. Ga. Oct. 6, 2016) (lodestar multipliers "in large and complicated class actions range from 2.26 to 4.5 while three appears to be the average[.]"); *see also Davis v. Locke*, 936 F.2d 1208, 1215 (11th Cir. 1991) (affirming district court's enhancement of lodestar by a multiplier of 1.6 to compensate, among other things, for the risk associated with a contingency fee).

Based on the foregoing, the $2,033,333.13 requested fee is reasonable in light of the time and labor involved.

**B.      The Novelty and Difficulty of the Questions Involved.**

The second *Johnson* factor, the "novelty and difficulty of the questions involved," highlights the nature and magnitude of the risk assumed by Plaintiffs' counsel. *See Camden I,* 946 F.2d at 772 n. 3; *Walco v. Thenen,* 168 F.R.D. 315, 327 (S.D. Fla. 1996).

"ERISA is famously complicated and often tedious." *Chicago Truck Drivers v. El Paso CGP Co.*, 525 F.3d 591, 595 (7th Cir. 2008). "ERISA is, of necessity, a highly complex and detailed statute. Unsurprisingly, ERISA litigation often presents novel and difficult legal issues." *Browe v. CTC Corp.*, 19-677-cv, at *68 (2d Cir. Sep. 29, 2021) (internal citations omitted). *See also Griffin v. Habitat for Humanity Int'l, Inc.*, 157 F. Supp. 3d 1301, 1306 (N.D. Ga. 2015) ("[] the law governing ERISA claims is complex and, at times, virtually incomprehensible to all but the most studied and skilled.") Moreover, "the merits of the claims of breaches of fiduciary duties involve complex legal and factual questions." *In re Schering-Plough Corp. Erisa Litigation*, 420 F.3d 231, 242 (3d Cir. 2005). Even drafting a complaint involves a "'challenging pleading burden' for ERISA plaintiffs claiming a breach of fiduciary duty.'" *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1146 (10th Cir. 2023) citing *Meiners v. Wells Fargo & Company*, 898 F.3d 820, 822 (8th Cir. 2018).

Large ERISA class action disputes involving financial data are, by their nature, difficult to prosecute, and the investigation into the manner a retirement Plan

is administered is not a simple task. Just putting the claim together in this case involved a series of complex financial calculations. The documents produced in discovery were voluminous and involved high-level financial concepts, necessitating the involvement of experts and consultants. By way of example, the Complaint in this case is 88 pages long and is supported by a detailed set of figures and financial analysis. In responding to the Claim, Defendant submitted an expert report in the administrative proceeding that was 107 pages long and included six exhibits of financial analysis and data. Counsel had to conduct five separate conference calls and consult with outside experts to work through issues relating to one set of recordkeeper data important to the outcome of this case. Simply put, the prosecution of ERISA excessive fee cases is difficult, time-consuming, and expensive. *Yates v. Mobile County Personnel Bd.,* 719 F.2d 1530, 1535 (11th Cir. 1983) (complex litigation required thorough and detailed research of every issue involved).

"In similar ERISA excessive fee cases, and in particular those brought by Class Counsel [the same as in this case], district courts have consistently recognized that a one-third fee is the market rate." *Kelly v. Johns Hopkins Univ.*, No. 1:16-CV-2835-GLR, 2020 U.S. Dist. LEXIS 14772, 2020 WL 434473, at *3 (D. Md. Jan. 28, 2020); *see also Sims. v. BB&T Corp.,* Nos. 1:15-CV-732 & 1:15-CV-841, 2019 U.S. Dist. LEXIS 75839, 2019 WL 1993519, at *2 (M.D.N.C. May 6, 2019) ("A one-

third fee is consistent with the market rate in complex ERISA matters such as this and reflects a customary fee for like work.").

Defendant has denied and continues to deny all allegations of wrongdoing and liability arising out of the administration of the Plan as well as the appropriateness of class certification. These defenses posed significant risks to obtaining relief for any Plaintiffs, not to mention a nationwide class. ERISA's fee-shifting provisions heightened the risk for all involved.

It was only through the efforts of Class Counsel and the Class Representatives – taken at their own risk – that $6,100,000 in benefits were obtained for the Class. *Cf. In re Rio Hair Naturalizer Prods. Liab. Litig.*, No. MDL 1055, 1996 WL 780512, at *17 (E.D. Mich. Dec. 20, 1996) ("Absent Petitioners' efforts, there would be no fund[s] whatsoever for distribution to class members."). Class Counsel's success in the face of complex and difficult legal issues support the fee requested.

## C.  The Skill Required: Class Counsel's and Opposing Counsel's Quality of Work

The third *Johnson* factor, the skill requisite to perform the legal service properly, also militates in favor of approving the requested award. Given the complexity of the legal issues involved, Class Counsel's competence and experience in class actions clearly was a significant factor in overcoming the Defendant's resistance to settlement and obtaining the result achieved for the Settlement Class. The work is time-consuming and requires the ability to work with industry specific

financial information. Further, in assessing the quality of representation by Plaintiffs' counsel, the Court also should consider the quality of the opposition facing Class Counsel. *e.g., Camden I,* 946 F.2d at 772 n. 3; *Johnson*, 488 F.2d at 718; *Ressler v. Jacobson,* 149 F.R.D. 651 (M.D. Fla. 1992); *Angoff v. Goldfine,* 270 F.2d 185, 192 (1st Cir. 1959). Defense counsel (Emily Costin and her team at Alston Bird and Sharon Stuart at Christian Small) are experienced and highly-skilled in defending complex litigation and ERISA excessive fee class actions. The quality of work through the life of this case is self-evident, making Class Counsel's tasks even more difficult. The quality of both parties' representation assisted each party in assessing the risks involved and effectively crafting a class settlement that warrants approval.

### D.   Preclusion of Other Employment and the Time Limitations Imposed by this Case.

The fourth and seventh *Johnson* factors, the preclusion of other employment by the attorney due to acceptance of the case and the time limitations imposed by the client or the circumstances, strongly supports the requested award. "This factor requires the dual consideration of otherwise available business which is foreclosed because of conflicts of interest arising from the representation, and the fact that once the employment is undertaken, the attorney is not free to use the time spent on the case for other purposes." *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1209 (S.D. Fla. 2006). Class Counsel spent thousands of hours litigating this

case. The demands of the case prevented Class Counsel from accepting other potential cases throughout the course of this litigation. Additionally, the circumstances of this case, which was hard fought and demanding from the administrative process through the filing of this lawsuit, imposed severe time limitations on Class Counsel, involving lengthy motion practice and robust discovery. In short, Class Counsel chose to work and spend time on this important case and not other cases; such foreclosure of other legal work suggests the reasonability of the fee request.

### E.   The Customary Fee and Whether the Fee is Contingent or Fixed.

The fifth and sixth *Johnson* factors, the customary fee and whether the fee is fixed or contingent support the requested award. In determining the appropriate fee, the Court should also consider what a private client would pay for hiring a lawyer on an individual basis:

> The judicial task might be simplified if the judge and the lawyers bent their efforts on finding out what the market in fact pays not for the individual hours but for the ensemble of services rendered in a case of this character. The class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client.

*Matter of Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992). In their concurring opinion in *Blum v. Stenson,* 465 U.S. 886 (1984), Justices Brennan and Marshall observed that "[i]n tort suits, an attorney might receive one-third of whatever amount Plaintiff recovers. In those cases, therefore, the fee is directly

proportional to the recovery." *Id.* at 904; *see Kirchhoff v. Flynn,* 786 F.2d 320, 323, 325 n.5 (7th Cir. 1986) (observing that "40% is the customary fee in tort litigation"); *In re Public Service Co.,* Fed. Sec. L. Rep. (CCH) ¶ 96,988, at 94,291-92 (S.D. Cal. 1992) ("If this were a non-representative litigation, the customary fee arrangement would be contingent on a percentage basis, and in the range of 30% to 40% of the recovery."). In a consumer case, a private client would expect to pay a contingent fee ranging from 40% to 45% of the recovery. In this light, the fee of 33.33% of the recovery on behalf of the Class is reasonable.

Class Counsel prosecuted this case entirely on a contingent-fee basis and advanced the associated costs. Class Counsel assumed the risk of no payment for a substantial amount of work since 2019.  As one Court in the Eleventh Circuit has stated:

> A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the wholly contingent outlay of out-of-pocket sums by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high. Cases recognize that attorneys' risk is 'perhaps the foremost' factor' in determining an appropriate fee award. *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 54 (2d Cir. 2000) (citation omitted); *accord Jones v. Diamond,* 636 F.2d 1364, 1382 (5th Cir.1981) ('Lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result.'); *see also Ressler v. Jacobson,* 149 F.R.D. 651, 656 (M.D.Fla.1992) ('Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award.'); *Walters v. Atlanta,* 652 F. Supp. 755, 759 (N.D. Ga.), *modified,* 803 F.2d 1135 (11th Cir.1986); *York v. Alabama State Bd. of Educ.,* 631 F. Supp. 78, 86 (M.D.Ala.1986).

*Goldstein v. Juris Publ'g*, No. 05-23263-CIV-ALTONAGA/Tur, 2007 U.S. Dist. LEXIS 114219, at \*5 (S.D. Fla. May 25, 2007). In *Behrens v. Wometco Enterprises, Inc.,* 118 F.R.D. 534, 548 (S.D.Fla.1988), *aff'd,* 899 F.2d 21 (11th Cir.1990), the court noted that:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer. A contingency fee arrangement often justifies an increase in the award of attorneys' fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Id*., at 548 (citations omitted). *See also In re Sunbeam,* 176 F.Supp.2d at 1335; *Ressler v. Jacobson,* 149 F.R.D. 651, 656-57 (M.D.Fla.1992) ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award.   In evaluating [the contingent fee] factor the Court will not ignore the pecuniary loss suffered by plaintiff's counsel in other actions where counsel received little or no fee."). These factors weigh in favor of awarding Class Counsel the requested fee. Class Counsel have received no compensation during the course of this litigation and have also incurred expenses in litigating on behalf of the Class, none of which would have been recovered if the case had not been successfully concluded. From the time Class Counsel filed suit there existed a real possibility that they would achieve no recovery for the Class and hence no compensation.

Class Counsel's investment of time and expenses has always been at risk and wholly contingent on the result they achieved. Although Class Counsel have successfully concluded the litigation, this result was not foreseeable at the outset. The relevant risks must be evaluated from the standpoint of Class Counsel as of the time they commenced the suit and not retroactively with the benefit of hindsight. The financial risks borne by Class Counsel fully support the appropriateness of the fee requested. *See*, **Exhibit D**. Further, the requested fee of one-third of the recovery is well within customary fee awards for litigation of this nature. These factors weigh in favor of approving the requested fee.

**F.    The Amount Involved and the Results Obtained.**

The eighth *Johnson* factor, the amount involved, and the results obtained, also militate in favor of granting this motion. Despite the difficulties in prosecuting a nationwide class action predicated on complex financial management of a defined contribution Plan, Class Counsel obtained a significant financial benefit for the Class, in the amount of $6.1 million dollars.  The dollar amount in and of itself is an excellent achievement.

Additionally, when viewed in light of the percentage of the maximum damages, it is clear that the result should be lauded. Under Plaintiffs' damage model,

the $6.1 million represents roughly 7.7% of the estimated recovery[6], which falls well above the range of reasonable recoveries. *See Parsons v. Brighthouse Networks, LLC*, No. 2:09-CV-267-AKK, 2015 U.S. Dist. LEXIS 197566, 2015 WL 13629647, at *3 (N.D. Ala. Feb. 5, 2015) (collecting cases approving recoveries as low as 5.5%); *see also e.g. Bennett v. Behring Corp.*, 737 F.2d 982, 986-87 & n.9 (11th Cir. 1984) (approving $675,000 settlement representing 5.6% of claims with maximum potential recovery of $12,000,000); *Lazy Oil Co. v. Wotco Corp.*, 95 F. Supp. 2d 290, 318-19 (W.D. Pa. 1997)(approving settlement award representing 5.35% of expected recovery). As discussed above, the likelihood of such a recovery through continued litigation is extremely risky, adding to the appropriateness of the results achieved. *In re Pool Prod. Distrib. Mkt. Antitrust Litig.*, No. MDL 2328, 2015 WL 4528880, at *14 (E.D. La. July 27, 2015) (finding recovery of 8.5% of best-case damages scenario appropriate, especially as weighed against "substantial risks of nonrecovery").

### G.  The Experience, Reputation and Ability of the Attorneys.

The ninth *Johnson* factor, the experience, reputation, and ability of the attorneys, also supports the granting of this motion.[7]

---

[6] Plaintiffs alleged that Plan participants lost approximately $47,000,000 of their retirement money because of Defendant's mismanagement. Doc. 41, at 9-11.

[7] Courts in this Circuit have considered this factor primarily in assessing the reasonableness of a proposed hourly rate. *Murray v. CSX Transp.*, Civil Action 21-0058-TFM-M, at *6 (S.D. Ala. Mar. 25, 2022) ("In determining a reasonable hourly rate, *Johnson* factors three and nine-"the skill

This Honorable Court has determined that (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) Class Counsel's experience in handling class actions, including ERISA excessive fee class actions and other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law and in particular, the lawyers' knowledge of ERISA as it applies to claims of the type asserted here; and (iv) the resources that counsel has committed to representing the class, were sufficient to warrant their appointment as Class Counsel. Doc 123. Class Counsel have also each provided declarations outlining their qualifications and work performed. **Exhibits A, B and C**. The declaration provided by Mr. Whatley also attests to the qualifications and skill of Class Counsel. **Exhibit D**. Class counsel will continue to commit the resources and time necessary to complete the Settlement.

## H.   The Undesirability of the Case

The tenth *Johnson* factor is the undesirability of the case. Here, the "undesirable" analysis hinges on the lack of certainty in prevailing on a nationwide ERISA lawsuit, predicated on complicated financial decisions, against a Defendant

---

requisite to perform the legal service properly" and "the attorney's experience, reputation and ability"-may be considered."); *Choice Hotels International, Inc. v. Key Hotels of Atmore II, LLC*, Civil Action No. 16-0452-CG-B, at *4 (S.D. Ala. Sep. 15, 2017) (same); *Stevens v. Mobile Cnty. Bd. of Sch. Comm'rs*, CIVIL ACTION No. 1:18-cv-350-KD-B, at *8 (S.D. Ala. Apr. 20, 2020) (same).

with vast resources. Additionally, ERISA's fee-shifting provision made the participation of the Class Representatives a risky proposition.

Thus, for the purpose of assessing an award of attorneys' fees to Class Counsel, this case should be viewed as highly risky, militating in favor of approving a higher percentage. Along those lines, the fact that Class Counsel secured a favorable settlement in the end is not relevant to assessing the risks attendant to the case which Class Counsel assumed at the case's inception. *Skelton v. General Motors Corp.*, 860 F.2d 250, 258 (7th Cir. 1988) ("The point at which plaintiffs settle with defendants . . . is simply not relevant to determining the risks incurred by their counsel in agreeing to represent them"); *Lindsey Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 112 (3rd Cir. 1976). The fact that Class Counsel took such a substantial risk and still obtained an exceptional result, favors approval of the requested fees.

## I.    The Nature and Length of the Professional Relationship.

The length and nature of the professional relationship is a minor factor. *Allapattah Services, Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1216 (S.D. Fla. 2006). However, a higher fee may be warranted in class actions where counsel for the class had no prior relationship with the named plaintiffs. *Id*. Such is the case here and that fact supports the requested fee.

31

**J.     Awards in Similar Cases.**

The final Johnson factor, awards in similar cases, also supports an award of one-third of the recovery. There are numerous decisions in the Eleventh Circuit and beyond awarding up to (and sometimes in excess of) one-third of the settlement value.  Consider:

- *McWhorter v. Ocwen Loan Servicing*, 2019 U.S. Dist. LEXIS 232149, *40 (approving attorneys' fee award of one-third plus expenses)

- *Camp v. City of Pelham, 2015 U.S. Dist. LEXIS 182565, *9* (approving attorneys' fee award of "just over 41% of the fund" plus expenses*)*

- *McGee v. Triad of Ala., LLC*, No. 1:14-CV-324-WKW, 2019 U.S. Dist. LEXIS 8848, at *12 (M.D. Ala. Jan. 18, 2019) (approving attorneys' fee award of "approximately 37.7% of the total recovery available to the class")

- *Pledger v. Reliance Trust Co*., 2021 U.S. Dist. LEXIS 105868, *14 (approving attorneys' fee award of 33.33% in ERISA defined contribution plan settlement "under prevailing precedent and the circumstances of this case")

- *Waters v. International Precious Metals, Inc.,* 190 F.3d 1291 (11th Cir. 1999) (awarding 33.33% of the common fund of $40 million)

- *Disselkamp v. Norton*, W.D. Ky., 3:18-cv-048 (approving attorneys' fee award of one-third plus expense for $5.75 million settlement in an ERISA excessive fee class action involving a similarly-sized plan);

- *Stevens v. SEI Invs. Co*., 2020 U.S. Dist. LEXIS 35471, *43 (approving attorneys' fee request of one-third in 6.8-

million-dollar ERISA settlement, along with expenses and incentive awards equaling $10,000 each)

- *Cates v. Trs. of Columbia Univ.*, 2021 U.S. Dist. LEXIS 200890, *6 ("The Court finds the requested fee of one-third of the monetary recovery is reasonable and appropriate given the significant risk of nonpayment in this complex ERISA class action.")

- *Tapken v. Brown,* Case No. 90-0691-Civ-Marcus (S.D. Fla. 1995) (awarding 33%)

- *In re Ampicillin Antitrust Lit.*, 526 F. Supp. 494 (D.D.C. 1981) (45% fee awarded)

- *Beech Cinema, Inc. v. Twentieth Century Fox Film Corp.*, 480 F. Supp. 1195 (S.D.N.Y. 1979) (approving 53% fee)

- *In re U.S. Bancorp Lit.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (approving fees of 36% of the common fund)

- *In re Crazy Eddie Sec. Lit.*, 824 F. Supp. 320 (E.D.N.Y. 1993) (awarding 33.8% of the common fund as a fee).

Finally, the *Camden I* court held "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any nonmonetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Camden I*, 946 F.2d at 775. As noted above, this case began with the administrative process in May of 2019 and a settlement was not reached until August of 2023. The time required to reach settlement and the economics involved in prosecuting this case has been discussed above. As of the

date of this filing, there are no objections by Class members or other parties to the settlement terms or the fees requested by counsel, much less substantial ones - indeed, this motion is unopposed. The nonmonetary benefits requested in the Amended Complaint (*i.e.* injunctive relief pursuant to 29 U.S.C. §1132) Doc. 43-1 were mooted by the merger of the BBVA plan into the PNC plan. Each of these factors confirms the inherent reasonableness of Class Counsel's request.

**VII.   An Enhancement for the Delay in Payment is Appropriate.**

Class counsel began investigating this claim in the spring of 2019 (*see* **Exhibits B and C**), first wrote BBVA regarding this matter in May of 2019, and filed the initial Complaint on July 18, 2019. In circumstances such as these, it is well accepted that an enhancement is appropriate, as the Eleventh Circuit has held:

> The district court awarded the plaintiffs historical rates, reflecting the reasonable fee at the time the work was performed, apparently without any enhancement for delay in payment. Such delay obviously dilutes the eventual award and may convert an otherwise reasonable fee into an unreasonably low one. As a result, district courts should take into account inflation and interest, perhaps by adjusting the contingency factor to reflect delay, not just contingency, or perhaps by compensating at current, not historical, rates. We do not prescribe any set method for correcting for delay in payment, but some form of correction must be undertaken.

*Johnson v. University College of Alabama*, 706 F.2d 1205, 1210-11 (11th Cir. 1983) (internal citations omitted). This is because "Otherwise, the passage of time would dilute the eventual award and an otherwise reasonable fee could be converted into an unreasonably low one." *Resolution Trust Corp. v. Hallmark Builders, Inc.*, 143

F.R.D. 277, 283 (M.D. Fla. 1992) citing *University College of the University of Alabama Birmingham,* 706 F.2d 1205, 1210 (11th Cir. 1983)." *See also Eason v. Bridgewater & Assocs., Inc.*, 108 F. Supp. 3d 1358, 1363 (N.D. Ga. 2015) ("To the extent Defendants suggest that Plaintiffs should have used their actual historical rates in calculating fees, it is well-recognized that use of current, as opposed to historical, rates, may properly account for "inflation and delay in receipt of payment."") Here, Class Counsel has been working on this case for over five years. The delay in payment "obviously dilutes the eventual award and may convert an otherwise reasonable fee into an unreasonably low one." *Johnson v. University College of Alabama*, *supra*. These factors support the reasonableness of the requested award.

## VIII.  Class Counsel's Expenses

Class Counsel requests that their expenses totaling $152,891.22 be reimbursed out of the QSF as they were necessary to prosecute this action.  Under the common fund doctrine, Class Counsel are entitled to reimbursement of all reasonable out-of-pocket expenses. *Hanley v. Tampa Bay Sports & Entm't Ltd. Liab. Co*., No. 8:19-CV-00550-CEH-CPT, 2020 U.S. Dist. LEXIS 89175, at *17 (M.D. Fla. Apr. 23, 2020) ("courts normally grant expense requests in common fund cases as a matter of course").  *See also Janicijevic v. Classica Cruise Operator, Ltd.*, No. 20-cv-23223-BLOOM/Louis, at *18 (S.D. Fla. May 19, 2021) (same) *citing Hanly*, *Id*.;

35

*Sawyer v. Intermex Wire Transfer, LLC*, No. 19-cv-22212-BLOOM/Louis, at \*3 (S.D. Fla. Sep. 3, 2020) (same). Additionally, "Under *Rule 23(h) of the Federal Rules of Civil procedure*, a trial court may award nontaxable costs that are authorized by law or the parties' agreement." *Pledger v. Reliance Trust Co.*, 2021 U.S. Dist. LEXIS 105868 at \*24 (N.D. Ga March 8, 2021).

The expenses incurred by Class Counsel in the prosecution of this action were reasonable and necessary to litigate a case such as this. *See* **Exhibits A, B, and C**; *see also* **Exhibit D**.

## IX. Incentive Awards

Class Counsel seeks $10,000.00 incentive awards for each of the Class Representatives, Gloria Ferguson and Cassandra McClinton. This amount is consistent with prior precedent[8] recognizing the value of individuals stepping forward to represent a class, particularly in contested litigation like this where the potential benefit to any individual does not outweigh the cost of prosecuting class-wide claims and there are significant risks of no recovery and the risk of alienation from the employers and peers. *e.g., Champs Sports Bar & Grill Co. v. Mercury Payment Sys., LLC*, 275 F. Supp. 3d 1350, 1356 (N.D. Ga. 2017) (Cohen, J.); *Ingram*

---

[8]*See Pledger v. Reliance Trust Co.*, 2021 U.S. Dist. LEXIS 105868, \*27 ("the Class Representatives in this case were not promised a 'bonus' or 'salary,' but undertook a considerable risk of alienation and harm to their reputations for seeking to enforce their rights under ERISA. But for their service and willingness to accept this risk, the Class would have received nothing."); *see also McWhorter v. Ocwen Loan Servicing*, 2019 U.S. Dist. LEXIS 232149, \*37. "The Eleventh Circuit permits incentive awards."

*v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (Story, J.); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990); *see also Troudt v. Oracle Corp.*, No. 16-175, Doc. 236 at 9 (D. Colo. July 10, 2020); *Kelly v. Johns Hopkins Univ.*, No. 16-2835, 2020 WL 434473, at *8 (D. Md. Jan. 20, 2020); *Cassell v. Vanderbilt Univ.*, No. 16- 2086, Doc. 174 at 5 (M.D. Tenn. Oct. 22, 2019); *Tussey v. ABB, Inc.*, No. 06-4305, 2019 WL 3859763, at *6 (W.D. Mo. Aug. 16, 2019); *Clark v. Duke Univ.*, No. 16- 1044, 2019 WL 2579201, at *5 (M.D. N.C. June 24, 2019); *Kruger v. Novant Health, Inc.*, No. 14-208, 2016 WL 6769066, at *6 (M.D. N.C. Sept. 29, 2016); *Spano v. Boeing Co.*, No. 06-743, 2016 WL 3791123, at *4 (S.D. Ill. Mar. 31, 2016).

Plaintiffs recognize the Eleventh Circuit in *Johnson v. NPAS Sols.*, 975 F.3d 1244 (11th Cir. 2020) reversed the grant of an incentive award to a class representative and holding "[a] plaintiff suing on behalf of a class ... cannot be paid a salary or be reimbursed for his personal expenses." *Id.* at 1257. However, as the Court in *Pledger v. Reliance Trust Co.*, 2021 U.S. Dist. LEXIS 105868 found, the "factual settings are distinguishable from this case." *Id.* at *26. The Court concluded:

> unlike *Greenough* and *Pettus*, the Class Representatives in this case were not promised a "bonus" or "salary," but undertook a considerable risk of alienation and harm to their reputations for seeking to enforce their rights under ERISA. But for their service and willingness to accept this risk, the Class would have received nothing. Another judge of this

district also has approved incentive fee awards in an ERISA case for the same reasons:

> The court finds that this award is not of the type prohibited in [Greenough and Pettus]. The Class Representatives, employees of the Defendants, faced considerable risk in pursuing this lawsuit. The award does not constitute either a salary or a bounty. Furthermore, the settlement agreement in this action is not contingent on the Class Representatives receiving an award. The Class Representatives were integral to achieving the settlement which in turn benefits the entire class. Without them, the class members would receive nothing and their retirement plans would not have been adjusted.

*Id.*, at 27, *citing Henderson v. Emory Univ.*, No. 16-cv-2920-CAP (N.D. Ga. Nov. 4, 2020).

Here, as in *Pledger* and *Henderson*, Plaintiffs were not promised a bonus or salary. Indeed, they were not promised anything. *See* **Exhibits E and F**, Declarations of Gloria Ferguson and Cassandra McClinton.  Additionally, the Class Representatives, who filed these claims while still employees of Defendant, undertook a considerable risk of alienation and harm to their reputations for seeking to enforce their rights under ERISA. *Id*. Without their work, the Class would have received nothing. Moreover, the Settlement Agreement is in no way contingent upon the receipt of an incentive award.  *Id*.; *See* **Exhibit A**; *Pledger v. Reliance Trust Co*., 2021 U.S. Dist. LEXIS 105868, *see also Dean, et al. v. Cumulus Media, Inc., et al.*, No. 1:20-cv-00847-TWT (N.D. Ga. July 10, 2023 (approving ERISA breach of

fiduciary class action settlement and awarding case contribution awards to the named plaintiffs).

Both Class Representatives were employees of the Defendant throughout the entire litigation, and thus took on considerable risk in challenging their employer's conduct. *See* **Exhibits E and F**. They reviewed the pleadings, they assisted in compiling discovery responses and producing documents, they helped the attorneys formulate case strategy, and prepared to conduct their depositions. *Id*. Without their assistance, the Class would not have obtained this significant recovery. *See* **Exhibit A**. Thus, an incentive award of $10,000 each is reasonable and should be approved.

## CONCLUSION

Based on the foregoing, Class Counsel respectfully requests that the Court approve and Order, pursuant to the terms of the Settlement Agreement, that Class Counsel be awarded payment of attorneys' fees of $2,033,332.13, expenses totaling $152,891.22, and incentive awards of $10,000.00 to each Class Representative, to be paid by Defendant in accordance with the terms of the Settlement Agreement.

RESPECTFULLY SUBMITTED,

*/s/ D G. Pantazis, Jr.*
D. G. Pantazis
*Co-Counsel for Plaintiffs*

**OF COUNSEL:**
WIGGINS CHILDS PANTAZIS
FISHER GOLDFARB, LLC
The Kress Building
301 Nineteenth Street North
Birmingham, Alabama 35203
Telephone: (205) 314-0557
Email: dgpjr@wigginschilds.com

*/s/ James H. White*
James H. White
*Co-Counsel for Plaintiffs*

JAMES WHITE, LLC
2100 1st Ave North, Suite 600
Birmingham, Alabama 35203
Telephone: (205) 383-1812
Email: james@whitefirmllc.com

*/s/ Lange Clark*
Lange Clark
*Co-Counsel for Plaintiffs*

LAW OFFICE OF LANGE CLARK, P.C.
301 19th Street North, Suite 550
Birmingham, Alabama 35203
Telephone: (205) 939-3933
Email: langeclark@langeclark.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 21, 2024, the above and foregoing document was filed and served via the Court's CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

>Sharon D. Stuart, Esquire
>CHRISTIAN &amp; SMALL LLP
>505 North 20th Street
>Suite 1800 Financial Center
>Birmingham, Alabama 35203
>sdstuart@csattorneys.com
>
>Emily S. Costin, Esquire
>ALSTON &amp; BIRD LLP
>950 F Street NW
>Washington, DC 20004
>emily.costin@alston.com
>
>Blake Crohan, Esquire
>Ellie Studdard, Esquire
>ALSTON & BIRD LLP
>One Atlantic Center
>1201 W. Peachtree Street, Suite 4900
>Atlanta, Georgia 30309
>blake.crohan@alston.com
>ellie.studdard@alston.com
>
>*Attorney for Defendants*
>*PNC Financial Services Group, Inc.,*
>*Successor in interest to BBVA USA Bancshares, Inc.*
>
>*/s/ D.G. Pantazis*
>Of Counsel