FILED
2024 Mar-21  PM 02:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

GLORIA FERGUSON and           )
CASSANDRA McCLINTON,          )
individually and on behalf of )
others similarly situated,    )
                              )
    Plaintiffs,           )        CLASS ACTION
                              )
v.                            )        Case No.: 2:19-cv-01135-MHH
                              )
PNC FINANCIAL SERVICES        )
GROUP, INC., *as successor in* )
*interest to BBVA Compass*     )
*Bancshares, Inc.*,            )
                              )
    Defendant.            )

## MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

COME NOW the Class Representatives[1] and submit this Memorandum in Support of their Unopposed Motion for Final Approval of Proposed Class Settlement. The Class Representatives respectfully request that, after conducting the Final Approval Hearing on April 18, 2024, the Court finally approve the Settlement pursuant to Federal Rule of Civil Procedure 23(e) and enter the proposed Final Judgment (Doc. 121-1 at pp. 68 – 76) that will, among other things: 1) finally

---

[1] The "Class Representatives" are Gloria Ferguson and Cassandra McClinton.

approve the Settlement Agreement, and 2) certify the Settlement Class for settlement purposes only.

By Order dated January 2, 2024, this Court granted preliminary approval of the Settlement. Doc. 123. Notice was then issued according to the Court's Order. *See*, Doc. 127 and 127-1, Notice of Filing Declaration of Janeth Antonio and Declaration of Janeth Antonio Re: Notice Procedures (hereinafter referred to as "KCC Declaration").[2] KCC provided Notice pursuant to this Court's directive as follows:

1) All Settlement Class Members were sent the Postcard Notice, containing a Summary Notice including the Settlement Website, via U. S. Mail;

2) The Settlement Website (http://www.bbva401kSettlement.com/) was established providing copies of the Notice, all pertinent pleadings, FAQs, important dates, and the ability to fill out a claim.

Doc. 127-1, p. 3 at ¶¶ 5, 8.

The Settlement Website provides important information including the right to object, the deadlines for doing so, the details of the Final Approval Hearing date, time, and location, and it provides a toll-free telephone number to call for more information or questions about the Settlement. The Settlement Website also listed counsel of record. There have been no objections, and no governmental actor has

---

[2] 28,040 notices were mailed on February 16, 2024. As of March 20, 2024, only 2,712 (9.67%) were returned as undeliverable. Doc. 127-1, p. 3 at ¶¶ 5-7. 2,260 notices were re-mailed based on updated addresses found by KCC. *Id*.

objected to the Settlement. Doc. 127-1, p. 4 at ¶ 11.

The Class Representatives request that this Unopposed Motion be granted because the Settlement provides substantial relief to the Settlement Class, meets all the standards for final approval, and satisfies the requirements of Fed. R. Civ. P. 23 and due process. By separate Motion, Class Counsel has also requested that the Court approve and grant an award of attorneys' fees, expenses, and incentive awards payable by the Defendants under the Settlement. *See*, Doc. 128 and Doc 129, Plaintiffs' Unopposed Motion for an Award of Attorneys' Fees, Costs and Incentive Awards and Memorandum of Law in Support of Unopposed Motion. Newly filed motions and accompanying memorandums will be uploaded to the Settlement Website for ease of public access. Doc. 127-1, p. 3 at ¶ 8.

## I.    Introduction.

This litigation began with a demand by Ms. Ferguson to the Compass Smart Investor 401(k) Plan in May of 2019.  Thereafter, on July 28, 2019, Plaintiffs filed their initial Complaint. Doc. 1. Ultimately, this settlement represents the culmination of five years of litigation and numerous arm's-length settlement negotiations.  The Class Representatives have achieved significant relief for BBVA Compass SmartInvestor 401(k) Plan participants nationwide.

Plaintiffs alleged Defendant BBVA Compass Bancshares, Inc. ("BBVA"), which was subsequently acquired by PNC Financial Services Group, Inc. ("PNC")

mismanaged the defined contribution retirement plan, the BBVA Compass SmartInvestor 401(k) Plan (the "Plan"). The Plaintiffs sought to remedy this by filing an ERISA claim to recover the losses suffered by the Plan and the participants in the Plan.

The litigation was hard-fought. The Class Representatives, Gloria Ferguson and Cassandra McClinton, hired Class Counsel to investigate their claims through a lengthy, complex administrative process resulting in Plaintiffs filing this class action lawsuit in federal court. Ultimately, there were two Complaints filed, multiple dispositive motions briefed, and significant discovery undertaken.

Tens of thousands of documents were produced involving complicated financial data. Plaintiffs deposed the Defendant's corporate representative, subpoenaed third parties for documents and testimony, engaged experts to consult and provide reports, and litigated the case until the eve of the close of discovery.

In 2022, the parties traveled to California to mediate a settlement through the help of a mediator with ERISA experience, Robert Meyer of JAMS Mediation. The parties conducted two mediation sessions and exchanged communications but were unable to find much common ground. Upon the commencement of discovery, the parties continued settlement discussions, exchanging offers through Mr. Meyer, and ultimately reached an agreement to resolve the litigation.

Attorney's fees were not discussed until after the substantive terms of the

agreement had been reached. Mr. Meyer provided a Declaration to the Court, Doc. 121-4, "Declaration of Robert E. Meyer," expressing his thoughts on the mediation process and Settlement.

During the discovery and settlement negotiation process, the Class Representatives gained a thorough understanding of the case against the Defendants. The settlement was reached only after evaluating various factors, including the risks associated with the litigation. This assessment included an analysis of 1) liability risks against the Defendants, 2) estimates of the potential recovery, 3) the likelihood of success at certification, 4) potential delay to Class Members' recovery based upon likely appeals of any rulings or verdicts at trial, and 5) fee-shifting provisions under ERISA.

As the Court preliminarily held, the Class satisfies all the requirements of Fed. R. Civ. P. 23(a) and 23(b)(1) and due process. Under Fed. R. Civ. P. 23(e), the Settlement merits final approval. It represents a significant achievement for the Class members, especially in light of the litigation risks involved, and merits final approval under Rule 23(e)(2). Finally, the parties have worked with the Settlement Administrator, KCC, LLC ("KCC"), a firm with extensive experience in administering class action settlements, to provide wide-reaching Notice as directed by the Court, which exceeds applicable requirements and has been designed to achieve the best practicable notice to the Class Members. *See*, Doc. 127-1.

## II.     Settlement Terms.

Defendants have agreed to pay $6,100,000.00 to the Settlement Class. The Settlement Class Members will receive a payment based upon their pro-rata share of the Settlement Fund and their account value in the Plan. This monetary relief includes the costs of settlement administration and attorneys' fees and costs awarded by the Court. The funds remaining after subtracting the costs of the Settlement Administration, and any potential attorneys' fees and costs awarded, is hereby referred to as the "Net Settlement Fund." Doc. 12-1, ¶ 14.

The Settlement Class includes all Plan participants since 2013. More specifically, the Settlement Class is defined as:

> a. All persons, other than Defendant(s), who were participants as of July 17, 2023 in Plan, including (i) beneficiaries of deceased participants who, as of July 17, 2013, were receiving benefit payments or will be entitled to receive benefit payments in the future, and (ii) alternate payees under a Qualified Domestic Relations Order who, as of July 17, 2013, were receiving benefit payments or will be entitled to receive benefit payments in the future; and (b) all persons, other than BBVA, who have been participants or beneficiaries in either the Plan and had account balances in the Plan at any time between July 17, 2013 through the date of judgment.

Doc. 121-1, "Settlement Agreement."

KCC has set up a Qualified Settlement Fund ("QSF") which will maintain the settlement money. As of the date of this filing, KCC has provided notice to all 28,040 Class Members and instituted the Settlement Website

[http://www.bbva401kSettlement.com]. Doc. 127-1, p. 4 at ¶ 8.  The Settlement and its preliminary approval have also acquired media attention and been reported at various outlets online.[3]

As part of the consideration for this Settlement, upon final approval, all participating Class Members and all Settlement Class Members are releasing the Defendant, their employees, agents, and related companies from all claims asserted in this litigation related to the administration of the Plan since the beginning of the Class period.

Defendants agreed to take no position as to Class Counsel's application for an attorneys' fees award of up to one-third of the Settlement Fund, plus their expenses, as may be approved by the Court.  Class Counsel have requested approval of 33.33% of the Gross Settlement for payment of Fees, plus their expenses, in a motion to the Court. Doc. 128 and Doc. 129.  This request is within the typical benchmark for fee and expense awards in the Eleventh Circuit. *See, e.g., Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th. Cir. 1991). "The Court of Appeals and numerous district courts in this circuit have held that one-third of the fund represents a reasonable attorneys' fee". *McWhorter v. Ocwen Loan Servicing*, 2019 U.S. Dist. LEXIS 232149, *38.

---

[3] For instance: https://news.bloomberglaw.com/employee-benefits/pnc-financial-gets-nod-for-6-1-million-bbva-401k-settlement and https://www.law360.com/articles/1781697/pnc-workers-6-1m-bbva-401-k-deal-gets-initial-ok.
*last accessed 3/20/2024.

The Parties have structured the Settlement to ensure that all funds will be used. The money will be distributed pro-rata, based on the account balances of each Class Member. Money would be unclaimed only in the event a Class Member fails to cash their check. If there is money left over after the deadline to cash checks, the parties will seek guidance from the Court on how best to distribute the remainder. Defendants have no other reversionary interest in the Settlement Fund. KCC will also handle all required tax filings for the QSF.

## III. Notice of the Settlement Was Provided in Accordance with the Notice Plan and Exceeds the Requirements of Rule 23.

The standard for the adequacy of a settlement notice in a class action is measured by reasonableness. *See* Fed. R. Civ. P. 23(e). In this Circuit, Rule 23 has been interpreted "to require that class members be given 'information reasonably necessary to make a decision [whether] to remain a class member and be bound by the final judgment or opt-out of the action,' though the notice need not include 'every material fact' or be 'overly detailed.'" *See Faught v. Am. Home Shield Corp*., 668 F.3d 1233, 1239 (11th Cir. 2011) (internal citation omitted); *see also Greco v. Ginn Dev. Co., LLC,*635 F. App'x. 628, 633 (11th Cir. 2015)(citing *Faught*, 668 F.3d at 1239). "In reviewing the class notice to determine whether it satisfies the [ ] requirements [of due process], 'we look solely to the language of the notices and the manner of their distribution.'" *Adams v. S. Farm Bureau Life Ins. Co.*, 493 F.3d

8

1276, 1286 (11th Cir. 2007) (quoting *Twigg v. Sears & Roebuck & Co.*, 153 F.3d 1222, 1226 (11th Cir. 1998)).

To satisfy due process requirements under Rule 23 of the Federal Rules of Civil Procedure, notice must be the "best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1261(S.D. Fla. 2016) (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12(1985)).  Additionally, the *Morgan* court confirmed that in the Eleventh Circuit, "best practicable" notice did not require that every class member actually receive notice. *Id.* (citing *Juris v. Inamed Corp.*, 685 F.3d 1294, 1317 (11th Cir. 2012)); *see also DANIEL R. COQUILLETTE et al., MOORE'S FEDERAL PRACTICE: CIVIL* ¶ 23.102.  Rather, the relevant question is "whether the notice [] is reasonably calculated to reach the absent members.  The fact that some class members may not actually receive timely notice does not render the notice inadequate as long as the class as a whole had adequate notice." *Morgan*, 301 F. Supp. 3d at 1261(citing *MOORE's FEDERAL PRACTICE: CIVIL* ¶ 23.102).

Here, the Parties, with the assistance of KCC, have effectuated the approved Notice and Plan of Distribution. *See* generally, Doc. 127-1. KCC has provided a detailed update to the Court explaining the exact steps taken to effectuate the Notice to the Settlement Class. Doc. 127-1.  The Notice in this case has more than

adequately met the requirements of Rule 23. *Pledger v. Reliance Trust* Co., 2021 U.S. Dist. LEXIS 105868, *11 (In approving a similar Notice process in a 23(b)(1) ERISA settlement, "Class Members had the opportunity to be heard on all issues regarding the resolution and release of their claims by submitting objections to the Settlement Agreement to the Court.").

### 1. Direct Notice Was Provided to Settlement Class Members.

In compliance with the Court's Order preliminarily approving the Settlement, the Settlement Administrator sent all Settlement Class Members a postcard containing the short form Notice and a link to the Settlement Website. Doc. 127-1, p. 4 at ¶ 5.

### 2. The Settlement Website Was Established.

The Settlement Administrator established a dedicated Settlement Website, [http://www.bbva401ksettlement.com/]. The Settlement Website will continue to be updated, including all new pertinent filings such as this Motion and Memorandum, and Class Counsel's Motion for Attorneys' Fees. Doc. 127-1, p. 4 at ¶ 11.

### 3. A Toll-Free Help Line Was Established for Settlement Class Members.

The Settlement Administrator also established a toll-free help line to address Settlement Class Members' inquiries (1-888-297-1531). As of March 17, 2024, KCC has received a total of 18 calls to the telephone hotline. Doc. 127-1, pp. 3-4 at ¶ 9.

**4. The Response to the Settlement Has Been Favorable.**

The response to the Settlement has been very favorable. Although the deadline to object has yet to expire, there have been no objections, and the communications and feedback received thus far have all been positive. *See* Doc. 129-1 Exhibit A, Declaration of D.G. Pantazis, Jr., ¶ 31.

**5. Election Form.**

During their review after the Preliminary Approval Order was entered, KCC completed a Tax Compliance review and determined that the payments are IRS reportable. Doc. 127-1, KCC Declaration, ¶ 10. To gather the necessary data for non-active account members receiving more than $600 dollars, KCC proposes to send a Supplemental Notice after final approval, only to the sub-set of class members this would affect. Then, these Class Members can make elections on the settlement website to provide the necessary data. If no election is made, they will simply receive a check. *Id.* While Class Counsel has no opinion about the tax consequences of this settlement, Class Counsel supports this request and seeks approval from the Court to add this step to the settlement administration process if finally approved.

**IV. Objectors.**

Settlement Class Members wishing to object to the Settlement were notified of the manner in which to do so. The deadline to object is April 4, 2024. So far, no Settlement Class Members have objected. *Id.*

## V.    The Court Should Finally Approve the Settlement

As a prerequisite to directing notice of a proposed settlement, the Court determined that it would likely be able to approve the Settlement and certify the Settlement Class.[4] After inviting and receiving the Class's reaction, and after a robust and effective Notice Program, the Class Representatives respectfully submit the Court should now finally conclude that the Settlement is fair, reasonable, and adequate.

### 1.  The Settlement Satisfies the Applicable Legal Standards for Final Approval

"Compromises of disputed claims are favored by the Courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 585 (1910); *see Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) ("[O]ur judgment is informed by the strong judicial policy favoring settlement as well as by the realization the compromise is the essence of settlement."); *Williams v. First Nat'l Bank of Pauls Valley*, 216 U.S. 582, 595 (1910) ("[C]ompromises of disputed claims are favored by the courts."). This strong policy applies with particular force to class action suits, the complexity and expense of which impose special burdens borne by the judicial system as well as the litigants. *See In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy

---

[4] A court has wide discretion in making the determination of the appropriateness of a settlement. The Supreme Court has cautioned, however, that in reviewing a proposed class settlement, a court should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. American Brands, Inc*., 450 U.S. 79, 88 n.14 (1981).

strongly favors the pretrial settlement of class action lawsuits."); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement."); *Carnegie v. Mut. Sav. Life Ins. Co.*, Civ-99-S-3292-NE, 2004 WL 3715446, at *17 (N.D. Ala. Nov. 23, 2004) (explaining that "settlements of class actions are highly favored in the law and will be upheld whenever possible because they are means of amicably resolving doubts and preventing lawsuits") (citations omitted).

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any class action settlement. Review of a proposed settlement generally proceeds in two stages: first, admission on preliminary approval, followed by a hearing on final approval. *See*, MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004); Rule 23(e)(2). After preliminary approval and notice to the class, the Court assesses the settlement's strengths and weaknesses at the final approval hearing and determines whether the settlement is fair, reasonable, and adequate to those who are affected. *See Fresco*, 2007 WL 2330895, at *4; MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004). Here, preliminary approval was granted on January 2, 2024, and now final approval is due to be granted.

**2. The Settlement Satisfies the Requirements of Rule 23(e)(2).**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, before a class action may be settled, voluntarily dismissed or compromised, a court must determine

whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(A); *see also Carnegie*, 2004 WL 3715446, at *17 ("It is well settled that in order to approve a settlement, the district court must find that it is fair, adequate and reasonable and is not the product of collusion between the parties.") (quoting *Bennett*, 737 F.2d at 986). Rule 23(e)(2) states that the Court may approve the settlement after considering whether: (a) the class representatives and class counsel have adequately represented the class; (b) the proposal was negotiated at arm's length; (c) the relief provided for the class is adequate; and (d) the proposal treats class members equitably relative to each other.

Here, the Class Representatives and Class Counsel have adequately represented the Settlement Class. The Class Representatives do not have any interests antagonistic to other class members and have retained lawyers with the necessary qualifications and experience to lead this litigation. *See, e.g., Parsons v. Brighthouse Networks, LLC*, 2:09-CV-267-AKK, 2015 WL 13629647, at *12 (N.D. Ala. Feb. 5, 2015) ("This is not a case in which a complaint has been filed and the parties have rushed to a settlement. Thus, all Parties had a keen grasp of the issues, the factual underpinnings of the claims and defenses herein, and the measure of the evidence supporting those claims and defenses."). Secondly, the Settlement was negotiated at arm's length and without collusion. Indeed, the Settlement was reached only after multiple hard-fought mediations with a respected mediator and then

subsequently finalized through multiple rounds of discussions. *See, e.g., In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011) ("Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness"). Thirdly, the relief provided for the Settlement Class is adequate, taking into account the costs, risks, and delay of trial and appeal, the effectiveness of any proposed method of distributing relief to the class, and the terms of the proposed award of attorneys' fees. Finally, the proposal treats class members equitably relative to each other as the payments will be issued pro-rata, based on their retirement account values.

Moreover, the Parties complied with Fed. R. Civ. P. 23(e)(1), as Notice was provided to the Class pursuant to the Court approved Notice Plan.  The Settlement thus satisfies all the requirements for final approval under Rule 23, provides significant benefits, and provides clear notice to Settlement Class Members informing them of the Settlement, how to claim Settlement benefits, and the procedures for objecting to the settlement.

### A. Class Representatives and Lead Counsel Have More than Adequately Represented the Settlement Class, Fulfilling the Requirements of Rule 23(e)(2)(A).

The Class Representatives "share the same interests as absent class members, assert claims stemming from the same event that are the same or substantially similar to the rest of the class, and share the same types of alleged injuries as the rest of the

class." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No, 1:17-md-2800-TWT, 2020 WL 256132, at *5 (N.D. Ga. Mar. 17, 2020).  In furtherance of those shared interests, Class Representatives have demonstrated their adequacy by selecting well-qualified counsel, who are highly experienced and capable in the field of class-action and ERISA litigation. *See*, Doc. 121 and 121-3.  Class Counsel have litigated many such cases to resolution and are recognized as competent legal leaders in their field.  *Id*.

Class Counsel has demonstrated particular competency in litigating similar matters throughout the country. Plaintiffs' counsel invested significant time and resources to prosecute these claims against the well-funded Defendant for over five (5) years of litigation.  With respect to discovery, Class Counsel obtained tens of thousands of documents comprised of meticulous financial data and correspondence. Class Counsel deposed the Defendant's corporate representative, obtained third party data via subpoenas, prepared the Class Representatives for their depositions, and retained experts to prosecute the case. Through those efforts, the Class Representatives and their counsel were able to gain a thorough understanding of the facts and legal theories applicable to their claims, along with the relevant risks, before agreeing to the Settlement.  The Class Representatives and their counsel have more than adequately represented the interests of the Class throughout the extended duration of this case.

**B. The Proposed Settlement Is the Result of Arm's-Length Negotiations, Fulfilling the Requirements of Rule 23(e)(2)(B).**

Rule 23(e)(2)(B) requires the court to determine whether a proposed settlement "was negotiated at arm's-length." "Settlement negotiations that involve arm's-length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661-62 (S.D. Fla. 2011). Courts often view class settlements that have been reached as the result of extensive mediation favorably in this regard. *See, e.g., Id.* (approving settlement that was "the product of informed, good faith, arm's-length negotiations between the parties and their capable and experienced counsel, and [which] was reached with the assistance of a well-qualified and experienced mediator"). The 2018 amendments to Rule 23 also make clear that use of a neutral mediator should be considered in determining "whether [negotiations] were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment.

The proposed Settlement was reached after five years of negotiations with the assistance of an experienced and a well-respected mediator. Robert Meyer provided a Declaration, stating specifically that the "mediations were intensely contested, and the parties vigorously argued and defended their positions both in person and via supporting documentation… [T]he agreement was negotiated at arms-length with no

signs of collusion whatsoever". *See*, Doc. 121-4.  As part of the mediation process, the parties produced financial data along with damage models to account for the relative strengths and weaknesses of the parties' claims, and aggressively advocated for the interests of their clients.

There can be no doubt that settlement was reached as the result of arm's-length negotiations working with a mediator and with appropriate consideration of the potential risks and rewards. *See, e.g., Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014) (holding that "[i]t is clear that the negotiations between the parties proceeded at arm's" after the parties "worked extensively with a mediator" and after the defendants "filed numerous dispositive motions that could have completely absolved themselves of liability").

### C. The Relief Provided to the Settlement Class is Far More Than Adequate, Fulfilling the Requirements of Rule 23(e)(2)(C)

Rule 23(e)(2)(C) asks courts to consider whether the "relief provided for the class is adequate, taking into account:(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." A review of those factors shows that the Settlement warrants final approval.

### i. The Costs, Risks, and Delay of Trial and Appeal

In evaluating the fairness, reasonableness, and adequacy of a proposed settlement, a court "can limit its inquiry to determining whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of settlement." *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697-98 (M.D. Fla. 2005); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014). This factor weighs in favor of approval where "success at trial is not certain for Plaintiff[s]." *Burrows v. Purchasing Power, LLC*, No. 1:12-CV-22800, 2013 WL 10167232, at *6 (S.D. Fla. Oct. 7, 2013). Here, the "costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), strongly support preliminary approval. The history of this litigation demonstrates that continued litigation of this matter would be costly, risky, and protracted.

Plaintiffs navigated the administrative process, multiple rounds of motion practice, and engaged in significant discovery to obtain financial data to prove their claims in preparation for class certification and trial. Plaintiffs worked with the assistance of their experts to refine their strategy for the purposes of liability and damages. Defendants aggressively challenged Plaintiffs' positions at all stages of the litigation. Plaintiffs faced the risk that class certification, trial, and any subsequent appeals, would not be favorable. *Swaney v. Regions Bank*, No. 2:13-CV-00544-RDP, 2020 WL 3064945, at *4 (N.D. Ala. June 9, 2020)(Proctor, J.)

19

("Because 'the outcome on class certification and the ultimate outcome on the merits was uncertain for both parties,' a settlement was reached and here that is appropriate.") (quoting *Parsons v. Brighthouse Networks, LLC*, No. 2:09-cv-267-AKK, 2015 WL 13629647, *2 (N.D. Ala. Feb. 5, 2015)).  While confident in their case analysis and efforts, the Plaintiffs faced a risk of losing at multiple stages of the litigation and would risk the loss of significant resources along the way to prosecute the case.  These risks support the appropriateness of a decision to settle.

Even if the Plaintiffs succeeded in certifying a class, they must still prove their claims at trial and survive challenges to their experts.  This would involve yet more contested issues, including but not limited to: 1) whether Defendant mismanaged the Plan, 2) whether Defendant's actions were objectively imprudent, and 3) whether Defendant's actions (or inactions) caused the Plan to lose money.  Not only would the Plaintiffs need to prevail on these issues (and others) at trial, but they would also need to successfully defend these rulings – as well as the Court's prior rulings – in any appeals that would undoubtedly follow a judgment in their favor. The subsequent appeals would further prolong the case for years and underscore the ultimate outcome's uncertainty. *See Parsons*, 2015 WL 13629647, at *4 ("[C]ontinued litigation would have risked delaying the class's potential recovery for years, further reducing the value of any such recovery.  The Settlement resolves the case without any further delay and will, if finally approved, offer the Settlement

Class an immediate and certain recovery.  Thus, this factor also speaks strongly in favor of final approval of the proposed Settlement.").

Plaintiffs all had an additional and significant risk in the prosecution of these cases: the ERISA loser pays attorneys' fees provision.  Due to the level of work required to prosecute and defend these actions, the risk each of the Plaintiffs faced should they have lost at trial (or any point before) is a risk that each Class Representative was willing to bear but had to accommodate for in evaluating a Settlement. By risking personal financial loss in prosecuting these cases, Class Representatives had a lot to lose.

Under no circumstances is there a guarantee that the Plaintiffs would recover a final judgment greater than the considerable 6.1 million dollars in monetary relief secured by the Plaintiffs in the Settlement.  In contrast, the Settlement provides immediate tangible benefits to the Class and eliminates the risk, delay, and expense associated with continued litigation. Rule 23(e)(2)(B) therefore weighs heavily in favor of final approval.

### ii. The Effectiveness of Any Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class Member Claims

The proposed method of processing the Settlement Class Members' claims and distributing relief to eligible claims is efficient and effective. The Plan of Distribution will efficiently calculate the value of thousands of potential claimants'

claims based on data available from the Defendant rather than requiring every Class Member to provide years of information about their Plan investment activity.

The parties have retained KCC to process the claims. KCC has a proven track record and has been chosen as the administrator in a number or large, complex, and high-profile class action settlements. *See*, Doc.127-1, KCC Declaration.

"The goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." *Fitzgerald v. P.L. Mktg., Inc*., No. 2:17-cv-02251-SHM-cgc, 2020 WL 3621250, at *9 (W.D. Tenn. July 2, 2020)). The Plan of Distribution will use the available data to calculate each Class Members' payments and distribute the Net Settlement Fund accordingly.

The Plan of Distribution does not require Class Members to provide years of financial data, which may be virtually impossible to track down and produce on their own and would create a cumbersome process. The devised plan allows for an automated process to quantify payment values and provide compensation to the Class Members in a quick and efficient manner.

### iii. The Terms of Any Proposed Award of Attorneys' Fees and Expenses, Including Timing of Payment

Class Counsel have applied for a Fee award of 33.33% of the $6.1 million common fund, in addition to their expenses in the amount of $152,891.22. *See*, Doc. 128, Plaintiffs' Motion for An Award of Attorneys' Fees, Costs and Incentive

Awards and Doc. 129, Memorandum of Law in Support of Motion. This is in line with benchmarks set by District Courts in the Eleventh Circuit, including this Court. "The Court of Appeals and numerous district courts in this circuit have held that one-third of the fund represents a reasonable attorneys' fee". *McWhorter v. Ocwen Loan Servicing*, 2019 U.S. Dist. LEXIS 232149, *38.  The fees requested would not be due and payable until after the Final Order Approving the Settlement.  As to Rule 23(e)(2)(C)(iv), requiring that "any agreement made in connection with the [settlement] proposal" be identified, Class Counsel previously provided a Declaration explaining that all such agreements are set forth in the Settlement itself. Doc. 121-3, ¶ 7.  In addition, Class Counsel has submitted their request for each Class Representative to receive an incentive award in the amount of $10,000.  Doc. 128 and Doc. 129.

Class Members have been advised of the proposed fee request, expense reimbursement request, and incentive award request, and have an opportunity to object to any such award prior to Final Approval.  Accordingly, Rule 23(e)(2)(C) is satisfied.[5]

---

[5] Class Counsel has addressed the basis for their fee request at greater length in a separate brief in Doc 129.  In short, 33.33% is comfortably within the range permitting final approval.

### iv. The Proposed Settlement Treats Class Members
### Equitably Relative to One Another

The Court's analysis under this Rule 23(e)(2) factor includes "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment; *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05MD1720MKBJO, 2019 WL 6875472, at *27 (E.D.N.Y. Dec. 16, 2019).

Here, the claims of each Class Member are relatively straightforward, and require little differentiation, thus all Class Members are treated equitably under the Plan of Distribution. The members of the Class have been identified by Defendant's own records (via their Plan recordkeepers), and the payouts to each Class Member follow the same objective formula tied to their Plan balances.

Further, the scope of the release does not affect apportionment of the Net Settlement Fund to Class Members. Every Class Member is subject to the same release, and the release does not affect the apportionment of relief to other class members. *See, In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 699 (S.D.N.Y. 2019)(finding this element satisfied when all settlement class members sign the same release and where the release "does not appear to affect the apportionment of relief to other class members"); *In re Payment Card Litig.*, 330 F.R.D. at47 ("Further, the

24

scope of the release applies uniformly to putative class members, and does not appear to affect the apportionment of the relief to class members, apart from securing the opportunity to participate in the (b)(2) action. Accordingly, the Court finds that this factor will likely weigh in favor of granting final approval."). As such, this factor also supports final approval of the Settlement.

### 3. The Settlement Satisfies the Eleventh Circuit's Standards Governing Class Action Settlements

Courts within the Eleventh Circuit apply the *Bennett* factors in considering whether to approve a proposed settlement:

> (1) The likelihood of success at trial; (2) the range of possible recoveries; (3) the point on or below the range of possible recoveries at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of the litigation; (5) the substance and degree of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Carnegie*, 2004 WL 3715446, at *17-18 (quoting *Bennett*, 737 F.2d at 986); *see also Parsons*, 2015 WL 13629647, at *2. The *Bennett* factors support approval.

As shown above, the Settlement exceeds the requirements of Rule 23. Additionally, the Settlement easily meets the requirements set forth by the Eleventh Circuit in *Bennett*.[6]

### 4. The Monetary Settlement Value is Well Above the Range of Reasonableness

---

[6] The first and fourth *Bennett* factors – the likelihood of success at trial and the complexity, expense and duration of the litigation – are effectively addressed in Named Plaintiffs' analysis of Rule 23(e)(2) factors. *See*, § E, *supra*.

The second and third factors in the Eleventh Circuit's *Bennett* analysis call for the Court to determine "the possible range of recovery" and then ascertain where within that range "fair, adequate, and reasonable settlements lie." *Deas v. Russell Stover Candies, Inc.*, No. CV-04-C-0491-S, 2005 WL 8158201, at *11 (N.D. Ala. Dec. 22, 2005)(internal quotations omitted). "These two ranges of recovery factors are 'easily combined and normally considered in concert.'" *Camp v. City of Pelham*, No. 2:10-cv-01270-MHH, 2014 WL 1764919, at *3 (N.D. Ala., May 1, 2014)(quoting *Cifuentes v. Regions Bank*, No. 11-cv-023455-FAM, 2014 WL 1153772, at *5 (S.D. Fla. Mar. 20, 2014)). The relief secured by the Class Representatives with this Settlement reflects an excellent result for the Class and plainly falls within the range of reasonableness contemplated by these two factors.

At $6.1 million, the Settlement represents a significant achievement for the Settlement Class, particularly in light of the time and expense of continuing litigation and the associated risk of a protracted litigation process. Under Plaintiffs' damage model, the $6.1 million represents roughly 7.7% of the estimated maximum full recovery, which falls within the range of reasonable recoveries. *Bennett v. Behring Corp.*, 737 F.2d 982, 986-87 & n.9 (11th Cir. 1984) (approving $675,000 settlement representing 5.6% of claims with maximum potential recovery of $12,000,000); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011)("[S]tanding alone, nine percent or higher constitutes a fair settlement even

26

absent the risks associated with prosecuting these claims."); *Nichols v. SmithKline Beecham Corp.*, No. CIV.A.00-6222, 2005 WL 950616, at *16 (E.D. Pa. Apr. 22, 2005)("The Settlement Fund is $65 million, or between 9.3% and 13.9% of damages. This percentage is consistent with those approved in other complex class action cases."); *Lazy Oil Co. v. Wotco Corp.*, 95 F.Supp. 2d 290, 318-19 (W.D. Pa. 1997)(approving settlement award representing 5.35% of expected recovery). As discussed above, the likelihood of such a recovery through continued litigation is extremely risky, adding to the appropriateness of the results achieved. *In re Pool Prod. Distrib. Mkt. Antitrust Litig.*, No. MDL 2328, 2015 WL 4528880, at *14 (E.D. La. July 27, 2015)(finding recovery of 8.5% of best case damages scenario appropriate, especially as weighed against "substantial risks of nonrecovery").

### 5. The Stage of Proceedings at which Settlement Was Achieved Strongly Supports Preliminary Approval

In assessing the final *Bennett* factor, the Court should consider whether the "the case settled at a stage of the proceedings where class counsel had sufficient knowledge of the law and facts to fairly weigh the benefits of the settlement against the potential risk of continued litigation." *Equifax*, 2020 WL 256132, at *10. As explained above regarding Rule 23(e)(2)(A), Class Counsel have exhaustively researched and analyzed the applicable law and have engaged in substantial motion practice and discovery throughout more than five years of hard-fought litigation. *See, Swaney*, 2020 WL 3064945, at *5 (holding that settlement was appropriate

27

where the parties "have litigated this case for over seven years, through dispositive motions," and "have had the opportunity to investigate the facts and law, review substantive evidence relating to the claims and defenses, and brief the relevant legal issues"). The parties were thus well familiar with the claims, the law, the damages, and the risks. Accordingly, this *Bennett* factor strongly supports final approval of the Settlement.

### 6. An Independent Fiduciary Was Retained and, After A Thorough Investigation, Approved The Settlement.

Pursuant to ¶ 7 of the Settlement Agreement, an independent fiduciary, Gallagher Fiduciary Advisors, LLC ("Gallagher"), was retained. Gallagher was charged with (i) determining whether to approve and authorize the settlement of Released Claims on behalf of the Plan, and (ii) determining whether the Settlement satisfies the requirements of Prohibited Transaction Class Exemption 2003-39 (the "Class Exemption"). *See*, Doc. 126-1.

In fulfilling its obligations, Gallagher (i) reviewed documents filed with the Court, including the Complaint, the Motion to Dismiss and the Court's Order denying the motion, the Motion to Alter or Amend, Motion for Certification of Immediate Appeal, Motion to Stay Pending Resolution of Section 1292(B) Proceedings, and Memorandum in Support, the Answer to the Complaint, the Motion to Consolidate, the Amended Complaint, Envestnet Asset Management, Inc.'s Motion to Dismiss, the Answer to the Amended Complaint, the Individual

Defendants' Motion to Dismiss the Amended Complaint, PNC's First Amended Answer and Affirmative Defenses to the First Amended Complaint, the Motion to Dismiss for Lack of Subject-Matter Jurisdiction, Motion for Preliminary Approval of Class Action Settlement and the Settlement Agreement; (ii) interviewed D.G. Pantazis, Jr. of Wiggins Childs Pantazis Fisher Goldfarb, LLC and Lange Clark of the Law Office of Lange Clark, P.C., lead counsel for Plaintiffs; (iii) interviewed Emily Costin and Blake Crohan of Alston & Bird LLP., counsel for Defendants; and (iv) interviewed Robert Meyer, the mediator.

Gallagher examined the conditions for the Class Exemption and concluded all the conditions were met. Among other things, Gallagher concluded:

1. There was a genuine controversy, and the Court was expected to certify the Class;

2. It (Gallagher) had no interest in or relationship with any party involved with the claims and authorized the Settlement;

3. Gallagher considered the settlement terms, including the scope of the release of claims; the amount of cash received by the plan; the proposed attorney's fee award; any non-monetary relief included in the Settlement, and any other sums to be paid from the recoveries, are reasonable in light of the plan's likelihood of full recovery, the value of claims foregone and the risks and costs of litigation. After a thorough review of the pleadings and interviews with the parties' counsel and the mediator, Gallagher has concluded that an arm's-length Settlement was achieved after hard-fought negotiations between the parties and is reasonable given the uncertainties of a larger recovery for the Class at trial and the value of claims foregone. The fee request is also reasonable in light of the effort expended by Plaintiffs' counsel in the Litigation;

4. The Settlement is at least as favorable as an arms-length transaction agreed to by unrelated parties would likely have been. Counsel for both sides and the mediator confirmed that the Settlement was the product of hard fought, extensive negotiations;

5. Although the transaction will have the incidental effect of releasing the fiduciaries, the Settlement is not designed to benefit those fiduciaries but rather to resolve claims that have not been fully adjudicated and to enable the Plan to recover a portion of its losses;

6. All the terms of the settlement are specifically described in a written settlement agreement or consent decree;

7. The authorizing fiduciary acting on behalf of the plan has acknowledged in writing that it is a fiduciary with respect to the settlement of the litigation on behalf of the plan; and,

8. The plan fiduciary will maintain or causes to be maintained for a period of six years the records necessary to enable authorized persons to determine whether the conditions of the exemption have been met.

Doc. 126-1. Gallagher concluded that the Settlement on the terms meets the requirements of the Class Exemption.

## VI.   The Court Should Certify the Settlement Class for Settlement Purposes

This Court provisionally certified the Settlement Class in the Preliminary Approval Order, finding that the Requirements of Rules 23(a) and (b)(1) were met. *See* Doc. 123. Since that time, there have been no developments that would alter this conclusion. The Settlement Class should now be finally certified and approved.

## VII.  Conclusion

For all the foregoing reasons, the Class Representatives request that, after conducting the Final Approval Hearing on April 18, 2024, the Court grant their Motion and enter the proposed Final Approval Order (Doc. 121-1 at pp. 68 – 76) which finally approves the proposed Settlement and finally certifies the proposed Settlement Class for settlement purposes only.

RESPECTFULLY SUBMITTED,

*/s/ D G. Pantazis, Jr.*
D. G. Pantazis
*Counsel for Plaintiffs*

**OF COUNSEL:**
WIGGINS CHILDS PANTAZIS
FISHER GOLDFARB, LLC
The Kress Building
301 Nineteenth Street North
Birmingham, Alabama 35203
(205) 314-0557
dgpjr@wigginschilds.com

James H. White, IV
JAMES WHITE, LLC
2100 1st Ave North, Suite 600
Birmingham, Alabama 35203
(205) 383-1812
james@whitefirmllc.com

Lange Clark
LAW OFFICE OF LANGE CLARK, P.C.
301 19th Street North, Suite 550
Birmingham, Alabama 35203
(205) 939-3933
langeclark@langeclark.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2024, the above and foregoing document was filed and served via the Court's CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

Sharon D. Stuart, Esquire
CHRISTIAN &amp; SMALL LLP
505 North 20th Street
Suite 1800 Financial Center
Birmingham, Alabama 35203
sdstuart@csattorneys.com

Emily S. Costin, Esquire
ALSTON &amp; BIRD LLP
950 F Street NW
Washington, DC 20004
emily.costin@alston.com

Blake Crohan, Esquire
Ellie Studdard, Esquire
ALSTON & BIRD LLP
One Atlantic Center
1201 W. Peachtree Street, Suite 4900
Atlanta, Georgia 30309
blake.crohan@alston.com
ellie.studdard@alston.com

*Attorney for Defendants*
*PNC Financial Services Group, Inc.,*
*Successor in interest to BBVA USA Bancshares, Inc.*

*/s/ D.G. Pantazis*
Of Counsel